COUNTY OF SAN LUIS OBISPO
COUNTY COUNSEL
RITA L. NEAL, SBN 151156
JON ANSOLABEHERE, SBN 278174
Email: jansolabehere@co.slo.ca.us
1055 Monterey Street, Room D320
San Luis Obispo, CA 93408
Telephone: (805) 781-5400
Facsimile: (805) 781-4221

Attorneys for Defendant
COUNTY OF SAN LUIS OBISPO

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL WINDELER, KAREN WINDELER, JOY SALEMI, JEFF SCHNEIDER, EDNA SCHNEIDER, BARBARA KNIGHT, KENT KNIGHT, BRUCE DEPAOLA, TERRI DEPAOLA,<br><br>　　　Plaintiffs and Petitioners,<br><br>vs.<br><br>CAMBRIA COMMUNITY WATER DISTRICT, COUNTY OF SAN LUIS OBISPO,<br><br>　　　Defendants and Respondents. | Case No. 2:19-cv-06325 DSF(JEMx)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM IN SUPPORT**<br><br>Date:　　　October 7, 2019<br>Time:　　　1:30 PM<br>Location: Courtroom 7D, First Street Courthouse, 350 West 1st Street, Los Angeles, CA<br><br>Assigned to: Honorable Judge Dale S. Fischer<br><br>*Complaint Filed: July 24, 2019* |

//

//

//

//

//

---

1
Request for Judicial Notice in Support of
Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT pursuant to Federal Rules of Evidence Rule 201, Defendant County of San Luis Obispo respectfully requests the Court take judicial notice of the following in support of their Notice of Motion and Motion to Dismiss Plaintiffs' Amended Complaint:

A.   Plaintiffs' previous complaint filed as Case No. 2:17-cv-08536. A true and correct copy of the filed complaint is attached as Exhibit A.

B.   March 12, 2018 Memorandum Decision by Honorable Judge Fischer dismissing and abstaining Plaintiffs' previous complaint in Case No. 2:17-cv-08536. A true and correct copy of the Memorandum Decision is attached as Exhibit B.

C.   Plaintiffs Michael and Karen Windeler's Appeal form and letter ("Appeal") submitted to the County's Department of Planning and Building, requesting an administrative appeal to the Board of Supervisors, challenging the County Planning Commission's denial of the Windelers' variance application. A true and correct copy of the Appeal is attached as Exhibit C.

D.   An official County map of the Coastal Zone in the north, coastal part of the County showing that the entire town of Cambria (within which lie all of the Plaintiffs' properties) is within the Coastal Zone ("Coastal Zone Map.") Also, section 23.01.030 of the County's Coastal Zone Land Use Ordinance ("CZLUO"), which indicates that the CZLUO applies to land use proposals, including variances, within the Coastal Zone. A true and correct copy of CZLUO sections 23.01.030 are attached as Exhibit D.

E.   Sections 23.02.030 and 23.02.033 of the CZLUO which indicate that compliance with planning area requirements are required from an applicant if he or she wishes to apply for a land use permit. A true and correct copy of CZLUO sections 23.02.030 and 23.02.033 are attached as Exhibit E.

1    F.     Planning Area Standard 8 of the North Coast Area Plan which is part of the

2          Land Use and Circulation Elements of the County's General Plan. Planning

3          Area Standard 8's will-serve letter requirement is central to the Plaintiff's

4          lawsuit. A true and correct copy of Planning Area Standard 8 and the cover

5          page of the North Coast Plan are attached as Exhibit F.

6    G.     Cambria Community Services District's residential "wait list." A true and

7          correct copy of the residential wait list is attached as Exhibit G.

8

9                        RITA L. NEAL

10                       County Counsel

11

12  DATED:  August 30, 2019     By: _____

13                       JON ANSOLABEHERE

14                       Chief Deputy County Counsel

                           Attorneys for Defendant County of San Luis

15                       Obispo

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1 Mark D. Alpert, Esq., SBN: 138152
RUDDEROW LAW GROUP
2 2601 Main Street, Suite 1300
Irvine, CA 92614
3 Telephone: (949) 565-1344
Facsimile: (949) 565-1344
4
5 Attorneys for Plaintiffs,
Michael Windeler, Karen Windeler, Joy Salerni,
Jeff Schneider, Edna Schneider, Barbara Knight,
6 Kent Knight, Bruce DePaola, Teri DePaola,
Norman Fargo, and Loretta Paulson
7

8          UNITED STATES DISTRICT COURT OF CALIFORNIA

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 MICHAEL WINDELER, KAREN         ) Case No.: 2:17-cv-08536
WINDELER, JOY SALERNI, JEFF       )
12 SCHNEIDER, EDNA SCHNEIDER,       ) FIRST AMENDED PETITION AND
BARBARA KNIGHT, KENT              ) COMPLAINT FOR:
13 KNIGHT, BRUCE DEPAOLA, TERRI     )
DEPAOLA, NORMAN FARGO, and        )  (1)  WRIT OF ADMINISTRATIVE
14 LORETTA PAULSON,                 )       MANDATE UNDER CODE OF
                                    )       CIVIL PROCEDURE § 1085
15        Plaintiffs and Petitioners, )      WRIT OF ADMINISTRATIVE
                                    )       MANDATE UNDER CODE OF
16    v.                            )       CIVIL PROCEDURE § 1094.5
                                    )  (2)  INVERSE CONDEMNATION
17 CAMBRIA COMMUNITY SERVICES       )       UNDER STATE LAW
DISTRICT, COUNTY OF SAN LUIS      )       (REQUEST FOR "STATE
18 OBISPO,                          )       COMPENSATION";
                                    )  (3)  VIOLATION OF CIVIL
19        Defendants and            )       RIGHTS – TAKING UNDER
Respondents.                      )       FIFTH AMENDMENT (42
20                                  )       U.S.C. § 1983)
                                    )  (4)  VIOLATION OF CIVIL
21                                  )       RIGHTS – PROCEDURAL
                                    )       DUE PROCESS (42 U.S.C. §
22                                  )       1983)
                                    )  (5)  VIOLATION OF CIVIL
23                                  )       RIGHTS – SUBSTANTIVE
                                    )       DUE PROCESS (42 U.S.C. §
24                                  )       1983
                                    )
25                                  )
                                    )  REQUEST FOR JURY TRIAL
26                                  )
27

28

37989.012/4851-0627-6112v 1

*COMPLAINT*

## Introduction

1.     Can a local government prevent the owners of legally created lots from ever developing those lots by deciding to deprive those lot owners of access to water and sewer services necessary to develop without causing a regulatory taking or other denial of constitutionally protected rights? That is the fundamental question this case presents.

    For decades, the County of San Luis Obispo ("County"), acting in concert with the Cambria Community Services District ("District"), has prevented lot owners from developing their property under the pretense of a shortage or water "emergency" to justify the denial of water and sewer services, even refusing to accept applications for service. The County and District have purposely taken no action to secure water for these legal lots in order to prevent development without being required to pay compensation for lots taken to advance a policy of extremely limited development. The actions of the County and District have made clear they have no intention of allowing development, particularly as to the lots owned by the Plaintiffs in this case. The Defendants have engaged in a pattern of conduct designed to make it impossible for plaintiffs to ever develop their lots, effectively confiscating them for the public purpose of limiting growth, but seek to avoid the requirement that the owners of property taken for public use be compensated. If the Defendants cannot be required to meet their obligation to provide water and sewer service to legal, buildable lots, Plaintiffs must be compensated for the regulatory taking of their property.

## PARTIES

2.     Plaintiffs and Petitioners ("Plaintiffs")[1] Michael and Karen Windeler ("Windelers") are citizens of the state of Georgia.

3.     Plaintiff Joy Salerni ("Salerni") is a citizen of the state of Texas.

///

---

[1] This action includes administrative mandamus actions as well as complaints at law. For the sake of simplicity, the parties are referred to collectively as "Plaintiffs" or "Defendants," though in some cases they are asserting or defending claims technically as "Petitioners" or "Respondents."

1

4.      Plaintiffs Jeff and Edna Schneider ("Schneiders") are citizens of the state of Florida.

5.      Plaintiffs Barbara and Kent Knight ("Knights") are citizens of the state of Nevada.

6.      Plaintiffs Bruce and Terri DePaola ("DePaolas") are citizens of the state of Washington.

7.      Plaintiffs Norman Fargo and Loretta Paulson ("Fargos") are citizens of the state of Idaho and Connecticut, respectively.

8.      Plaintiffs are informed and believe, and on that basis allege Defendant County of San Luis Obispo ("County") is and at all times mentioned herein, was a duly incorporated municipal corporation located within the State of California.

9.      Plaintiffs are informed and believe, and on that basis allege Defendant Cambria Community Water District ("District") is and at all times mentioned herein, was a duly incorporated municipal corporation and/or special district located within the State of California, and County of San Luis Obispo.

10.     Plaintiffs are informed and believe and thereon allege, that each of the Defendants named herein as Does 1 through 25, inclusive, were and are in some manner responsible for the acts, omissions and actions as hereafter alleged and for the harm or damage caused by Defendants to Plaintiffs and are, therefore, jointly and severally liable for and all damages or harm caused to Plaintiffs.

11.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned the Defendants, and each of them, including the fictitiously named Defendants, were the agents, employees or officers of each of the remaining Defendants, and, in doing the things hereafter alleged, were acting within the scope, course and purpose of said agency or employment, and were acting within the apparent scope of said agency, employment and position and acted with the permission and consent of each of the remaining Defendants.

///

2

*COMPLAINT*

## JURISDICTION AND VENUE

12.     Plaintiffs bring their claims under federal diversity jurisdiction, 28 U.S.C. 1332. Plaintiffs are all citizens of states other than the state of California and thus completely diverse from Defendants who are California municipal entities.  The amount in controversy exceeds $75,000 as to each individual plaintiff.  In addition, this Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 *et seq*.  Plaintiffs further allege this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to the first three causes of action.

13.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) in that the named defendants are located within the Central District of California, and the action arises out of events in San Luis Obispo County, California.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.     The Plaintiffs own legally created and approved, but undeveloped, residentially zoned lots in Cambria, located in an unincorporated area within the County of San Luis Obispo.  Plaintiffs all own lots which were purchased at a fair market price that reflected the reasonable expectation that the lots could be developed.  Plaintiffs have paid for water and sewer improvements for decades, through water and sewer availability or standby assessments, property taxes, and a special assessment to finance the construction of the District's sewer system.  Water and sewer lines are in the street fronting all of the Plaintiffs' lots.

15.     The County and Cambria County Water District (the District's predecessor in interest) executed two Joint Power Agreements (JPA's) on or about the early 1970's. Therein, the parties agreed that (a) a sewer system was necessary in Cambria; (b) the County would conduct assessment proceedings to finance the construction of sewer improvements; and (c) the Cambria County Water District would own and operate the resulting sewer improvements.

///

1  16.    The resulting assessment proceedings created two assessment districts, and the
2  Board resolved that the assessed properties were to benefit from and be assessed in
3  proportion to the cost of the improvements. The special benefit accruing to the
4  assessed properties was and remains the right to use the District's sewer system.
5  17.    The first phase of the sewer improvements was financed by a HUD loan
6  between the federal government and Cambria County Water District. The intent of
7  the HUD loan and associated assessment proceedings was to provide sewer service to
8  those properties within assessment district #1. The HUD loan was repaid by special
9  assessments upon those properties within assessment district #1.
10  18.    The second phase of sewer improvements were financed by an EPA grant
11  between the federal government and County. The EPA grant required assessments to
12  pay the local matching share of the cost to complete the improvements. The
13  landowners within assessment district #2 were assessed and thereby paid the local
14  matching share required by the EPA grant. The intent of the EPA grant and associated
15  assessment proceedings was to provide sewer service to those properties within
16  assessments district #2. The Properties are within assessment district #2.
17  19.    On or about 1976, the District was created and assumed all duties and liabilities
18  of the Cambria County Water District, which was simultaneously dissolved.
19  20.    Plaintiffs believe and thereon allege that their properties were among the class
20  of properties intended to benefit from the JPA's, HUD loan, and EPA grant
21  ("Agreements"). Plaintiffs believe and thereon allege that their properties were to
22  benefit from the assessment proceedings, wherein their properties were to obtain a
23  special benefit right from the payment of special assessments. The special benefit that
24  accrued was the right to sewer service from the District. The Plaintiffs have all paid
25  assessments to the District and its predecessor, but they have been denied the intended
26  benefit of the assessment, the right to sewer service.
27  21.    Plaintiffs are informed and believe, and on that basis allege that the Defendants
28  have determined they will not provide sewer or water service because they wish to

37989.012 4851-0627-6112v.1

*COMPLAINT*

1    prevent the lots from being developed, effectively re-zoning the properties (and
2    hundreds of others like them) as open space, while avoiding paying the lot owners for
3    the creation of this open space.

4    22.    In 1988 the Windelers purchased a lot in "Cambria" an unincorporated area
5    located within the County. The property (APN 023-202-018) is located on Ramsey
6    Road, and is zoned for the development of a single family residential home, herein
7    referred to as the ("Windeler Property"). The Windelers paid a fair market price for
8    their property, based on the reasonable expectation that it could be developed with a
9    single-family home.

10   23.    Salerni is informed and believes, and on that basis alleges that in the 1940s her
11   grandfather purchased a lot in Cambria, which was gifted to her mother and was
12   subsequently bequeathed to Salerni in 1967. The lot (APN 023-066-010) is located on
13   955 Drake Street, and is zoned for the development of a single-family home. Salerni is
14   informed and believes that her grandfather paid a fair market price for the lot, based
15   on the reasonable expectation that it could be developed with a single-family home.
16   Salerni retained the lot, based on the reasonable expectation that it could be developed
17   with a single-family home.

18   24.    The Schneiders purchased one lot in 1976 and a second adjoining lot in 1978.
19   The lots are located on Spencer Street in Cambria. The lots (APN 024-062-043) were
20   subsequently merged and are zoned for the development of a single-family home,
21   herein referred to as the "Schneider Property". The Schneiders paid a fair market
22   price for the lot, based on the reasonable expectation that it could be developed with a
23   single-family home.

24   25.    Barbra Knight purchased 8 adjoining lots in Cambria in 1968. She
25   subsequently conveyed a joint interest in the lots to her husband Kent Knight, who she
26   married in 1972. The Knights eventually sold four of the lots but retained four lots,
27   located at Haddon Drive, which were subsequently merged (APN 023-391-053) into a
28   single parcel ("Knight Property"), and is zoned for the development of a single-family

1  home. Barbara Knight paid a fair market price for the lots based on the reasonable

2  expectation that they could be developed with single- family homes.

3  26.    The DePaolas purchased their lot in Cambria in 1989. The lot (APN 023-423-

4  002) is located on Pine Court. The lot is zoned for the development of a single-family

5  home, herein referred to as the ("DePaola Property"). The DePaolas paid a fair

6  market price for the lot, based on the reasonable expectation that it could be developed

7  with a single-family home.

8  27.    The Fargos purchased their lot (APN 023-312-012) in Cambria in 1962. The

9  Fargos paid a fair market price for the lot based on the reasonable expectation that it

10  could be developed with a single- family home.

11  28.    All of the Plaintiffs have sought to obtain water and/or sewer service through

12  the District, or secure a place on a waiting list for water and sewer service when it

13  becomes available, or to simply obtain verification that the District has no plan to

14  provide services to their properties. The District, however, has indicated at various

15  times that "at this time" it is not accepting applications for service and does not even

16  have an application to verify whether it plans to provide future services, citing a

17  decades long water "emergency." The District most recently confirmed in November

18  2017 it is not accepting applications for future water and/or sewer service.

19  29.    In January 2017, Plaintiffs, with the exception of Fargo/Paulson, submitted an

20  application for a minor use or land use permit with the County, the local land use

21  authority. The unprocessed applications were returned. It was subsequently verified

22  that the applications were returned because they were not accompanied by written

23  verification of water and sewer service from the District.

24  30.    Plaintiffs are informed and believe that it is impossible under the County's laws

25  and regulations to develop a single-family home on their lots without obtaining water

26  and/or sewer service from the District. However, in order to confirm whether there

27  were any conditions under which the lots could be developed without water or sewer

28  service from the District, the Windelers submitted a development application which

6

*COMPLAINT*

1  sought development without water and/or sewer service from the District. The
2  Windelers elected to seek a variance from the requirements for a verification of water
3  and sewer service from the District. They submitted a Development Application to the
4  County on or about April 24, 2017, with a request for a variance from all requirements
5  that would bar development without a verification of available water and/or sewer
6  service from the District.

7  31.    Because development would not be possible without the Variance, the County
8  and the Windelers agreed to proceed to hearing first with the Variance request that
9  was submitted with the development application. The Development Application
10  required a variance from several County standards and requirements, including
11  Community Wide Planning Area Standard 8, which requires development applications
12  to include written verification of water and sewer service from the District.  The
13  Development Application and cover letter made clear that the Windelers were
14  prepared to develop with any combination of services that would be acceptable to the
15  County. Specifically, they were prepared to develop with water sourced from an on-
16  site well or trucked in water, with wastewater treatment from the public sewer or an
17  on-site septic system. The Windelers also requested that, alternatively, the County
18  require the District to process and approve a connection to the District's water and
19  sewer systems.

20  32.    The Application first went before the County Planning Commission ("CPC").
21  The hearing on the Application before the CPC took place on August 24, 2017. The
22  CPC applied § 22.62.070(D)(1) of the County Code ("County Variance Code") in
23  considering the variance, which sets forth five findings that must be made in order
24  grant a variance. Prior to, and at the hearing, counsel for the Applicants argued that
25  all of the requirements were met to approve the variance. The Windelers also pointed
26  out that the County Variance Code was inconsistent with state law, in that the County
27  Variance Code limited "special circumstances" to size, shape, topography, location or
28  surroundings of the subject property, while state law contained no such limitation.  In

1   addition, the Applicants pointed out that the County ordinances were required to be

2   applied in a manner which did not cause a taking and that the denial of a variance

3   would cause a taking because the Windelers would be permanently denied the right to

4   develop their property.  At the hearing, counsel for the Windelers emphasized the

5   need for the administrative record to include all communications between the various

6   departments of the County and outside agencies, particularly including the District.

7   33.    At the close of the hearing, the CPC denied the Application finding that all five

8   factors of the County Variance Code did not support the granting of a variance.  The

9   CPC concluded there was no inconsistency between the County Variance Code and

10  state law because "special circumstances" under state law were likewise limited to

11  size, shape, topography, location or surroundings.  The CPC found that the denial of

12  the application would not cause a taking.

13  34.    The Windelers timely filed an appeal to the County Board of Supervisors

14  ("Board").  The appeal asserted the CPC had erred in numerous respects, including

15  that it had erred in applying the five factors of the County Variance Code, that it had

16  erred in applying the narrower definition of "special circumstances" than allowed by

17  state law, and that it improperly ignored the fact that the denial of the application

18  would cause a taking.  In the letter attached with the appeal, the Windelers

19  emphasized that the record on appeal should include all communication between staff

20  and internal and external organizations, particularly including the District.

21  Approximately 10 days before the hearing, counsel for the Windelers reminded staff

22  of this request and inquired as to whether the record before the Board would include

23  this information.  Staff did not respond to this inquiry.  Staff did prepare a staff report

24  recommending denial, but the report did not include any communications between

25  staff and either internal or external entities, and did not reference the request in any

26  fashion.  The request was simply ignored.

27  35.    The appeal hearing took place on October 17, 2017, before the Board of

28  Supervisors.  Initially, staff gave an oral summary of the written staff report.  In an

1  apparent response to the Applicants' request to be allowed to either use an on-site
2  water well or trucked in water along with a connection to the District's sewer, staff
3  commented that it was unknown whether the District would provide sewer but not
4  water service to the lot. At the hearing, counsel for the Windelers first addressed the
5  failure to include communications between staff and various internal and external
6  agencies and noted that the failure to include such communication denied the
7  Applicants a fair hearing. For example, staff had itself noted uncertainty regarding the
8  District's position regarding the proposal to use only District sewer services for
9  development, but declined to include communications with the District. Counsel for
10 the Windelers again addressed the findings necessary to approve a variance, along
11 with the requirement that the County apply its Coastal Ordinance in a manner that
12 avoided a taking, which the Windelers contended would result from the denial of the
13 variance.

14  36.    At the close of the hearing, the Board voted to deny the appeal, adopting the
15 staff recommendation that none of the five factors under the County Variance Code
16 necessary to grant a variance were supported and approved the findings prepared by
17 staff in advance of the hearing. On October 24, 2017, the County officially adopted
18 Resolution No. 2017-265, denying the appeal of the denial of the Application
19 ("Resolution"). The Resolution affirmed the Planning Commission's findings that
20 none of the five factors under the County Variance Ordinance were met. The
21 Resolution did not explicitly apply the broader state standard for "special
22 circumstances" but did state that not being on the District's wait list for water and
23 sewer service was not a "special circumstance," in that there are many other vacant
24 lots in Cambria without a wait list position. The Resolution did not address the
25 question of whether there was a taking. The Windelers are informed and believe that
26 the Resolution was never served on any party.

27  37.    The denial of the Windelers' Application, unless overturned by the courts,
28 demonstrates that their property cannot be developed. The Windeler Property cannot

*COMPLAINT*

1   be used as subdivided and zoned, and the Windelers have been denied all
2   economically viable use of their property. Plaintiffs other than the Windelers are,
3   from the standpoint of an available variance, in substantively the same position as the
4   Windelers and thus have likewise been denied all economically viable use of their
5   property. Their "special circumstances" which would be asserted to qualify for a
6   variance are substantially the same as those asserted by the Windelers. The multiple
7   findings, each independently justifying the denial of the variance would, almost
8   certainly, each apply to the other Plaintiffs. In other words, it would be futile for the
9   remaining plaintiffs to pursue development of their properties through a variance or
10  any other form of application as they do not have and cannot get verification of water
11  or sewer service from the District and the County will not allow development without
12  such verification. Since the Plaintiffs do not have wait list positions, and District
13  Code prevents them from applying to join the closed waiting list, the properties are
14  not eligible to obtain intent to serve letters. In sum, development is not permissible
15  because District Code prevents the properties from obtaining water and sewer services
16  from the District, and the County will not approve the use of alternative sources of
17  water and wastewater treatment.
18  38.    Plaintiffs are informed and believe that their lots have zero or de minimus value
19  because of the decision of Defendants to not provide water and/or sewer service or
20  allow development of their properties. Plaintiffs, and each of them, have paid
21  assessments levied to repay water infrastructure loans, property taxes, and all water
22  and sewer availability or standby assessments levied to support the water and sewer
23  infrastructure for Cambria. In addition, Plaintiffs were subjected to a special
24  assessment which paid for the build out of the sewer infrastructure in Cambria. As a
25  result of this special assessment, Plaintiffs have an express and/or implied right to
26  connect to the public sewer fronting Plaintiffs' properties.
27  39.    Plaintiffs have been denied the right to develop single family homes on their
28  property purportedly of an "emergency" shortage of water. Plaintiffs are informed

10

*COMPLAINT*

37989.012-4851-0627-6112v.1

1   and believe they have been denied the right of development because of the decision to
2   stop or severely limit growth. Indeed, Defendants have adopted permanent growth
3   limiting regulations, which arise from the exercise of land use authority, and will
4   remain in place whether or not there is a shortage of water. In reality, the County, in
5   concert with the District Cambria Community Service District ("District") has decided
6   it will not allow Plaintiffs and hundreds of other property owners the right to develop
7   their lots out of a desire to preserve the coastal character of Cambria by, at least in
8   part, limiting growth.

9   40.    Plaintiffs are informed and believe that whether or not the water emergency
10  declaration was valid, it is a temporary measure and there is no valid water law
11  authority to permanently limit development. The District has a duty to seek additional
12  water to lift the emergency and avoid predictable future shortages. In other words, the
13  District cannot use the water emergency as a cloak to hide the undeniable truth that it
14  will never provide intent to serve letters or future service connections to Plaintiffs'
15  properties. Plaintiffs are informed and believe that Defendants have determined they
16  will not allow the lots, and hundreds of others like them to be developed, effectively
17  re-zoning the lots for open space without formally taking such action. Plaintiffs are
18  informed and believe, Defendants have intentionally used the temporary water
19  shortage as a shield to avoid taking claims that would otherwise arise from the explicit
20  adoption of growth limiting regulations or open space re-zoning that prevent plaintiffs
21  and similarly situated property owners from developing legal lots. Plaintiffs are
22  informed and believe that the County and District have conspired to deny
23  development while preventing taking claims from being ripe, purposefully leaving
24  Plaintiffs and hundreds of other lot owners in a legal limbo, with no right of
25  development but no definitive decision permanently denying them the right to
26  develop. Plaintiffs are informed and believe, and on that basis allege the District has
27  adopted a strategy of not accepting applications for service in order to avoid denying
28  applications for service, while the County refuses to accept applications for

1  development based on the absence of a letter affirming that the District actually plans
2  to provide water and sewer service to the lot.

3  41.    The County and District have failed to take steps to acquire sufficient water that
4  could serve hundreds of legal lots, nor have they taken any steps to compensate the
5  owners of these lots, even though on information and belief, the County and District
6  have decided, in the interests of the community as a whole, that these lots should not
7  be developed. Plaintiffs are informed and believe that Defendants' strategy is one of
8  attrition, attempting to avoid explicitly denying development applications, while
9  hoping that through attrition, the owners of these lots who purchased based on the
10 expectation that the lots can be developed will simply "go away" one way or another
11 over time, thereby confiscating these properties to advance the purpose of the no
12 growth agenda by regulation, without paying for the lots.

13                              **First Cause of Action**

14        **(Petition For Writ of Administrative Mandate (Traditional) Pursuant to**
15              **Code of Civil Proc. § 1085 By All Plaintiffs Against the District)**

16        Plaintiffs refer to, repeat and incorporate herein by reference as though fully set
17 forth at length, the allegations contained in paragraphs 1 through 41, inclusive,

18 42.    As the special district created to provide, inter alia, water and sewer service in
19 Cambia, the District has a ministerial duty under law to issue, accept and process
20 applications for water and sewer service. In addition, the District has a ministerial
21 duty to take steps to acquire sufficient water to serve all parcels within its service
22 boundary, and to provide water and sewer service for unserved lots. The District has
23 failed to fulfill its ministerial duties.

24 43.    By failing to exercise its ministerial duties, the District has violated its present
25 and ministerial duties. Plaintiffs have performed all conditions precedent to filing this
26 action and have no plain, speedy, or adequate remedy in the ordinary course of law,
27 other than the relief sought in this Petition.

28 44.    Accordingly, a writ of mandate should issue ordering the District to (a) accept

37989.012/4851-0627-6112v.1

1  and process applications for water and sewer service from Plaintiffs; (b) verify that it
2  plans to provide water and sewer service to their properties; (c) take steps to secure an
3  adequate water supply to serve the properties; and (d) provide water and sewer service
4  to the properties.

5                          **Second Cause of Action**
6                   **(For Writ of Administrative Mandate Pursuant to**
7            **Code of Civil Proc. § 1094.5 By Windelers Against the County)**
8          The Windelers refer to, repeat and incorporate herein by reference as though
9  fully set forth at length, the allegations contained in paragraphs 1 through 44,
10 inclusive.
11 45.     The Windelers allege that the County's decision to deny the Variance
12 Application was in error, wrongful, unlawful, arbitrary and capricious and constituted
13 an abuse of discretion, as defined by Code of Civil Procedure § 1094.5(b).  The
14 Windelers contend the County misapplied the County Variance Code as a matter of
15 law, disregarded controlling state law and made findings not supported by substantial
16 evidence.  In addition, the County failed to consider whether its actions would cause a
17 taking in contravention with its own statutes.  Further, the County denied the
18 Windelers a fair hearing by intentionally excluding evidence from the administrative
19 hearing record that could have a direct bearing on whether a variance should be
20 granted, including but not limited to communications between the County and the
21 District.
22 46.     The Windelers have no plain, speedy or adequate remedy in the ordinary course
23 of law other than the relief sought in this Petition.  Accordingly, a peremptory writ of
24 administrative mandamus should issue vacating the Resolution and ordering the
25 County to either approve the Variance or reconsider the Application with instructions
26 from the Court to correct the errors below.
27 ///
28 ///

**Third Cause of Action**

**(By All Plaintiffs Against All Defendants For Inverse Condemnation under the California Constitution)**

Plaintiffs refer to, repeat and incorporate herein by reference as though fully set forth at length the allegations contained in paragraphs 1 through 46, inclusive.

47.    As a result of the Defendants' actions and inactions, as alleged herein, the Defendants have caused Plaintiffs' properties, including their rights of development and rights to sewer services which they have paid for, to be taken for public use without compensation.

48.    Plaintiffs are informed and believe that Defendants, acting in concert, have determined that they will never allow Plaintiffs to develop their lots to advance the public purpose of limiting growth in Cambria and effectively converting hundreds of undeveloped lots to open space without re-zoning and without paying compensation. Plaintiffs are informed and believe, and on that basis allege that Defendants have denied Plaintiffs a connection to the sewer system, a property right they are entitled to utilize as a result of paying property taxes and a special assessment for the construction of the sewer system for the purposes of preventing development. Plaintiffs are informed and believe, and on that basis allege that Defendants have intentionally avoided taking steps to develop sufficient water to advance this goal.

49.    Plaintiffs are informed and believe, and on that basis allege that Defendants have intentionally decided to employ County policies and regulations to avoid accepting applications for development. Plaintiffs are informed and believe, and on that basis allege that by refusing to accept applications, rather than accepting and denying development applications that fail to verify a viable source of water and feasible wastewater treatment solution, Defendants purposefully attempt to prevent the ripening of taking claims, thereby preventing development without paying compensation to the affected lot owners. Plaintiffs are further informed and believe that Defendants, acting in concert, have established procedures and policies designed

14

*COMPLAINT*

1   to prevent development applications from being accepted, processed, approved or
2   denied by the land use authority in order to avoid the triggering of taking and/or other
3   claims.

4   50.    Plaintiffs are informed and believe, and on that basis allege, the taking is
5   permanent because Defendants have decided that water from the District's existing
6   water supply sources, and any water resulting from a proposed desalination project,
7   cannot and will not be provided to the properties and they decided to not develop
8   additional water that could be used for development of any lots that do not currently
9   have service or are on a District wait list. Consistent with this purpose, Defendants
10  have also affirmatively taken steps to incorporate growth limitations that, as a
11  practical matter, will make it impossible for Plaintiffs to develop their lots even if an
12  alternative water supply were developed.

13  51.    Alternatively, Plaintiffs allege the taking is temporary, extending until the
14  Defendants take steps to provide water and sewer service for Plaintiffs and similarly
15  situated property owners or allow development with alternative sources of water or
16  sewer service.

17  52.    The combined effect of the Defendants' actions is to compel Plaintiffs to bear a
18  disproportionate individual cost of the Defendants' effort to limit growth and
19  maintaining residentially zoned lots as "open space." If Defendants wish to limit
20  growth by denying the right of certain lots to be developed, that burden is one which,
21  in all justice, must be borne by the community as a whole, rather than those property
22  owners denied the right of development of legal lots that are in all respects
23  developable if the Defendants were to meet their obligation to provide water and
24  sewer service.

25  53.    The Defendants have caused a "per se" taking because they have denied
26  Plaintiffs all economically viable use of their properties. Alternatively, Plaintiffs
27  allege a taking under the ad hoc balancing of factors approved under California law.
28  54.    Defendants' actions result in the equivalent of a physical taking because they

15

*COMPLAINT*

1  force Plaintiffs to effectively surrender their right to use the parcels as subdivided and
2  zoned, effectively requiring them to pay to maintain "open space" for their neighbors.
3  For all practical purposes, the Defendants have confiscated the Plaintiffs' property for
4  public use, but have not provided compensation.

5  55.   The Defendants have refused to withdraw or modify the offending regulations,
6  so Plaintiffs must be monetarily compensated for the taking.  As a direct and
7  proximate result of the above-described actions by Defendants and each of them,
8  Plaintiffs are informed and believe they have had their property taken with individual
9  values exceeding $300,000 for each lot.

10 56.   Plaintiffs have incurred and will incur attorney's, expert and consulting fees
11 because of this proceeding, in amounts that cannot yet be ascertained, which are
12 recoverable in this action under the provisions of Section 1036 of the Code of Civil
13 Procedure.

14                    **FOURTH CAUSE OF ACTION**

15   **(By All Plaintiffs Against All Defendants For Violation of Civil Rights under 42**
16   **U.S.C. § 1983 And The Fifth Amendment For Regulatory Taking of Property)**

17       Plaintiffs reallege and repeat the allegations contained in paragraphs 1 through
18 56, hereinabove and incorporate same by reference as if fully set forth herein.

19 57.   Plaintiffs are informed and believe, and on that basis allege that the actions and
20 intentional inactions by Defendants constitute a taking of property for public use
21 without compensation and is contrary to the Fifth Amendment of the United States
22 Constitution.

23 58.   Plaintiffs are informed and believe that Defendants, acting in concert, have
24 determined that they will never allow Plaintiffs to develop their lots to advance the
25 public purpose of limiting growth to maintain the coastal character of Cambria,
26 effectively re-zoning the properties to open space without formally taking such action.
27 Plaintiffs are informed and believe, and on that basis allege that Defendants have
28 likewise denied Plaintiffs a connection to the sewer system, a property right they are

16

*COMPLAINT*

1    entitled to utilize as a result of paying property taxes and a special assessment for the
2    construction of the sewer system for the same purposes.

3    59.    Plaintiffs are informed and believe, and on that basis allege that Defendants
4    have intentionally decided against developing water resources that would allow
5    additional development. For example, Defendants have approved a design of a
6    proposed desalination project with only sufficient capacity to serve existing
7    connections and those lots already on a District wait list. Plaintiffs are informed and
8    believe, and on that basis allege the District employs the declared water emergency as
9    the excuse for not issuing service application forms, or processing service applications
10   submitted by Plaintiffs and intentionally avoids taking steps to provide sufficient
11   water resources. By failing to inform Plaintiffs that it has no plans to serve the
12   properties even after the emergency is lifted, the District's actions are nothing less
13   than an attempt to block development without payment of just compensation. 60.

14       Plaintiffs are further informed and believe that Defendants, acting in concert,
15   have established procedures and policies designed to prevent development
16   applications from being accepted, processed, approved or denied by the County.

17   61.    Plaintiffs are informed and believe, and on that basis allege, the taking is
18   permanent because Defendants have taken no actions that will allow for the
19   development of necessary water in the foreseeable future and have also affirmatively
20   taken steps to incorporate growth limitations that, as a practical matter, will make it
21   impossible for Plaintiffs to develop their lots even if alternative water were developed
22   at some point. Alternatively, Plaintiffs allege the taking is temporary, extending from
23   the time (unknown to Plaintiffs) that the Defendants determined they would not
24   provide water and service to undeveloped lots not on the District waiting list,
25   continuing until such time as the Defendants take steps to provide water and sewer
26   service for Plaintiffs and similarly situated property owners.

27   62.    The combined effect of the Defendants' actions is to compel Plaintiffs to bear a
28   disproportionate individual cost of the Defendants' effort to limit growth in order to

1  preserve the coastal character of Cambria and effectively re-zone hundreds of lots as
2  open space.  Should Defendants wish to limit growth or create new open space by
3  denying the right of certain lots to be developed, that burden is one which, in all
4  justice, must be borne by the community as a whole, rather than those property owners
5  denied the right of development of legal lots that are in all respects developable, if the
6  District were to meet its obligation to provide water and sewer service to all parcels
7  within its service boundary.

8  63.    The Defendants have caused a "per se" taking because they have denied
9  Defendants all economically viable use of their properties.

10 64.    Alternatively, Plaintiffs allege a taking under the ad hoc balancing of factors
11 approved under federal law.  In particular, Defendants have caused a regulatory taking
12 based on combined effect of the consideration of, the nature of the state interest in
13 regulation, and the reasonable investment –backed expectations of the property
14 owners, and the economic impact of the regulation. *Penn Cent. Transp. Co. v. New*
15 *York City*, 438 U.S. 104 (1978)

16     Defendants' actions result in the equivalent of a physical taking because they
17 force Plaintiffs to effectively surrender their right of possession to the property
18 indefinitely to be maintained as "open space" while requiring Plaintiffs to bear the
19 cost and burden of maintaining these lots. For all practical purposes, the City has
20 confiscated the Plaintiffs' property for public use, but has not provided compensation.

21 65.    The Defendants have refused to withdraw or modify the offending regulations,
22 so Plaintiffs must be monetarily compensated for the taking.  As a direct and
23 proximate result of the above-described actions by Defendants and each of them,
24 Plaintiffs are informed and believed they have had their property taken with individual
25 values exceeding $300,000 for each lot.

26 66.    Plaintiffs have been damaged by the taking of its property in an amount to be
27 proven at trial, but Plaintiffs are informed and believe the property taken by
28 Defendants has a value in an amount well in excess of three hundred thousand dollars

18

37989.012:4851-0627-6112v.1

*COMPLAINT*

1  per lot.

2  67.    Plaintiffs have incurred and will continue to incur attorney's, fees, expert

3  witness fees, and other fees and costs, as a result of this proceeding, in amounts that

4  cannot yet be ascertained but which are recoverable pursuant to the provisions of 42

5  U.S.C. §§ 1983 and 1988.

6                          **FIFTH CAUSE OF ACTION**

7      **(By All Plaintiffs Against All Defendants For Denial Violation of Civil Rights**

8              **under 42 U.S.C. § 1983, the Denial Procedural Due Process**

9          Plaintiffs reallege and repeat the allegations contained in paragraphs 1 through

10 67, hereinabove and incorporate same by reference as if fully set forth herein.

11 68.    Based on the facts alleged herein, the Windelers were denied a full and fair

12 hearing before the Planning Commission and Board.  The County denied a fair

13 hearing by excluding from the administrative record all information in its possession

14 relevant to the decision of the County, particularly including communications from the

15 District and other internal and external entities.  This fact, combined with the

16 District's failure and refusal to accept or process applications for water and/or sewer

17 services, denied the Windelers a fair hearing as they were not and could not be in a

18 position to address adverse comments and recommendations of staff.  For example,

19 the County repeatedly raised the question of whether sewer service would be available

20 in the event the County approved development with an alternative source of water.

21 Plaintiffs are informed and believe that the District could provide such service and

22 that Defendants are aware of that fact, but purposefully excluded communications

23 from the District that would demonstrate that fact or otherwise undercut the

24 justification for denying the Variance.

25 69.    The Windelers are informed and believe that the public hearing process was

26 effectively a sham, with a pre-determined result and a staff report constructed to

27 support a pre-determined conclusion.  The Windelers are informed and believe, and on

28 that basis allege that the County is not an unbiased, independent body.  Plaintiffs are

19

*COMPLAINT*

1    further informed and believe that the political considerations of the County and the

2    potential for litigation against the County contributed to and caused the Windelers to

3    be subjected to a biased and unfair hearing process.

4    70.    Plaintiffs are informed and believe, and on that basis allege that they have been

5    deprived of their right to sewer services without notice, hearing or any process, much

6    less "due process." In addition, all Plaintiffs were denied due process by the failure

7    and refusal of the District to provide, accept and/or process applications for water

8    and/or sewer service. 71.Plaintiffs are informed and believe the District has a duty to

9    provide utility services to legally created lots or at least acknowledge that it plans not

10    to provide services. Plaintiffs have a right to develop their lots. Plaintiffs are informed

11    and believe that the District has refused to process applications for sewer service even

12    though it has the ability to provide such service to Plaintiffs who paid for the

13    development of the sewer system infrastructure through a special assessment and

14    continue to pay for the water and sewer infrastructure through property tax

15    assessments.

16    72.    The effect of the District's actions and inactions is to deprive Plaintiffs of their

17    constitutionally protected rights without process. Plaintiffs are informed and believe

18    that the District is acting in concert and with the agreement of the County, thereby

19    enabling the County to refuse to accept development applications for processing.

20    73.    Plaintiffs have been damaged by the actions and inactions of Defendants in an

21    amount to be proven at trial, but Plaintiffs are informed and believe the damage is an

22    amount well in excess of three hundred thousand dollars per lot along with thousands

23    of dollars in legal and other costs associated with Plaintiffs' efforts to secure the right

24    to develop their lots.

25    74.    Plaintiffs have incurred and will continue to incur attorney's fees, expert

26    witness fees, and other fees and costs, as a result of this proceeding, in amounts that

27    cannot yet be ascertained but which are recoverable pursuant to the provisions of 42

28    U.S.C. §§ 1983 and 1988.

## SIXTH CAUSE OF ACTION

### (By Windelers Against All Defendants For Violation of the
### Substantive Due Process Clause of the United States Constitution)

Plaintiffs reallege and repeat the allegations contained in paragraphs 1 through 74, hereinabove and incorporate same by reference as if fully set forth herein.

75.     The actions of the Defendants in processing Plaintiffs' applications are arbitrary, capricious, unreasonable and pretextual, and part of a concerted effort to prevent legal lots from development and to prevent the ripening of claims. The Defendants' actions and inactions and the County's denial of the Variance Application were pretextual, part of an intentional effort to prevent development of lots and prevent the ripening of legal claims.

76.     Plaintiffs are informed and believe, and on that basis allege that the Defendants have used temporary water law authority to shield from scrutiny the exercise of permanent land use authority to cap growth to benefit the community as a whole, without compensating the affected landowners. Plaintiffs are informed and believe, and on that basis allege that Defendants have intentionally avoided developing water to serve legal lots, including Plaintiffs, thereby contributing to or causing a "permanent emergency" used as a tool to effectuate the goal of limiting growth and forcing Plaintiffs' (and hundreds of other lots) to be preserved as open space.

77.     Plaintiffs have been damaged by the actions and inactions of Defendants in an amount to be proven at trial, but Plaintiffs are informed and believe the damage is an amount well in excess of three hundred thousand dollars per lot along with thousands of dollars in legal and other costs associated with Plaintiffs' efforts to secure the right to develop their lots.

78.     Plaintiffs have incurred and will continue to incur attorney's fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

21

*COMPLAINT*

1          WHEREFORE, Plaintiffs pray judgment as follows:

2 As to the First Cause of Action

3     1. For the issuance of a writ of mandate requiring the District to accept and

4        process applications for water and/or sewer service and to initiate steps to

5        develop water capacity for all legal lots within the District and costs of suit;

6 As to the Second Cause of Action

7     2. For issuance of a writ of mandate ordering the County to vacate the

8        resolution and adopt a new resolution approving the Variance;

9 As to the Third and Fourth Causes of Action

10     3. For a judgment mandating Defendants pay Plaintiffs just compensation for

11        property taken in an amount proven at trial,

12 As to the Fifth and Sixth Causes of Action;

13     4. For a judgment declaring that Defendants have violated the procedural

14        and/or substantive due process rights of Plaintiffs and damages according to

15        proof;

16 As to the Third, Fourth, Fifth and Sixth Causes of action

17     5. For costs of suit, including reasonable attorneys' fees, including the costs

18        and attorneys' fees incurred in the administrative hearing; and

19 As to all Causes of Action

20 6.     For such other and further relief as the Court deems just and proper.

21

22 Dated:  December 1, 2017        RUDDEROW LAW GROUP

23

24

25              By:    /s/ Mark D. aplert

26                   Mark D. Alpert

                   Attorneys for Plaintiffs

27

28

22

*COMPLAINT*

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

| Case No. | CV 17-8536 DSF (JEMx) | Date | 3/12/18 |
|---|---|---|---|
| Title | Michael Windeler et al. v. Cambria Community Water District et al. | | |

DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Defendants' Motions to Dismiss (Dkt. No. 13)

## I.   INTRODUCTION[1]

Plaintiffs own several lots in Cambria, an unincorporated area located within San Luis Obispo County. (First Amended Complaint (FAC) Dkt. No. 6 at ¶¶ 22–27.) Plaintiffs purchased or obtained ownership of their respective lots between 1962 and 1989, with the reasonable expectation that the lots could be developed with a single family home. (Id.) Plaintiffs have tried to obtain water and sewer service through Defendant Cambria Community Water District, but the District denied their applications, citing a decades-long water emergency. (Id. ¶ 28)

In January 2017, several Plaintiffs applied for a minor use or land use permit with Defendant County of San Luis Obispo. (Id. ¶ 29.) The County did not process the applications because they were not accompanied by written verifications of water and sewer service from the District. (Id.) In response, Plaintiffs Michael and Karen Windeler submitted a Development Application to the County on April 24, 2017, requesting a

---

[1] The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

variance from zoning requirements barring development of their land without a verification of water or sewer service from the District. (Id. ¶ 30.)

On August 24, 2017, the County Planning Commission held a hearing on the Windeler's Application. (Id. ¶ 32.)  The Commission denied the Application pursuant to the County Variance Code, finding that Plaintiffs did not meet the "special circumstances" requirement for granting a variance. (Id. ¶¶ 32–33.)  The Windelers timely appealed the Commission's decision to the County Board of Supervisors, but were ultimately unsuccessful. (Id. ¶¶ 34–36.)

Plaintiffs bring both administrative mandamus actions and state and federal claims against the District and County (collectively, Defendants).  Defendants move to dismiss or for Pullman abstention.  Because each party's requests for judicial notice, (see Dkt. Nos. 13, 16, 19, 21), are unopposed, all of the requests are granted.

## II.   LEGAL STANDARD

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.  As is the case here, the moving party asserting a facial jurisdictional challenge asserts that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  The court accepts the allegations in the complaint as true, and the plaintiff need not present evidence outside the pleadings. Id.

## III.   DISCUSSION

## A.   STANDING

The County contends that the Court lacks subject matter jurisdiction because the Plaintiffs do not suffer from a ripened injury. (See Dkt. No. 13 at 19–20.)  However, the County appears to conflate Article III standing with the prudential ripeness doctrine under Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

(1985).[2]  (See id.)  The two doctrines are separate inquiries.  See Guggenheim v. City of Goleta, 638 F.3d 1111, 1116 (9th Cir. 2010) (en banc).

Here, Plaintiffs have claimed an injury in fact—deprivation of the value of their land.  (See FAC ¶ 38.)  This injury is traceable to the County's land use regulations and the District's water and sewage service policy.  This injury is also redressable by a decision in their favor.  Therefore, Plaintiffs have standing and the Court has subject matter jurisdiction.  See Guggenheim, 638 F.3d at 1116.

## B.    RIPENESS[3]

Unlike standing, Williamson ripeness is prudential rather than jurisdictional.  See Guggenheim, 638 F.3d at 1117 (citing Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733–34 (1997)) (assuming ripeness); see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 729 & n.10 (2010) (ripeness question caused by a plaintiff's failure to seek just compensation in state court is not jurisdictional).  "The prudential character of the Williamson County requirements do not, however, give the lower federal courts license to disregard them."  Peters v. Vill. of Clifton, 498 F.3d 727, 734 (7th Cir. 2007); see also Paramount Contrs. & Developers, Inc. v. City of Los Angeles, 805 F. Supp. 2d 977, 1004–05 (C.D. Cal. 2011) (declining to waive Williamson ripeness requirements).

In Williamson, the Supreme Court
imposed two ripeness requirements on federal takings claims.  First, a regulatory takings claim is not ripe until the appropriate administrative agency has made a final decision on how the regulation will be applied to the property at issue. . . . Second, a property owner who sues for inverse condemnation, claiming that his property was taken without just compensation must generally seek that

---

[2] On March 5, 2018, The Supreme Court granted certiorari in Knick v. Township of Scott to address Williamson's ripeness requirement.

[3] The County's ripeness analysis is limited to the Williamson ripeness doctrine, not Article III, or jurisdictional, ripeness.  (See Dkt. No. 13 at 20.)  In any case, Plaintiffs' injury is not "too 'imaginary' or 'speculative' to support jurisdiction."  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000).  Plaintiffs allege that their property has been deprived of value due to actions already taken by Defendants, not future events.  See Adam Bros. Farming, Inc. v. County of Santa Barbara, 604 F.3d 1142, 1148 n. 4 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

compensation through the procedures provided by the state before bringing a federal suit. Guggenheim, 638 F.3d at 1117. In the Ninth Circuit, a California landowner must submit to local decision-makers at least one meaningful application for a development project and a variance. S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 503 (9th Cir. 1990); see also Guggenheim, 638 F.3d at 1117.

Plaintiffs have not satisfied the second Williamson requirement—seeking compensation through state procedures. For as-applied regulatory takings claims in California, plaintiffs must first bring an inverse condemnation claim in state court. See Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1053 & n.7 (9th Cir. 2004). Plaintiffs' claim is unripe because they have not sought compensation in state court.

Plaintiffs argue that their state law inverse condemnation claim in this Court satisfies the second Williamson requirement, but they cite to no Ninth Circuit precedent for this proposition. To the contrary, numerous courts in the Ninth Circuit have held that the second Williamson requirement is met only by bringing inverse condemnation claims in California state court. See, e.g., Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184, 1190 (9th Cir. 2008); Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1034 (9th Cir. 2005); Ventura Mobilehome, 371 F.3d at 1053; but see Adam Bros., 604 F.3d at 1148 (assuming without deciding that takings claims previously pursued in state court under the federal Due Process and Equal Protection Clauses were ripe and finding claims barred by res judicata).

Because Plaintiffs fail to satisfy both Williamson requirements, both their state and federal takings claims must be dismissed. See Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 408 (9th Cir. 1996) (dismissing state law inverse condemnation claim); Equity Lifestyle, 548 F.3d at 1188, 1192 (dismissing section 1983 claim for a violation of the Fifth Amendment). Accordingly, the Court dismisses Plaintiffs' first, second, third, and fourth claims without prejudice.[4]

---

[4] It is not clear whether the Williamson ripeness doctrine applies to Plaintiffs' fifth and sixth claims under the Due Process Clause. See Adam Bros., 604 F.3d at 1148 (declining to determine whether Williamson ripeness applies to due process claims); MHC Fin. L.P. v. City of San Rafael, 714 F.3d 1118, 1130–31 (9th Cir. 2013) (assuming ripeness and affirming district court's finding of no substantive due process violation); see also Bowlby v. City of Aberdeen, 681 F.3d 215, 223–24 (5th Cir. 2012) (declining to extend Williamson ripeness requirement to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

## C.   **PULLMAN** ABSTENTION

Even if the Court were to waive the second Williamson requirement, the Pullman abstention doctrine independently requires dismissal of Plaintiffs' claims.

"The Pullman abstention doctrine is a narrow exception to the district court's duty to decide cases properly before it which allows postponement of the exercise of federal jurisdiction when a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law." C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983) (internal quotation omitted). "Federal courts should abstain in cases presenting a federal constitutional issue if constitutional adjudication could be avoided or if the constitutional question could be narrowed by a ruling on an uncertain question of state law." Pearl Inv. Co. v. City and County of San Francisco, 774 F.2d 1460, 1462 (9th Cir. 1985).

Courts in the Ninth Circuit consider three factors to determine whether to apply Pullman abstention, and abstain only if "(1) [t]he complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open[;] (2) [s]uch constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy[; and] (3) [t]he possibly determinative issue of state law is doubtful." Smelt v. County of Orange, 447 F.3d 673, 679 (9th Cir. 2006). "A district court abstaining under Pullman must dismiss the state law claim[s] and stay its proceedings on the constitutional question until a state court has resolved the state issue." Cedar Shake and Shingle Bureau v. City of Los Angeles, 997 F.2d 620, 622 (9th Cir. 1993).

The Ninth Circuit has consistently and repeatedly held that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." San Remo Hotel v. City and County of San Francisco, 145 F.3d 1095, 1105 (9th Cir. 1998); see also Columbia Basin Apartment Ass'n v. City of Pasco, 268 F.3d 791, 802 (9th Cir. 2001); Santa Fe Land Imp. Co. v. City of Chula Vista, 596 F.2d 838, 840 (9th

---

certain due process claims); Kurtz v. Verizon New York, Inc., 758 F.3d 506, 514–15 (2d Cir. 2014) (applying Williamson ripeness requirement to due process claims when based on the same facts as a takings claim). In any case, as explained below, the Court does not resolve Plaintiffs' fifth and sixth claims at this time due to the Pullman abstention doctrine.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Cir. 1979). Because this case concerns a dispute over the County and District's land use planning policies as it relates to water and sewer services, the first factor is present.

The second factor requires only that "[a] state law question . . . has the potential of at least altering the nature of the federal constitutional questions[.]" C-Y Dev., 703 F.2d at 378. Resolution of Plaintiffs' state-law could narrow or even moot the alleged constitutional violations, so this requirement is satisfied. Id. (finding second requirement satisfied where resolution of the plaintiff's Cal. Civ. Proc. Code § 1094.5 claim "could dispose of most of [its] federal constitutional claims); see also Sinclair Oil, 96 F.3d at 409 (9th Cir. 1996) ("it is sufficient [for Pullman abstention] if the state law issues might 'narrow' the federal constitutional questions.")

The final factor—whether resolution of the state law issues is uncertain—is the main point of contention between the parties. Plaintiffs argue that resolution of the underlying state law issues is not uncertain. Specifically, Plaintiffs contend that their writ petitions seeking to overturn the denial of the Windelers' variance application "have no chance of prevailing" in state court and resolution is therefore not uncertain.[5] (Dkt. No. 18 at 18.) In contrast, the County argues that whether a local government has abused its discretion by limiting its analysis of a variance application to enumerated special circumstances criteria in its local ordinance is an issue of first impression. (See Dkt. No. 13 at 26; Dkt. No. 21 at 17.)

In the Ninth Circuit, "only a minimal showing of uncertainty [is required] to satisfy the third Pullman factor in land use cases." Patel v. City of Los Angeles, 455 Fed. Appx. 743, 744–45 (9th Cir. 2011) (citing Sinclair Oil, 96 F.3d at 409–10 and Pearl Inv., 774 F.2d at 1465). For example, in Sinclair Oil, the Ninth Circuit found that the third Pullman factor was met even though the "inverse condemnation claim advanced by [plaintiff did] not appear to be particularly extraordinary or unique, and [plaintiff did] not raise a novel claim of statutory interpretation." 96 F.3d at 410. It was enough that "the [land use] Plan has not yet been challenged in the state courts." Id. "Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and state-wide land use laws and regulations applicable to the area in question." Sederquist v. City of Tiburon, 590 F.2d 278, 282–83 (9th Cir. 1978).

---

[5] Plaintiffs state that they filed the petitions for writs of mandate because they are required to do so under state law in order to bring a claim for inverse condemnation. (See Dkt. No. 18 at 18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

Here, on appeal of the Windelers' Application, the County's Board of Supervisors interpreted the County's Coastal Zone Land Use Ordinance (CZLUO) § 23.01.045(d)(1)(ii) as requiring the Board to consider only special circumstances related to size, shape, topography, location, or surroundings. (See Dkt. No. 13, Ex. F at 4.) The Board noted that California Government Code § 65906 allowed local governments to consider "special circumstances applicable to the property, including [emphasis added] size, shape, topography, location or surroundings" when deciding whether to grant a variance from zoning ordinances. (Id. at 5.) However, the Board concluded that § 65906 simply provided the minimum criteria that the County must consider in deciding whether to grant a variance and did not mandate consideration of other, non-enumerated special circumstances. (Id.) As a result, the Board found that CZLUO § 23.01.045 did not violate California law and denied the Windelers' Application.

Although California's appellate courts have considered similar legal questions (see, e.g., Craik v. County of Santa Cruz, 81 Cal. App. 4th 880 (2000) (whether the county could consider FEMA and related county regulations in additional to the five enumerated special circumstances)), Plaintiffs have not cited any California court decision directly addressing whether a local government may limit its "special circumstances" analysis to the five enumerated factors of § 65906. Although this legal question may not concern a particularly "novel" issue or one where "precedents conflict," the Ninth Circuit has suggested that such a standard is inappropriate for applying the third Pullman factor. Pearl Inv., 774 F.2d at 1465. Rather, given the "minimal showing" required for land use cases, Patel, 455 Fed. Appx. 743, 744, the uncertainty element of Pullman abstention is satisfied.

Plaintiffs' apparent concession that their writ petitions are doomed to fail in state court does not change the analysis. The Ninth Circuit has cautioned that federal courts should not "claim the ability to predict whether a state court would decide that the [local government] here abused its discretion." Santa Fe, 596 F.2d at 841. Although the Superior Court in San Luis Obispo County has denied similar writs of mandate and inverse condemnation claims (see generally, Dkt. No. 16 (District's Request for Judicial Notice of various Superior Court cases)), each of the cases is factually distinguishable: they concern different parties and different lots of land. Under Ninth Circuit law, this is enough to satisfy the uncertainty requirement. See Sederquist, 590 F.2d at 282–83 (enactment of land use regulations "is by nature a question turning on the peculiar facts of each case"); but see Pearl Inv., 774 F.2d at 1465 (criticizing Ninth Circuit's lax

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

approach to the third factor, but affirming district court's decision to abstain under binding precedent).

The Court abstains under the <u>Pullman</u> doctrine.  Plaintiffs' Cal. Code Civ. Proc §§ 1085, 1094.5, state law inverse condemnation, and federal takings claim under 42 U.S.C. § 1983 are dismissed, and their remaining federal due process claims under 42 U.S.C. § 1983 are stayed until a state court has resolved the state issues raised by this case.

## IV.    CONCLUSION

Plaintiff's first, second, third, and fourth causes of action are dismissed without prejudice and their fifth and sixth causes of action are stayed.  The parties must jointly file a status report by September 10, 2018 to update the Court on the state court proceedings, and then file a status report every six months thereafter.  The parties must also file a status report within 15 days of state court resolution of the state law issues.

IT IS SO ORDERED.

# EXHIBIT C

Attachment 3



**SAN LUIS OBISPO COUNTY**

# DEPARTMENT OF PLANNING AND BUILDING

Promoting the wise use of land – Helping to build great communities

July 28, 2017

Rudderow Law Group
Attn: Mark Alpert
2601 Main Street Suite 130
Irvine, CA 92614

Michael Windeler
2605 Quail Ridge Ln.
Huntsville, AL 35803

SUBJECT:   **MICHAEL & KAREN WINDELER**
            **County File Number: DRC2016-00111**
            **HEARING DATE: JULY 13, 2017_PLANNING COMMISSION**

We have received your request on the above referenced matter. In accordance with County Real Property Division Ordinance Section 21.04.020, Land Use Ordinance Section 22.70.050, and the County Coastal Zone Land Use Ordinance 23.01.043, the matter will be scheduled for public hearing before the Board of Supervisors. A copy of the appeal is attached.

The public hearing will be held in the Board of Supervisors' Chambers, County Government Center, San Luis Obispo. As soon as we get a firm hearing date and the public notice goes out you will receive a copy of the notice.

Please feel free to telephone me at 781-5718 if you have any questions.

Sincerely,

Nicole Retana

Nicole Retana, Secretary
County Planning Department

cc: Airin Singewald, Project Manager
Ben Dorf, County Counsel

976 OSOS STREET, ROOM 300 • SAN LUIS OBISPO • CALIFORNIA 93408 • (805) 781-5600 • TTY/TDD RELAY – 711
planning@co.slo.ca.us • FAX: (805) 781-5624 • http://www.slocounty.ca.gov/planning.htm

Attachment 3

#937

## COASTAL APPEAL FORM

SAN LUIS OBISPO COUNTY DEPARTMENT OF PLANNING AND BUILDING

976 Osos Street • Room 300 • San Luis Obispo • California 93408 • (805) 781-5600

*Promoting the Wise Use of Land • Helping to Build Great Communities*

Please Note: An appeal should be filed by an aggrieved person or the applicant at each stage in the process if they are still unsatisfied by the last action.  Michael + Karen

**PROJECT INFORMATION**  Name: Winkeler    File Number: DRC 2016-00111

**Type of permit being appealed:**
☐ Plot Plan    ☐ Site Plan    ☐ Minor Use Permit    ☐ Development Plan/Conditional Use Permit
☒ Variance    ☐ Land Division    ☐ Lot Line Adjustment    ☒ Other See Letter submitted with appeal

**The decision was made by:**
☐ Planning Director (Staff)    ☐ Building Official    ☐ Planning Department Hearing Officer
☐ Subdivision Review Board    ☒ Planning Commission    ☐ Other _____
Date the application was acted on: JULY 13, 2017

**The decision is appealed to:**
☐ Board of Construction Appeals    ☐ Board of Handicapped Access
☐ Planning Commission    ☒ Board of Supervisors

**BASIS FOR APPEAL**
State the basis of the appeal. Clearly state the reasons for the appeal. In the case of a Construction Code Appeal, note specific code name and sections (sanitary). (Attach additional sheets if necessary)
See Letter submitted with appeal

List any conditions that are being appealed and give reasons why you think it should be modified or removed.

Condition Number CW-8 etc    Reason for appeal (attach additional sheets if necessary)
See Attached Letter

**APPELLANT INFORMATION**  for Michael + Karen Winkeler
Print name: Mark Alpert
Address: (on file)
Phone Number (daytime): _____
We have completed this form accurately and declare all statements made here are true
Signature  W/ POA for Winkelers    Date 7/23/17

OFFICE USE ONLY
Date Received: 7/26/2017    By: NTR
Amount Paid: $950.00 (CW# 938)    Receipt No. (if applicable) 0250

2017 JUL 26 AM 10:22    SLO COUNTY PLANNING/BUILDING DEPT

COASTAL APPEAL FORM    PAGE 3 OF 3
SAN LUIS OBISPO COUNTY PLANNING & BUILDING    APRIL 23, 2015
SLOPLANNING.ORG    PLANNING@CO.SLO.CA.US

Attachment 3



**COASTAL APPEALABLE FORM**

SAN LUIS OBISPO COUNTY DEPARTMENT OF PLANNING AND BUILDING
976 Osos Street • Room 300 • San Luis Obispo • California 93408 • (805) 781-5600

*Promoting the Wise Use of Land • Helping to Build Great Communities*

*Please Note:* An appeal should be filed by an aggrieved person or the applicant at each stage in the process if they are still unsatisfied by the last action.

PROJECT INFORMATION   Name: Michael & Karen Windeler     File Number: DRC 2016 - 00111

Type of permit being appealed:
☐ Plot Plan  ☐ Site Plan  ☐ Minor Use Permit  ☐ Development Plan/Conditional Use Permit
☑ Variance  ☐ Land Division  ☐ Lot Line Adjustment  ☑ Other: See Attached Letter (Submittal)

The decision was made by:
☐ Planning Director (Staff)  ☐ Building Official  ☑ Planning Department Hearing Officer
☐ Subdivision Review Board  ☑ Planning Commission  ☐ Other _____
Date the application was acted on: July 13, 201(7)

The decision is appealed to:
☐ Board of Construction Appeals  ☐ Board of Handicapped Access
☑ Planning Commission  ☑ Board of Supervisors

**BASIS FOR APPEAL**
☑ INCOMPATIBLE WITH THE LCP. The development does not conform to the standards set forth in the Certified Local Coastal Program of the county for the following reasons: (attach additional sheets if necessary)
Explain: Luis companion letter submitted with this appeal.

☐ INCOMPATIBLE WITH PUBLIC ACCESS POLICIES. The development does not conform to the public access policies of the California Coastal Act – Section 30210 et seq of the Public Resource Code (attach additional sheets if necessary)
Explain: _____

List any conditions that are being appealed and give reasons why you think it should be modified or removed.
Condition Number CW-9, etc   Reason for appeal (attach additional sheets if necessary)
See Attached Letter

**APPELLANT INFORMATION**
Print name: Mark Hiatt For Michael & Karen Windeler
Address: (on file)    Phone Number (daytime): _____

I/We are the applicant or an aggrieved person pursuant to the Coastal Zone Land Use Ordinance (CZLUO) and are appealing the project based on either one or both of the grounds specified in this form, as set forth in the CZLUO and State Public Resource Code Section 30603 and have completed this form accurately and declare all statements made here are true.

Signature: ____ For Windeler     Date: 7/23/17

---

OFFICE USE ONLY
Date Received: _____      By: _____
Amount Paid: _____      Receipt No. (if applicable): _____

COASTAL APPEAL FORM                                PAGE 2 OF 3
SAN LUIS OBISPO COUNTY PLANNING & BUILDING         APRIL 20, 2015
SLOPLANNING.ORG                                    PLANNING@CO.SLO.CA.US

Page 3 of 14

Attachment 3

# RUDDEROW LAW GROUP

Daniel T. Rudderow
Principal
dan@rudderowlaw.com

A Professional Law
Corporation
2601 Main Street, Suite 1300
Irvine, California 92614
(949) 565-1344

Mark D. Alpert
Of Counsel
mark@rudderowlaw.com

July 25, 2017

San Luis Obispo County Department of Planning and Building
Attn.: Records Management Division
976 Osos Street, Room 200
San Luis Obispo, CA 93408

Re: Appeal of Denial of Variance Application by Michael and Karen Windeler
File No. DRC 2016-00111

Dear Board Members

This letter sets out the grounds for the appeal of Michael and Karen Windeler to the denial of their request for a Variance in conjunction with various requirements associated with the development of a single-family home, including Cambria Community Wide Planning Area Standard # 8, which requires a verification of water and sewer availability letter from Cambria Community Services District ("District").

Before addressing the merits of the appeal, it is important to confirm that the Applicants and Board of Supervisors will have before it a complete record of the proceedings below, including a record of responses from all agencies both inside and outside of the County which provided information or comments to the County regarding the Variance Application. In particular, we believe the District was requested to and did provide comments to County staff regarding the Variance Application, but neither the request nor the response of the District was included in the agenda package for the hearing before the Planning Commission. At the Planning Commission Hearing I requested that such information, regardless of source, be included in and part of the administrative record for consideration of this appeal and reiterate that request.

In addition, during the Planning Commission hearing some questions arose regarding the Windeler's prior efforts to develop their lot. Unfortunately, I was not aware of all the relevant facts, so I am providing them with this letter.

In 1988, Michael and Karen Windeler purchased their property to someday build a retirement/vacation home. When they purchased their lot, they were aware the CCSD had a water and sewer service waiting list for landowners trying to immediately build a home. In 1986, the CCSD formed a waiting list because an EPA constraint limited sewer connections to

Page 4 of 14

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

125 per year. When new construction demand exceeded the annual sewer connection constraint, the CCSD formed its waiting list for those seeking active water and sewer services to commence development. Because the Windelers were not then ready to build, they did not join the CCSD's waiting list.

In 1994, they contacted a company to help design their home and estimate development costs. During that process, they contacted the CCSD and were told its waiting list for water and sewer service was closed, but the County had opened an overflow list for those seeking water and sewer service from CCSD.  When the County ordered the CCSD to close its waiting list in 1990, the County concurrently formed an overflow list.  The County's waiting list was to be served in linear order, once the CCSD's waiting list was exhausted.

Over the next few years, the Windelers regularly contacted the CCSD to check the status of its waiting list.  They were told the County was allowing about 60 houses to be built each year. When the annual building allocation for Cambria was ordained by the County, the CCSD's procedure was to ask its wait list holders if they were ready to build, and it went down the list until the available building allocations were fully employed.  The Windelers were very concerned to learn that members of the wait list could defer an offer of services yet remain on the list, which meant the waiting list might never be exhausted. Very simply, if even one member of the waiting list continually deferred an offer of services, the CCSD list would never be fully served or exhausted.

In fact, the County's building allocations were not fully utilized during 3 years in the 1990's. Thus, the CCSD's list was effectively exhausted during those years, but the County's wait list holders were never offered services.  If the Windelers were offered services in or after 1994, they would have accepted them and constructed their home.

In 1997, the Windelers exchanged letters with the County and CCSD. The County declared: "Once the CCSD has exhausted its current waiting list, it will start using the county's allocation list to determine priority for will serve letters."  The CCSD confirmed it planned to serve the County's waiting list and stated: "My records show that you are number 102 on the County's waiting list, and this District has 862 names on its waiting list so in essence, you are in line behind 963 others waiting to build in Cambria."  And, "[b]ecause there are so many names remaining on Cambria's waiting list, no procedure has yet been devised for using names from the County list.  We will certainly advise you when that happens."

When it adopted Ordinance 2-2000 (codified as District Code Section 8.04.050) in 2000, the CSSD no longer planned to serve the County's overflow list; instead, the CCSD only plans to provide water and sewer will serve letters and connections to properties on its waiting list.

2

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

However, the CCSD never advised the Windelers that it had changed its future service plans concerning the County waiting list. Because the original purpose of the County's waiting list was no longer consistent with CCSD Code, CCSD's Buildout Reduction Program (BRP), or updated community planning documents, the County closed its waiting list in 2006.

Around 2007, the Windelers contacted the County to determine what was happening with its waiting list. They were initially told the County's waiting list no longer existed. After reminding the County they paid $500 to join the County's overflow list, they were told the County's list was simply a building allocation list that had nothing to do with acquiring water and sewer service from CCSD. The County never informed the Windelers that the purpose of its waiting list had changed over time, or that its wait list holders were targeted by the CCSD's BRP: their properties would remain undeveloped, indefinitely, because they would not obtain the public services required to file and approve development applications.

In September 2016, the Windelers sent a written request to the CCSD for applications for water and sewer services. In reply, District Counsel informed them the requested applications were not currently available. In January 2017, the Windelers sent an application to the CCSD for water and sewer services. In reply, District Counsel informed them CCSD was not accepting applications for water and sewer service.

On January 18, 2017, the Windelers applied for a minor use permit with the County, but the unprocessed application was returned. Subsequent communication verified that County Wide Planning Area Standard #8 (CW-8) prevented the County from accepting an application for development that did not include water and sewer will serve letters from CCSD.

On April 26, 2017, the Windelers submitted a variance to CW-8 and other constraints. The variance requested for CW-8 would, if approved, allow the Windelers to simply submit a development application that proposes to use non-CCSD supplied water and a septic system, or a combination of non-CCSD supplied water coupled with wastewater treatment from the CCSD's sewer. Denial of the variance would prevent them from submitting a federal and state mandated development application because they are not eligible for water or sewer will letters or connections from CCSD. The Windelers do not have a CCSD wait list position, and cannot apply to join the waiting list under District Code Section 8.04.070.

The staff report did not include the correct site map. It is submitted with this appeal.

In seeking a variance, the Applicants sought relief from the following statutes/regulations in order to develop the lot:

    1) County Code Section 19.07.022;

3

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

> 2) County Code Section 19.07.040 (b);
>
> 3) County Code Section 19.04.041;
>
> 4) Planning area standard CW-8; and
>
> 5) Any other statute/regulation which would prevent the development of the Property without a water and/or sewer connection with the District.

Staff review of the application made clear that the additional statutory provisions for which the Windelers would need relief are as follows:

Section 23.04.430 - absence of an intent to serve letter from CCSD or other evidence of water or sewer availability.

Section 23.04.044(e) - Minimum site areas for residential development with a well and septic of 4,000 square feet.

Section 23.05.034 - Grading standards which limit the ability to grade slopes greater than 30 percent to develop a single-family home.

Alternatively, the Applicant requested that the County require CCSD to process and approve a connection to the District facilities for the provision of water and or sewer services.

The Planning Commission did not address many of these issues, including the possibility of requiring or demanding that the District provide water and/or sewer services. The Application was phrased in the alternative in that the Applicants believed that if they were approved for the use of an alternative source of water they would likely be able to obtain sewer services from the District.

The Windelers are prepared to develop their property with a well or the use of trucked in water. If feasible, they would utilize a septic system, but that should not be necessary as the sewer is physically available and has sufficient capacity. Indeed, the Windelers have paid for the development of the sewer infrastructure.

A variance to Planning Area Standard CW-8 is necessary because CW-8 requires a will serve letter for water and sewer service from the CCSD before a land use or building permit application is accepted by the County. A variance from this section is required to develop with an alternative water supply source and wastewater treatment solution.

In Section 22.62.070(D)(1), the County Code sets forth the findings that must be made in order to approve a variance. The Planning Commission concluded these findings could not be met.

4

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

We believe these conclusions were in error for the reasons set forth in our prior
correspondence, this letter, my comments before the Commission and for the reasons I will
explain at the hearing on this appeal. In particular, the Windelers contend the following errors:

1.  <u>The finding that the Variance constitutes a grant of special privileges.</u>

The finding that the Applicants seek a grant of special privileges was in error. The Variance
seeks the right to develop a single-family home which is not "inconsistent with the limitations
upon other properties in the vicinity and land use category in which the property is situated…"
Indeed, other properties in the vicinity and land use category have repeatedly been approved
for the proposed use.

The Planning Commission found it was a "special privilege" because other property owners
were required to utilize the public water and sewer system. Of course, the Windelers would
gladly develop with a connection to the public water and sewer system if it was available. Far
from being a special "privilege" they have a special burden, the unavailability of public water
and sewer connections. They are seeking only the right to develop single-family homes, just
like their neighbors. The Commission finding essentially defines the variance request as a
special privilege. Of course, every variance request would be a "special privilege" if defined in
those terms.

2.  <u>The Finding that there are special circumstances applicable to the property, including
size, shape, topography, location or surroundings, the strict application of the zoning
ordinance deprives such property of privileges enjoyed by other property in the vicinity
and under identical zoning classification.</u>

The Commission found there was no "special circumstances" based on the conclusion that the
only special circumstances that could be considered were size, shape, topography, location or
surroundings. In this case, the City was apparently relying on the more narrow definition of
"special circumstances" set forth in County Code § 2.62.070(D)(1)(b) which specifies that "only"
these factors can be considered. However, the controlling state law, Government Code §
65906, quoted in the heading, uses the term "including" rather than "only."

Staff concedes that state law is controlling but took the position that "including" actually meant
"only" so that the special circumstances were limited to size, shape, topography, location or
surroundings. This is a ridiculous position that runs afoul of basic rules of interpretation, which
requires that statutes be interpreted based on their plain meaning whenever possible. (See *Day
v. City of Fontana* (2001) 25 Cal 4th 268, 272; *Tucker Land Co. v. State of California* (2001) 94
Cal.App.4th 1191, 1197)

5

Page 8 of 14

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

The requirements in this section for a variance are met in this case. First, it seeks the right to develop a single-family home which is not "inconsistent with the limitations upon other properties in the vicinity and land use category in which the property is situated." Indeed, other properties in the vicinity and land use category have repeatedly been approved for the proposed use.

Second, there are "special circumstances applicable to the property" and "the strict application of this Title would deprive the property of privileges enjoyed by other property in the vicinity that is in the same land use category." The property was acquired by the Applicants at a time and based on a purchase price reflecting the reasonable expectation of the right to develop a single-family home. They purchased the parcel in 1988 for $13,000 with the intention of building a vacation/retirement home. We have a record of correspondence between the County and CCSD relating to their rights to obtain water and sewer from the CCSD. In fact, the County informed them that the CCSD would provide water and sewer service to members of the County allocation list; they hold position number 102 on that list. Clearly, the CCSD has no intention of providing these services. Indeed, CCSD won't even accept an application for services or otherwise indicate when or how it will provide service. Other identically situated property owners have, in fact, been able to develop single-family homes. While the circumstances of the Applicants are not unique, it is also different from other property owners who may have speculatively acquired lots after it became apparent that development might be hampered by the absence of available water and sewer service. As noted above, the Applicants assume that, consistent with the Government Code, the "special circumstances" are not limited to "size, shape, topography, location, or surroundings." The special circumstances that should allow them to develop without District water and sewer service is the simple fact that they are not eligible for these services because they do not have a District wait list position; see District Code Section 8.04.050. Further, District Code Section 8.04.070 prevents them from applying to join the closed waiting list.

   3. The Variance does not authorize a use that is not otherwise authorized in the land use category.

Staff concluded, and the Planning Commission agreed, that the Applicants sought a use not authorized in the land use category because Section 23.04.044(e) does not allow for a single-family residence with a well and septic on a lot that is smaller than an acre.

The land use is for a single-family home and the Commission again engaged in circular logic by defining the land use in terms of the variance that is sought. If the Applicants sought to vary a setback requirement, you could say it was not an authorized land use because the setback statute does allow for the "use" of single family homes with a reduced set back.

6

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

The "land use" sought in this case is a single-family home. Thus, the Commission should have
found that the Variance would not authorize a use not otherwise authorized in the land use
category.

4. The variance is consistent with the provisions of the Local Coastal Program

The staff report and findings claim the variance is inconsistent with numerous provisions of the
LCP. However, the staff report and findings fail to identify any particular policy and, on that
basis, no such finding should have been made.

The staff report did identify (and Commission found) non-compliance with provisions barring
development on a slope of over 30 percent. However, as the staff report concedes, this
provision is regularly waived by Variance with a showing that the home could be safely
constructed. The Applicants requested a variance regarding all provisions preventing the
project and would be prepared to accept a Variance subject to submitting plans and studies
demonstrating the home can be safely built. Attached is information regarding the property
slope, which is at approximately 35% and can fairly easily accommodate development, as it has
with nearby lots.

The Applicants contend that approval is necessary to comply with the LCP because the
California Coastal Act requires that the LCP be applied in a manner which avoids a taking.
Section 30010 of the Coastal Act affirms that the Act shall "not be construed as authorizing the
commission, port governing body, or local government acting pursuant to this division to
exercise their power to grant or deny a permit in a manner which will take or damage private
property for public use, without the payment of just compensation therefor."

To the extent the Variance seeks to develop in contravention with Cambria Community Wide
Standard 8, again, that is the point of the Variance—to develop without a CCSD water or sewer
connection because CCSD is refusing to accept much less grant or wait list such applications.

5. The Variance would not "adversely affect public health or safety, is not materially
detrimental to the public welfare, nor injurious to nearby property or improvements."

Staff raises, and the Planning Commission found, there were legitimate health issues regarding
the co-location of a well and septic systems on a small lot. However, as noted during the
Planning Commission hearing, the Windelers believe this issue can be addressed in one of two
ways. First, the approval could be conditioned on submitting plans demonstrating a well and
septic system could be safely constructed on the property. Second, the Windelers would
accept a partial variance allowing them to develop only without a CCSD water connection, using
a well or trucked in water. This resolution is likely far more practical as there is no reason the

7

Attachment 3

San Luis Obispo County Department of Planning and Building
July 25, 2017

District could not provide sewer services to the Applicants if a source of water is available.  As a result, the Windelers would be prepared to move forward to request a sewer connection from CCSD if a variance is approved for alternative water sources and are prepared to take any steps needed to secure sewer service which is available and for which there is sufficient capacity.

This issue underlines the importance of having comments from CCSD regarding the variance application.  The District can advise this body if there are any concerns regarding the utilization of the public sewer system, which is already serving nearby homes.

Finally, I want to mention the CEQA determination.  While we agree the project is exempt from CEQA, we do not agree with the basis for the exemption (i.e. project denial).  The project is categorically exempt for at least two different reasons.  First, there is a categorical exemption for single-family homes located in urban area and currently zoned for use.  Second, there is a categorical exemption for residential in-fill projects.

Thank you for your consideration of this Application.

Sincerely,

Mark D. Alpert, Esq.

8

Attachment 3



Attachment 3

# RUDDEROW LAW GROUP

**Daniel T. Rudderow**
Principal
dan@rudderowlaw.com

A Professional Law
Corporation
2601 Main Street, Suite 1300
Irvine, California 92614
(949) 565-1344

**Mark D. Alpert**
Of Counsel
mark@rudderowlaw.com

July 26, 2017

San Luis Obispo County Department of Planning and Building
Attn.: Records Management Division
976 Osos Street, Room 200
San Luis Obispo, CA 93408

Re: Appeal of Denial of Variance Application by Michael and Karen Windeler
File No. DRC 2016-00111

Dear Board Members

Enclosed please find the site map inadvertently omitted from the appeal we submitted
yesterday.  Please include it with the appeal.

Sincerely,

Mark D. Alpert, Esq.

Encl.

Page 13 of 14

47
Exhibit C

Attachment 3



APN 023-202-018                    Windler

# EXHIBIT D



23.01.030 - Applicability of the Coastal Zone Land Use Ordinance.

The provisions of this title apply to all land use and development activities within the unincorporated areas of San Luis Obispo County located in the California Coastal Zone established by the California Coastal Act of 1976, as provided by this section. When a proposed land use is located outside the Coastal Zone, land use permit requirements and applicable development standards are determined by the Land Use Ordinance, Title 22 of this code.

a. **Proposed uses.** The provisions of this title apply to all lots, buildings, structures and uses of land or bodies of water to be created, established, constructed, altered or replaced after the adoption of this title unless specifically exempted by this section. It shall be unlawful and a violation of this code for any person to establish, construct, alter, replace, operate or maintain any building, structure, use of land or body of water, contrary to or without satisfying all applicable provisions of this title.

b. **Effect on existing uses.** The provisions of this title are not retroactive in their effect on a use of land lawfully established as of the date of adoption of this title, unless an alteration, expansion or modification to an existing use is proposed which requires a land use permit pursuant to this title. [Amended 1992, Ord. 2570]

c. **Land divisions.** This title (including applicable planning area standards adopted by reference as part of this title by Section 23.01.022) determines the minimum parcel size for new land divisions. Title 21 of this code contains the specific procedures and requirements for the land division process, including compliance with coastal development permit requirements.

d. **Public roads.** The provisions of this title are not applicable to the repair and maintenance of public roads within road rights-of-way by the county of San Luis Obispo or its contractors, except where a permit may be required by Chapter 23.03 of this title.

e. **Permits issued under the Zoning Ordinance and Land Use Ordinance.** This section determines how the Coastal Zone Land Use Ordinance affects land use permits issued before adoption of this title under the provisions of Ordinance 603 (the Zoning Ordinance of the County of San Luis Obispo) or Title 22 of this code (the Land Use Ordinance) and all amendments thereto, and land use permits issued before amendments to this title or the Land Use Element/Local Coastal Plan which have changed land use permit requirements or allowable uses of land.

(1) **Entitlements consistent with the Coastal Zone Land Use Ordinance.** All building permits, departmental review approvals, conditional use permits, development plans, variances, plot plan or site plan approvals issued under the Zoning Ordinance or Title 22 of this code which authorized uses that were established before the effective date of Title 22 or this title, and are still allowed in their locations by the Land Use Element, shall be deemed to have been issued pursuant

to this title as set forth in subsections (i) through (vi) of this section, provided that a coastal development permit as required by the Coastal Act has also been obtained for each approved use.

   (i)   An approved building permit shall be treated for all purposes as if it were a Plot Plan approval; a Plot Plan approved under Title 22 shall be treated as a Plot Plan approval under this title.

   (ii)  An approved departmental review shall be treated for all purposes as if it were a Minor Use Permit approval (if Minor Use Permit approval would now be required to authorize such use under the provisions of this title), and as a Development Plan approval if such use would now be required by this title to be authorized by Development Plan approval.

   (iii) A site plan approved under the provisions of Title 22 shall be treated for all purposes as if it were a Minor Use Permit approval (if Minor Use Permit approval would now be required to authorize such use under the provisions of this title), and as a Development Plan approval if such use would now be required by this title to be authorized by Development Plan approval.

   (iv)  Approved conditional use permits or development plans shall be treated for all purposes as if they were Development Plan approvals.

   (v)   An approved variance shall be treated for all purposes as if it were a variance issued under this title.

   (vi)  Any construction, expansion or alteration of such uses after the effective date of this title, and beyond the development authorized by the original entitlement or after the initial construction in a phased project, shall be done in accordance with all applicable provisions of this title, or any conditions of approval adopted with the original entitlement, whichever are more restrictive.

   (vii) Any conditions of approval adopted with any of the entitlements set forth in this subsection are to remain in full force and effect, except that such conditions shall be superseded by any applicable provisions of this title that are more restrictive.

   Any approved use that was lawfully established within the Coastal Zone prior to the effective date of this title which has not also been authorized by a coastal development permit shall be deemed to be a nonconforming use of land pursuant to Chapter 23.09 of this title.

(2) **Completion of existing uses:** Nothing in the title shall require any change in the plans, construction or approved use of a building or structure for which a permit has been issued before the effective date of this title or any amendment to the

Land Use Element/Local Coastal Plan or this title which changes allowable uses of land, land use permit requirements or other applicable provisions of this title, as follows:

  (i)   **Coastal Development Permit.** Where construction or establishment of the use has not been commenced or completed as of the effective date of this title, provided the coastal development permit required by the Coastal Act has been obtained or the proposed development was subject to a categorical exclusion or other exemption from the permit requirements of the Coastal Act.

  (ii)  **Building Permit.** Construction is commenced and substantial site work (Section 23.02.042) has been completed or the time period for construction of the proposed development has not yet expired pursuant to the terms of a valid county permit.

(3) **Land use permits void.** Any of the land use permits described in subsection (1) of this section that were approved before the effective date of this title, which authorized land uses that would not be allowed in their present locations by this title, are hereby repealed and deemed void.

(4) **Effect of void entitlement:** In any case where an entitlement is deemed void pursuant to subsection e(3) of this section, the effect on an approved land use of its entitlement becoming void shall be as follows:

  (i)   **Existing use.** A use established before the effective date of this title shall become a legal nonconforming use subject to all applicable pro-visions of Chapter 23.09 (Nonconforming Use), provided that any conditions of approval applicable to the use shall remain in full force and effect.

  (ii)  **Non-existing use.** A use of land authorized by an entitlement that became void pursuant to subsection e(3) of this section, for which substantial site work has not been completed as of the effective date of this title (see Section 23.02.042 - Substantial Site Work Defined), shall be prohibited except as provided by subsection e(2) of this section.

[Amended 1995, Ord. 2715]

# EXHIBIT E

San Luis Obispo County, CA County Code

23.02.030 - Plot Plan.

A Plot Plan is a ministerial land use permit. When a Plot Plan is required by the Land Use Element or this title to authorize a development proposal, its approval certifies that the land use or development will satisfy all applicable provisions of the Coastal Zone Land Use Ordinance. In cases where a construction permit is required by Title 19 of this Code, Plot Plan approval functions as a "Zoning Clearance" (pursuant to Section 23.02.028) and is processed and approved as part of the construction permit application and approval process. Approval of a Plot Plan enables the establishment of a land use that does not require a construction permit but is still subject to the standards of this title.

   a.  **Plot Plan application:** Plot Plan applications are to include the forms provided by the Planning Department, and the drawings listed in subsection b below. Drawings must be neatly and accurately prepared, at an appropriate scale that will enable ready identification and recognition of submitted information.

   b.  **Plot Plan content:** Plot Plan applications shall include a site layout plan containing the following information, using multiple sheets if necessary, except as provided by Section 23.02.024 (Waivers of Content):

   (1)  **Site location and dimensions:** Location, exterior boundaries and dimensions of the entire property that is the subject of the application. Scale of the drawing and a north arrow. Outside of the urban or village reserve lines identified by the Land Use Element, include an area location map showing the proposed project site and its distance from nearby roads, towns, and natural or man-made landmarks, as necessary to readily locate the site.

   (2)  **Road access and street improvements:** Location, name, width, and type of surfacing of adjacent street(s) or alley(s). Location of existing or proposed curbs, gutter and sidewalk improvements, if any. Evidence documenting that the site has legal access to a public road and has or will be provided adequate all-weather physical access with completion of the development.

   (3)  **Buildings and structures:** Location, dimensions, and use of all existing and proposed structures on the property, including accessory structures, decks, balconies, fences, walls and other structural elements that protrude into yard areas (when the use of a proposed structure is not certain at the time of application, the occupancy-type as defined by the Uniform Building Code may be substituted for use); height of buildings and structures; elevations 23.02.030 (relative height) from the finish floor of the garage or other parking area to the edge of the pavement or road at the driveway entrance.

   (4)  **Easements:** Location, dimensions and purpose of all recorded easements on the property, including but not limited to utility, drainage, access easements, etc.

   (5)  **Utilities:** Location, dimensions and type of proposed water supply and sewage

disposal facilities or connections.

(6) **Site improvements:** Location and dimensions of existing or proposed driveways and parking areas (enclosed or open), including type of surfacing materials; and identification of any driveway grades over 10 percent. Location and dimensions or areas proposed for grading and site disturbance. Where landscape plan is required pursuant to Section 23.08.182, show compliance with the landscape requirements of Sections 23.04.180, et seq.

(7) **Landforms:** The generalized location of any major topographic or man-made features on the site, such as rock outcrops, bluffs, streams and watercourses, or graded areas.

(8) **Additional information:** To be included with Plot Plan applications as required in the following specific cases, in addition to all other information required by this section.

    (i) **Combining designation information.** When required by Chapter 23.07 for sites within a combining designation identified by the Land Use Element.

    (ii) **Drainage plan.** When required by Section 23.05.040 et seq. (Drainage, or Chapter 23.07 Combining Designations).

    (iii) **Fire safety plan.** When required by Section 23.05.080 (Fire Safety), to be submitted for projects outside the urban or village reserve lines.

    (iv) **Grading plan.** When required by Section 23.05.020 (Grading).

    (v) **Planning area requirements.** An application shall also include all information required by planning area standards of the Land Use Element for a specific community or area of the county.

    (vi) **Sign information.** When any use is proposed to have signs, a description of their location, size, design and copy is to be provided.

    (vii) **Special standard requirements.** An application shall also include all information required by the special standards of Chapter 23.08 of this title for a special use, or by other chapter of this title.

    (viii) **Solid waste disposal information:** As required by Section 23.04.280.

    (ix) **Trees.** Applications for projects within urban or village reserve lines, or where required by planning area standards, are to show the location of trees existing on the site in or within 50 feet of proposed grading or other construction, which are eight inches or larger in diameter at four feet above natural grade. Trees proposed to be removed are to be noted (any tree removal is subject to the requirements of Section 23.05.060 - Tree Removal).

c. **Ownership verification.** Plot Plan applications shall include evidence that the applicant is the owner of the subject site or has written authorization from the owner or owners

to make such application.

    d. **Public notice.** Public notice of a Plot Plan application shall be provided as set forth in Section 23.02.070 (Notice of Non-Appealable Developments), except for development which is categorically excluded pursuant to Section 23.03.044 of this title.

    e. **Plot plan review and approval:** The Planning Director shall approve a Plot Plan application when the proposed project or use satisfies all applicable provisions of this title. (In approving a Plot Plan that designates occupancy type rather than use, the Planning Director will supply the applicant a list of uses that can be accommodated by the building and site improvements proposed, consistent with the requirements of this title.)

    f. **Plot Plan processing - Appealable development.** A Plot Plan application for a project that is appealable to the Coastal Commission pursuant to Section 23.01.043c shall be processed as a Minor Use Permit (Section 23.02.033), except secondary dwellings.

[Amended 1993, Ord. 2649; 1995, Ord. 2715; 1996, Ord. 3098 (modified by CCC)]

**23.02.033 - Minor Use Permit.**

    The purpose of a Minor Use Permit is to satisfy the notice and public hearing requirements established by the California Coastal Act for Plot Plans and other appealable land use permits; enable public review of significant land use proposals which are not of sufficient magnitude to warrant Planning Commission review; and to insure the proper integration into the community of land uses which, because of their type or intensity, may only be appropriate on particular sites, or may only be appropriate if they are designed or laid out in a particular manner. The Minor Use Permit process shall include the opportunity for a public hearing before the Planning Director. Plot Plans that are required to be processed as Minor Use Permits pursuant to Section 23.02.030f of this title, and are subject to a public hearing pursuant to subsection b(4)(ii), may be scheduled for public hearings as consent agenda or regular agenda items at the sole discretion of the Planning Director. Action on a Minor Use Permit is discretionary, and may include: approval based on the standards of this title; approval with conditions; or disapproval, based on conflict with the provisions of this code, or information in the Tentative Notice of Action or public hearing testimony. When Minor Use Permit approval is required by this title, preparation and processing of the application shall be as follows: [Amended 1995, Ord. 2740]

    a. **Application content.** The content of a Minor Use Permit application shall be the same as for Plot Plans (Section 23.02.030a through c.), and shall also include the following information:

      (1) **Preliminary floor plan:** For all structural uses except single residences and agricultural accessory buildings; and

      (2) **Architectural elevations:** For all structural uses except single residences and

agricultural accessory buildings, provide illustrations of how the completed buildings will appear, such as elevations, renderings or perspectives of each proposed structure, identifying the color, texture and type of all exterior finish and roofing materials; and

(3) **Adjacent land use information:** For all uses except single residences, the location, use and approximate dimensions of buildings within 100 feet of the site; and

(4) **Landscape plan:** To be prepared as required by Sections 23.04.180 et seq. (Landscape), for all applicable projects pursuant to Section 23.04.182; and

(5) **Contour map:** To be prepared as follows, except when a grading plan is required by Section 23.05.020 (Grading):

   (i) **Inside urban reserve lines:** Provide site contour information at five-foot intervals for undeveloped areas and two-foot intervals for building sites and paved or graded areas.

   (ii) **Outside urban reserve lines:** Provide site contour information at 10-foot intervals (which may be interpolated from USGS Topographic Quadrangle Maps) for undeveloped areas, and at two-foot intervals for building sites and paved or graded areas.

   (iii) **Areas in excess of 30% slope:** May be designated as such and contours omitted, unless proposed for grading, construction or other alteration.

(6) **Supplementary development statement:** Including a phasing schedule for project construction if proposed, and identification of any areas proposed to be reserved and maintained as common open space. Applications for special uses (Chapter 23.08) are to include explanation of how the applicable provisions of Chapter 23.08 will be met.

(7) **Reduced drawings.** Site plan applications shall include one copy each of the site layout plan and architectural elevations (if any), reduced to 8-1/2 by 11 inch sheets to facilitate the transmittal of such information on the proposed project to responsible agencies for their review.

(8) **Public access locations.** Applications for projects between the ocean and the nearest public road shall include the mapped locations of nearest public access points to the project. Applications shall also show the mapped locations of any existing public access easements or recorded offer to dedicate public access easements on the subject property.

(9) **Cross-section drawings:** An application for a project within a special community or small-scale neighborhood identified in Chapter 23.11 of this title shall include two sectional views of the project, approximately through the middle and at right

angles to each other. Show existing and proposed grades and the location of and distances between buildings, parking and landscaping.

(10) **Mailing list.** A list of names and addresses of all owners of real property within 300 feet as shown on the latest equalized assessment role, and residents within 100 feet of the perimeter of the parcel to be developed. This list shall be typed on gummed labels.

b. **Minor Use Permit processing.** Minor Use Permit applications shall be filed with the Planning Department, and shall be processed as follows:

(1) **Environmental determination.** When a Minor Use Permit application has been accepted for processing as set forth in Section 23.02.022 (Determination of Completeness), it shall be subject to an environmental determination as required by the California Environmental Quality Act (CEQA). No action shall be taken to approve or conditionally approve the application until the environmental determination results in:

(i) A statement by the Environmental Coordinator that the project is exempt from the provisions of CEQA; or

(ii) Approval of a negative declaration by the decision-making body pursuant to CEQA; or

(iii) Certification of a final environmental impact report (EIR) by the decision-making body pursuant to CEQA. If an EIR is required, the project shall be processed and authorized only as a Development Plan (Section 23.02.034). Where no EIR is required, Minor Use Permit processing is to be as described in this section.

(2) **Public hearing procedure.** Where an application is subject to a public hearing pursuant to subsection b(4)(ii), the following shall apply

(i) **Regular agenda.** Except as provided by subsection (b)(2)(ii) below, all Minor Use Permits shall be heard as regular agenda items.

(ii) **Consent agenda.** Projects that would normally be required by Section 23.03.042 or Chapter 23.08 of this title to have Plot Plan approval, but are required to have a public hearing pursuant to Section 23.02.030f. because they constitute development that may be appealed to the Coastal Commission pursuant to Section 23.01.043, may be listed upon the Minor Use Permit hearing agenda and acted upon as a consent agenda item, at the sole discretion of the Planning Director.

(iii) **Referral to Planning Commission:**

(a) At the discretion of the Planning Director, any Minor Use Permit application for a project that may generate substantial public

controversy or involve significant land use policy decisions may be
referred to the Planning Commission for review and decision in the
same manner as a Development Plan (Sections 23.02.034b and c.),
without the applicant being charged an additional application fee.

(b) An applicant may also choose that a Minor Use Permit application be
subject to Planning Commission review and decision as a Development
Plan, provided that an additional fee in an amount equivalent to the
difference between the fees for Minor Use Permit and Development
Plan is first paid. Such request by the applicant shall be filed with the
Planning Director in writing before notice of the administrative hearing
is provided pursuant to subsection b(4) of this section.

(3) **Tentative Notice of Action.** Except for projects determined to be consent agenda
items, the Planning Director shall cause a Tentative Notice of Action to be
prepared. The tentative notice shall:

(i) Identify the proposed project and applicant;

(ii) Describe the relationship of the project to applicable county land use and
development policies and ordinances;

(iii) Cite all relevant findings to be made in connection with the action on the
project;

(iv) Note whether the tentative action is to be approval, approval subject to
conditions or disapproval of the Minor Use Permit; and

(v) List any applicable conditions of approval.

(vi) Note that the tentative decision will become the final action on the project,
effective on the 15th day following the administrative hearing, unless the
tentative decision is changed as a result of information obtained at the
hearing or is appealed pursuant to Section 23.01.042 or 23.01.043.

The Tentative Notice of Action shall be mailed to the applicant no later than 15
days before the administrative hearing. The Tentative Notice of Action may also
be provided any other interested persons upon request, subject to the fees set
by the Board of Supervisors.

(4) **Administrative hearing.** A public hearing before the Planning Director on each
Minor Use Permit shall receive public notice and be conducted as follows:

(i) **Notice of hearing.** Notice of public hearing shall be given as provided by
Section 23.01.060 except as follows:

(a) **Content of notice.** In addition to the information required by
Government Code Section 69094, the notice shall declare that the
application will be acted on without a public hearing if no request for a

hearing is made pursuant to subsection (ii) of this section.

(b) **Method of notice distribution.** Notice of public hearings shall be given as provided by Section 23.01.060a(2).

(ii) **Public hearing.** A public hearing on a Minor Use Permit shall occur only when a hearing is requested by the applicant or other interested person(s). Such request shall be made in writing to the Planning Director no later than 7 before the date of the meeting specified in the public notice provided pursuant to subsections (i)(a) and (b) of this section or within 10 days from the date of the notice, whichever comes later. In the event a public hearing is requested, the Minor Use Permit shall be scheduled for a hearing on the date and time as defined in the public notice. The Director has the authority to continue an item to the next meeting date where there is a conflict with exiting plans and ordinances, even where no public hearing has been requested. The applicant and any interested parties shall be notified of the continuance, and notice of the continued hearing shall be provided in accordance with Section 23.01.060c.

(5) **Final decisions on Minor Use Permits.** Immediately after the conclusion of public testimony in the case of a public hearing, or no sooner than the date of the meeting specified in the public notice provided pursuant to subsections b(4)(i)(a) and (b), the Planning Director shall:

(i) Announce that the decision on the project is the final administrative action on the proposed project and that the Minor Use Permit will become effective as set forth in subsection e. of this section unless appealed; or

(ii) Announce that the tentative decision is changed as a result of information provided at the administrative hearing and whether the final decision is approval, conditional approval or denial; or

(iii) Continue the hearing to a date certain to provide additional time to evaluate information obtained at the hearing prior to a final decision; and

(iv) In the event final action is taken notify interested persons of the procedures by which the decision of the Planning Director may be appealed.

c. **Minor Use Permit approval or disapproval.** The authority to take final action on a Minor Use Permit as set forth in this subsection is assigned to the Director of Planning and Building for the purposes of this section, pursuant to Section 23.01.040b and the authority established by Government Code Sections 65900 et seq.. Decisions by the director on Minor Use Permits may be appealed pursuant to Section 23.01.042.

(1) **Criteria for approval.** A Minor Use Permit shall be approved only where the proposed use satisfies all applicable provisions of this title, including but not limited to the findings in Section 23.02.034c.

    **(2)  Authority for action.** Approval or disapproval of a Minor Use Permit shall occur in the same manner and with the same discretion and effect as set forth for Development Plans in Section 23.02.034c, provided that all authority to reach decisions, make findings, and impose conditions of approval pursuant to Section 23.02.034c is assigned to the Planning Director.

**d.  Notice of Final Action.** Within seven days of the administrative hearing and the expiration of the time period for appeals to the Planning Commission or Board of Supervisors, the Director shall prepare a written Notice of Final Action. The Notice of Final Action shall include the Tentative Notice of Action described in subsection b(3) of this section and shall also describe any changes to the tentative action as a result of the administrative hearing (if held), including the final action itself. The notice of final action shall also include the findings or conditions of approval resulting from the hearing, a determination if the decision is appealable to the Coastal Commission, the procedures for appealing the local decision to the Coastal Commission (if applicable), and the effective date of the Minor Use Permit. The notice shall be mailed to the applicant and the Coastal Commission. The notice shall be prepared and mailed so as to also satisfy all applicable provisions of Section 23.02.036, and:

    **(1)  Regular items.** The notice shall also include the Tentative Notice of Action described in subsection b(3) of this section.

    **(2)  Consent items.** The notice shall state that the Minor Use Permit was heard as a consent agenda item.

    **(3)  Other items.** The notice shall state that the Minor Use Permit was approved by the Director no sooner than 10 days after the date of the public notice provided pursuant to subsections b(4)(i)(a) and (b).

**e.  Effective date of Minor Use Permit.** Except as otherwise provided by Section 23.01.043 for projects that may be appealed to the Coastal Commission, the approval of a Minor Use Permit shall become effective for the purposes of construction permit issuance, business license clearance, or establishment of a non-structural use, on the 15th day following the act of Director's approval, unless an appeal is filed as set forth in Section 23.01.042. Minor Use Permits appealable to the Coastal Commission shall become effective only after the provisions of Section 23.02.039 (Effective Date of Land Use Permit for an Appealable Project) are met.

[Amended 1993, Ord. 2649; 1995, Ord. 2715; 1995, Ord. 2740; 2004, Ord. 2999; 2004, Ord. 3001]

# EXHIBIT F

# COUNTY OF SAN LUIS OBISPO

THE LAND USE AND CIRCULATION ELEMENTS
OF THE SAN LUIS OBISPO COUNTY GENERAL PLAN

# NORTH COAST

ADOPTED BY
THE SAN LUIS OBISPO COUNTY BOARD OF SUPERVISORS
SEPTEMBER 22, 1980 - RESOLUTION 80-350

PROGRAM CERTIFIED BY THE CALIFORNIA COASTAL COMMISSION
FEBRUARY 25, 1988
ADOPTED BY THE SAN LUIS OBISPO COUNTY BOARD OF SUPERVISORS
MARCH 1, 1988 - RESOLUTION 88-115

CAMBRIA AND SAN SIMEON ACRES PORTIONS UPDATED
NOVEMBER 6, 2007 - RESOLUTION 2007-416

REVISED
AUGUST 24, 2008

some cases may be obtained from pre-operational monitoring, monitoring results from other desalination facilities, and pilot studies conducted before building a full-scale facility;

(8)     Be designed and limited to assure that any water supplies made available as a direct or indirect result of the project will accommodate needs generated by development or uses consistent with the kinds, location and densities specified in the LCP and Coastal Act, including priority uses as required by PRC 30254, and;

(9)     Be an element (where economically and environmentally appropriate) of a balanced water supply portfolio that also includes conservation and water recycling to the maximum extent practicable.

5.     **Desalinization Plants.**  Desalinization plants constructed to serve development within the service boundaries of the CCSD shall only be permitted if owned and operated by the CCSD. Private desalinization plants are prohibited.

6.     **New Residential Land Divisions.**  Projects creating new residential lots shall be required to permanently retire an equivalent legal building site located within the Cambria URL on a 1:1 basis.  Determination of equivalent legal lot would occur through the discretionary land use and environmental review process with a consideration of factors including, but not limited to: habitat areas, topography, public views, development potential, and other site characteristics. Proof of the required retirement shall be submitted prior to recordation of the final parcel or subdivision map.  Retired lots shall have an open space or conservation easement recorded against the title of the property to prohibit development in perpetuity.  Easements may be held by the County or the County may grant them to another public agency or qualified non-profit organization.

7.     **Bridge Replacement and Repair.**  Bridge replacement and repair projects shall evaluate designs that provide adequate space for bikes and pedestrians. Class 2 bikeway connectors shall be analyzed and provided if feasible for bridge replacements at Leffingwell Landing and Windsor Boulevard.

8.     **Cambria Community Services District Review.**  Prior to application acceptance, land use and building permit applications shall include a written verification of water and sewer service from the Cambria Community Services District.  A water and sewer service condition compliance letter from the Cambria Community Services District shall be provided to the Department of Planning and Building prior to final building inspection.

9.     **Cambria Fire Department Review.**  All new development shall comply with applicable state and local Cambria fire codes.  Prior to application acceptance, land use and building permit applications shall include a fire plan review from the Cambria Fire Department.

10.     **Site Review.**  Based on the results of a site review, all projects determined to have the potential to adversely impact a sensitive resource shall require a biologic assessment report prepared in accordance with Coastal Zone Land Use Ordinance section 23.07.170.

# EXHIBIT G

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|---|---|---|---|
| 1 | 024.331.023 | BURTON DR | LODGE HILL |
| 2 | 023.065.002 | DRAKE ST @ MADISON | LODGE HILL |
| 3 | 024.291.028 | PRESTON ST | SPCL PROJ AREA 2 |
| 4 | 023.092.038 | OXFORD AVE | MARINE TERRACE |
| 5 | 022.093.024 | SUNBURY AVE | HAPPY HILL |
| 6 | 023.067.009 | DRAKE ST | LODGE HILL |
| 7 | 023.451.015 | MALVERN ST | NORTH LODGE HILL |
| 8 | 022.312.033 | WORCESTER DR | PARK HILL |
| 9 | 023.131.015 | OGDEN DR | LODGE HILL |
| 10 | 023.133.017 | ST THOMAS AV | LODGE HILL |
| 11 | 023.272.002 | ROMNEY DR | SPCL PROJ AREA 1 |
| 12 | 022.342.016 | HUNTINGTON RD | PARK HILL |
| 13 | 022.223.005 | WINDSOR BLVD | PARK HILL |
| 14 | 022.323.032 | HUNTNGTON RD | PARK HILL |
| 15 | 024.123.012 | BRADFORD PL | LODGE HILL |
| 16 | 024.262.038 | BURTON DR | LODGE HILL |
| 17 | 024.143.016 | RICHARD AVE | LODGE HILL |
| 18 | 023.121.005 | MARLBOROUGH LN | MARINE TERRACE |
| 19 | 023.143.004 | BERWICK DR | LODGE HILL |
| 20 | 022.227.027 | DORSET ST | PARK HILL |
| 21 | 022.226.024 | HASTINGS ST | PARK HILL |
| 22 | 023.182.032 | RANDALL DR | LODGE HILL |
| 23 | 023.046.041 | DRAKE ST | MARINE TERRACE |
| 24 | 024.031.004 | SANDOWN PL | LODGE HILL |
| 25 | 022.343.026 | HUNTNGTON RD | PARK HILL |
| 26 | 022.151.079 | WINDSOR BLVD | PARK HILL |
| 27 | 023.094.032 | OXFORD AVE | MARINE TERRACE |
| 28 | 023.018.029 | ORLANDO DR | MARINE TERRACE |
| 29 | 022.131.020 | SUFFOLK ST | PINEKNOLLS |
| 30 | 023.096.044 | OGDEN DR | LODGE HILL |
| 31 | 024.033.037 | SANDOWN PL | LODGE HILL |
| 32 | 023.035.012 | KENNETH DR | C PINES ESTATES |
| 33 | 023.172.053 | RANDALL DR | LODGE HILL |
| 34 | 023.013.019 | SHERWOOD DR | MARINE TERRACE |
| 35 | 024.342.022 | BURTON DR | LODGE HILL |
| 36 | 023.143.026 | BENSON AVE | LODGE HILL |
| 37 | 023.451.008 | BANBURY RD | NORTH LODGE HILL |
| 38 | 023.068.028 | MADISON ST | LODGE HILL |
| 39 | 013.331.007 | BUCKLEY DR | LEIMERT |
| 40 | 023.205.019 | ANDOVER PL | NORTH LODGE HILL |
| 41 | 013.084.035 | BUCKLEY DR | LEIMERT |
| 42 | 013.084.036 | BUCKLEY DR | LEIMERT |
| 43 | 013.084.039 | KATHRYN DR | LEIMERT |

**Updated 5/15/2019**

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 44 | 013.341.025 | CHARING LN | LEIMERT |
| 45 | 023.034.012 | TRENTON ST | C PINES ESTATES |
| 46 | 023.015.019 | WEDGEWOOD ST | MARINE TERRACE |
| 47 | 023.161.047 | OGDEN DR | LODGE HILL |
| 48 | 023.172.013 | NEWHALL AVE | LODGE HILL |
| 49 | 024.013.016 | COWPER ST | LODGE HILL |
| 50 | 022.023.028 | WARWICK ST | HAPPY HILL |
| 51 | 022.032.026 | WEYMOUTH ST | HAPPY HILL |
| 52 | 023.046.009 | DRAKE ST | MARINE TERRACE |
| 53 | 023.045.010 | CASTLE ST | MARINE TERRACE |
| 54 | 013.321.001 | WINDSOR BLVD @ DEVAULT | SEACLIFT EST |
| 55 | 023.172.043 | NEWHALL AVE | LODGE HILL |
| 56 | 024.181.052 | LONDONDERRY LN | SPCL PROJ AREA 2 |
| 57 | 024.171.015 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 58 | 024.123.013 | BRADFORD PL | LODGE HILL |
| 59 | 023.072.019 | TULLY PL | LODGE HILL |
| 60 | 013.084.018 | CAMBRIA PINES RD | LEIMERT |
| 61 | 022.312.035 | WORCESTER DR | PARK HILL |
| 62 | 023.021.019 | VICTORIA WAY | MARINE TERRACE |
| 63 | 013.341.023 | CHARING LN | LEIMERT |
| 64 | 024.212.021 | PIERCE AVE | LODGE HILL |
| 65 | 023.017.027 | ORLANDO DR | MARINE TERRACE |
| 66 | 023.017.041 | ATWELL ST | MARINE TERRACE |
| 67 | 022.131.032 | SUFFOLK ST | PINEKNOLLS |
| 68 | 013.084.017 | CAMBRIA PINES RD | LEIMERT |
| 69 | 023.163.033 | ST THOMAS AVE | LODGE HILL |
| 70 | 023.115.003 | AVON AVE | LODGE HILL |
| 71 | 023.032.004 | WARREN RD | C PINES ESTATES |
| 72 | 023.093.036 | ARDATH DR | MARINE TERRACE |
| 73 | 023.094.007 | OXFORD AVE | MARINE TERRACE |
| 74 | 023.213.051 | WILTON DR | NORTH LODGE HILL |
| 75 | 013.141.018 | BENSON AVE @ BERWICK | LODGE HILL |
| 76 | 022.151.065 | PEMBROOK DR | PARK HILL |
| 77 | 023.214.047 | WILTON DR | NORTH LODGE HILL |
| 78 | 023.172.051 | NEWHALL AVE | LODGE HILL |
| 79 | 024.122.020 | PIERCE AVE | LODGE HILL |
| 80 | 022.312.007 | WORCESTER DR | PARK HILL |
| 81 | 024.061.051 | MILLS ST | LODGE HILL |
| 82 | 023.088.034 | JEAN ST | MARINE TERRACE |
| 83 | 024.331.011 | BRADFORD RD | LODGE HILL |
| 84 | 023.047.010 | EMMONS RD | MARINE TERRACE |
| 85 | 023.019.011 | MADISON ST | MARINE TERRACE |
| 86 | 022.026.035 | MOONSTONE BEACH DR | MOONSTONE |

**Updated 5/15/2019**

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 87 | 023.096.049 | ARDATH DR | LODGE HILL |
| 88 | 024.092.026 | RADCLIFF AVE @ DOVEDALE | LODGE HILL |
| 89 | 013.101.054 | GROVE ST | PINEKNOLLS |
| 90 | 013.311.008 | HILLCREST DR | PINEKNOLLS |
| 91 | 023.392.028 | NORWICH AVE | LODGE HILL |
| 92 | 024.143.015 | RICHARD AVE | LODGE HILL |
| 93 | 023.087.046 | JEAN ST | MARINE TERRACE |
| 94 | 024.021.017 | DOWNING AVE | LODGE HILL |
| 95 | 013.351.014 | EXETER LN | LEIMERT |
| 96 | 023.014.020 | CASTLE ST | MARINE TERRACE |
| 97 | 024.222.023 | RICHARD AVE | LODGE HILL |
| 98 | 024.052.004 | RICHARD AVE @ TAFT PL | LODGE HILL |
| 99 | 023.034.004 | WARREN RD | C PINES ESTATES |
| 100 | 024.253.010 | GREEN ST | SPCL PROJ AREA 2 |
| 101 | 023.044.018 | WINDSOR BLVD | MARINE TERRACE |
| 102 | 023.182.037 | RANDALL DR | LODGE HILL |
| 103 | 024.301.015 | PICKWICK LN | SPCL PROJ AREA 2 |
| 104 | 022.052.050 | CHATHAM LN | MOONSTONE |
| 105 | 022.071.078 | CROYDEN LN | HAPPY HILL |
| 106 | 023.087.013 | JEAN ST | MARINE TERRACE |
| 107 | 024.132.016 | DREYDON AVE | LODGE HILL |
| 108 | 013.351.039 | CHISWICK WAY | LEIMERT |
| 109 | 024.342.010 | BURTON DR | LODGE HILL |
| 110 | 024.041.022 | WILCOMBE RD | LODGE HILL |
| 111 | 024.212.007 | BRADFORD RD | LODGE HILL |
| 112 | 024.161.027 | RICHARD AVE | LODGE HILL |
| 113 | 024.172.005 | STUART ST | LODGE HILL |
| 114 | 023.049.012 | GAINES ST | MARINE TERRACE |
| 115 | 023.272.017 | LANGTON ST | LODGE HILL |
| 116 | 022.083.063 | CANTERBURY LN | HAPPY HILL |
| 117 | 024.081.020 | RADCLIFF AVE | LODGE HILL |
| 118 | 013.084.052 | EVELYN CT | LEIMERT |
| 119 | 024.353.041 | RICHARD AVE | LODGE HILL |
| 120 | 013.141.008 | STRAWBERRY CYN | LODGE HILL |
| 121 | 024.112.034 | LEONA DR & ROSS RD @ BURTON DR | LODGE HILL |
| 122 | 022.043.017 | WEYMOUTH ST | HAPPY HILL |
| 123 | 023.035.005 | WARREN RD | C PINES ESTATES |
| 124 | 024.053.005 | LAWSON PL | LODGE HILL |
| 125 | 023.048.048 | MARLBOROUGH LN @ FALLBROOK | MARINE TERRACE |
| 126 | 024.312.034 | LONDON LN | SPCL PROJ AREA 2 |
| 127 | 022.022.037 | WARWICK ST @ BRIGHTON | HAPPY HILL |
| 128 | 023.192.030 | DREYDON AVE | LODGE HILL |
| 129 | 023.066.021 | ARDATH DR | LODGE HILL |

**Updated 5/15/2019**

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 130 | 023.068.018 | MADISON ST | LODGE HILL |
| 131 | 023.036.017 | ARDATH DR | C PINES ESTATES |
| 132 | 022.313.033 | HUNTNGTON RD | PARK HILL |
| 133 | 023.035.021 | WARREN RD | C PINES ESTATES |
| 134 | 023.111.024 | ASTOR AVE | LODGE HILL |
| 135 | 024.093.011 | BERWICK DR | LODGE HILL |
| 136 | 023.383.036 | ADAMS ST | LODGE HILL |
| 137 | 013.323.008 | WINDSOR BLVD | SEACLIFT EST |
| 138 | 023.025.019 | KENNETH DR | C PINES ESTATES |
| 139 | 023.075.019 | TULLY PL | LODGE HILL |
| 140 | 024.261.025 | PIERCE AVE | LODGE HILL |
| 141 | 024.123.028 | PIERCE AVE | LODGE HILL |
| 142 | 023.042.016 | DRAKE ST | MARINE TERRACE |
| 143 | 023.272.015 | ALBAN PL | LODGE HILL |
| 144 | 023.111.030 | ST JAMES RD | LODGE HILL |
| 145 | 022.042.047 | WEYMOUTH ST | HAPPY HILL |
| 146 | 023.087.040 | WINDSOR BLVD | MARINE TERRACE |
| 147 | 023.025.027 | ORLANDO DR | C PINES ESTATES |
| 148 | 022.343.002 | HUNTNGTON RD | PARK HILL |
| 149 | 024.231.022 | SPENCER ST | SPCL PROJ AREA 2 |
| 150 | 023.142.015 | ASTOR AVE | LODGE HILL |
| 151 | 024.182.053 | SPENCER ST | SPCL PROJ AREA 2 |
| 152 | 023.096.011 | ARDATH DR | LODGE HILL |
| 153 | 023.022.002 | MARLBOROUGH LN | MARINE TERRACE |
| 154 | 022.191.032 | PLYMOUTH ST | PARK HILL |
| 155 | 023.192.020 | DREYDON AVE | LODGE HILL |
| 156 | 024.032.012 | CARDIFF DR | LODGE HILL |
| 157 | 022.171.045 | NORFOLK ST | PARK HILL |
| 158 | 023.182.030 | RANDALL DR | LODGE HILL |
| 159 | 023.411.006 | ROGERS DR | NORTH LODGE HILL |
| 160 | 024.161.016 | RICHARD AVE | LODGE HILL |
| 161 | 022.013.047 | KENDALL LN | MOONSTONE |
| 162 | 024.261.017 | BRADFORD RD | LODGE HILL |
| 163 | 013.084.046 | EVELYN CT | LEIMERT |
| 164 | 023.411.024 | PINE CT | NORTH LODGE HILL |
| 165 | 023.143.041 | BENSON AVE | LODGE HILL |
| 166 | 023.088.011 | JEAN ST | MARINE TERRACE |
| 167 | 022.225.011 | HASTINGS ST @ WINDSOR | PARK HILL |
| 168 | 024.202.015 | BURTON DR | LODGE HILL |
| 169 | 023.086.041 | HARVEY ST | MARINE TERRACE |
| 170 | 024.301.030 | LONDON LN | SPCL PROJ AREA 2 |
| 171 | 023.134.019 | WALES RD | LODGE HILL |
| 172 | 024.142.038 | LAWSON PL @ STEWART | LODGE HILL |

**Updated 5/15/2019**

Exhibit G

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 173 | 023.093.003 | ARDATH DR | MARINE TERRACE |
| 174 | 024.143.023 | PIERCE AVE | LODGE HILL |
| 175 | 023.051.025 | OXFORD AVE | MARINE TERRACE |
| 176 | 023.161.048 | RANDALL DR | LODGE HILL |
| 177 | 023.142.028 | BENSON AVE | LODGE HILL |
| 178 | 022.083.031 | CANTERBURY LN | HAPPY HILL |
| 179 | 024.273.013 | BRADFORD | LODGE HILL |
| 180 | 023.271.045 | EMERSON RD | SPCL PROJ AREA 1 |
| 181 | 013.084.042 | KATHRYN DR | LEIMERT |
| 182 | 024.253.007 | GREEN ST | SPCL PROJ AREA 2 |
| 183 | 023.094.036 | EMMONS RD | MARINE TERRACE |
| 184 | 023.261.040 | TRENTON ST | LODGE HILL |
| 185 | 024.201.012 | BURTON DR | LODGE HILL |
| 186 | 023.114.017 | BERWICK DR | LODGE HILL |
| 187 | 023.087.032 | JEAN ST | MARINE TERRACE |
| 188 | 022.041.002 | WEYMOUTH ST | HAPPY HILL |
| 189 | 022.332.004 | WORCESTER DR | PARK HILL |
| 190 | 022.351.003 | HILLCREST DR | PINEKNOLLS |
| 191 | 023.143.020 | BENSON AVE | LODGE HILL |
| 192 | 023.032.005 | KENNETH DR | C PINES ESTATES |
| 193 | 023.422.023 | MARTINDALE RD | NORTH LODGE HILL |
| 194 | 024.033.015 | BURTON DR | LODGE HILL |
| 195 | 023.451.031 | MALVERN ST | NORTH LODGE HILL |
| 196 | 023.451.032 | MALVERN ST | NORTH LODGE HILL |
| 197 | 023.119.016 | AVON AVE | LODGE HILL |
| 198 | 022.282.011 | LANCASTER ST | PARK HILL |
| 199 | 023.090.002 | MARLBOROUGH LN | MARINE TERRACE |
| 200 | 023.281.029 | CAMBORNE PL | LODGE HILL |
| 201 | 023.034.008 | WARREN RD | C PINES ESTATES |
| 202 | 023.047.017 | FALLBROOK ST | MARINE TERRACE |
| 203 | 024.132.036 | DREYDON AVE | LODGE HILL |
| 204 | 022.071.042 | CROYDEN LN | HAPPY HILL |
| 205 | 023.372.008 | MARJORIE PL | LODGE HILL |
| 206 | 023.373.005 | MARJORIE PL | LODGE HILL |
| 207 | 023.373.040 | ERNEST PL | LODGE HILL |
| 208 | 023.451.016 | MALVERN ST | NORTH LODGE HILL |
| 209 | 024.143.027 | PIERCE AVE | LODGE HILL |
| 210 | 023.107.025 | CHESTER LN | LODGE HILL |
| 211 | 023.423.004 | PINE CT | NORTH LODGE HILL |
| 212 | 023.064.014 | CHESTER LN | LODGE HILL |
| 213 | 022.227.001 | WINDSOR BLVD @ HASTNGS | PARK HILL |
| 214 | 022.192.025 | CAMBRIDGE ST | PARK HILL |
| 215 | 023.163.029 | WALES RD | LODGE HILL |

**Updated 5/15/2019**

Exhibit G

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|---|---|---|---|
| 216 | 024.141.017 | STUART ST | LODGE HILL |
| 217 | 023.341.028 | CAMBORNE PL | SPCL PROJ AREA 1 |
| 218 | 013.101.061 | GROVE ST | PINEKNOLLS |
| 219 | 024.182.046 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 220 | 023.141.042 | ST JAMES RD | LODGE HILL |
| 221 | 023.047.020 | FALLBROOK ST | MARINE TERRACE |
| 222 | 024.231.020 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 223 | 024.221.014 | PINERIDGE DR | LODGE HILL |
| 224 | 024.062.012 | ARDATH DR | LODGE HILL |
| 225 | 023.048.039 | GAINES ST | MARINE TERRACE |
| 226 | 024.271.020 | RICHARD AVE | LODGE HILL |
| 227 | 024.253.014 | ARLISS DR | SPCL PROJ AREA 2 |
| 228 | 013.311.001 | OAKHURST DR | PINEKNOLLS |
| 229 | 013.341.011 | DOVER LN | LEIMERT |
| 230 | 024.354.002 | BRADFORD RD | LODGE HILL |
| 231 | 023.113.022 | BERWICK DR | LODGE HILL |
| 232 | 023.085.017 | WINDSOR BLVD | MARINE TERRACE |
| 233 | 022.201.077 | PLYMOUTH ST | PARK HILL |
| 234 | 024.321.039 | GLEASON ST @ LONDON LN | SPCL PROJ AREA 2 |
| 235 | 023.066.011 | DRAKE ST | LODGE HILL |
| 236 | 024.013.040 | DREYDON AVE | LODGE HILL |
| 237 | 024.061.046 | MILLS ST | LODGE HILL |
| 238 | 023.452.016 | BANBURY RD | NORTH LODGE HILL |
| 239 | 023.133.002 | ST THOMAS AVE | LODGE HILL |
| 240 | 023.363.020 | WILCOMBE RD | LODGE HILL |
| 241 | 024.353.010 | NORTON LN | LODGE HILL |
| 242 | 023.111.029 | ST JAMES RD | LODGE HILL |
| 243 | 022.171.027 | NORFOLK ST | PARK HILL |
| 244 | 024.062.029 | ARDATH DR | LODGE HILL |
| 245 | 024.241.015 | LONDONDERRY LN | SPCL PROJ AREA 2 |
| 246 | 022.331.032 | WORCESTER DR | PARK HILL |
| 247 | 024.142.041 | STUART ST | LODGE HILL |
| 248 | 023.451.009 | BANBURY RD | NORTH LODGE HILL |
| 249 | 023.086.013 | HARVEY ST | MARINE TERRACE |
| 250 | 023.163.023 | WALES RD | LODGE HILL |
| 251 | 024.342.023 | BURTON DR | LODGE HILL |
| 252 | 022.241.036 | HASTINGS ST | PARK HILL |
| 253 | 013.101.063 | GROVE ST | PINEKNOLLS |
| 254 | 023.043.015 | WINDSOR BLVD EMMONS | MARINE TERRACE |
| 255 | 024.221.018 | STUART ST | LODGE HILL |
| 256 | 024.252.046 | LONDON LN | SPCL PROJ AREA 2 |
| 257 | 023.086.047 | HARVEY ST @ MARLBOROUGH | MARINE TERRACE |
| 258 | 023.341.031 | SANDOWN PL | SPCL PROJ AREA 1 |

**Updated 5/15/2019**

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 259 | 022.193.020 | HASTINGS ST | PARK HILL |
| 260 | 024.331.017 | BRADFORD RD | LODGE HILL |
| 261 | 024.081.021 | LANGTON ST | LODGE HILL |
| 262 | 023.181.033 | BENSON AVE | LODGE HILL |
| 263 | 024.273.027 | PINERIDGE DR | LODGE HILL |
| 264 | 023.163.028 | WALES RD | LODGE HILL |
| 265 | 023.191.029 | BENSON AVE | LODGE HILL |
| 266 | 013.313.014 | PINEWOOD DR | PINEKNOLLS |
| 267 | 023.086.037 | WINDSOR BLVD | MARINE TERRACE |
| 268 | 023.141.018 | ASTOR AVE | LODGE HILL |
| 269 | 024.011.061 | LANGTON ST | LODGE HILL |
| 270 | 024.262.043 | BRADFORD RD @ BURTON DR | LODGE HILL |
| 271 | 024.321.026 | FINNEY RD | SPCL PROJ AREA 2 |
| 272 | 024.321.037 | GLEASON ST | SPCL PROJ AREA 2 |
| 273 | 023.215.065 | BURTON CIR | NORTH LODGE HILL |
| 274 | 023.089.027 | LAMPTON ST | MARINE TERRACE |
| 275 | 023.096.050 | ARDATH DR | LODGE HILL |
| 276 | 023.045.036 | CASTLE ST | MARINE TERRACE |
| 277 | 023.019.005 | MARLBOROUGH LN | MARINE TERRACE |
| 278 | 023.462.013 | SMITH CT | NORTH LODGE HILL |
| 279 | 023.214.023 | WILTON DR | NORTH LODGE HILL |
| 280 | 023.115.014 | CHESTER LN | LODGE HILL |
| 281 | 024.281.008 | PRESTON ST | LODGE HILL |
| 282 | 023.382.021 | MCCABE DR | LODGE HILL |
| 283 | 024.262.044 | BRADFORD RD | LODGE HILL |
| 284 | 023.076.021 | DREYDON AVE | LODGE HILL |
| 285 | 023.021.023 | VICTORIA WAY | MARINE TERRACE |
| 286 | 023.016.037 | WEDGEWOOD ST | MARINE TERRACE |
| 287 | 023.243.037 | EMERSON RD | SPCL PROJ AREA 1 |
| 288 | 024.372.008 | PINERIDGE DR | LODGE HILL |
| 289 | 023.161.046 | OGDEN DR | LODGE HILL |
| 290 | 024.013.022 | COWPER ST | LODGE HILL |
| 291 | 023.462.015 | SMITH CT | NORTH LODGE HILL |
| 292 | 023.215.020 | BURTON CIR | NORTH LODGE HILL |
| 293 | 023.191.030 | BERWICK DR | LODGE HILL |
| 294 | 023.281.033 | CAMBORNE PL | LODGE HILL |
| 295 | 023.411.005 | ROGERS DR | NORTH LODGE HILL |
| 296 | 024.123.050 | PIERCE AVE | LODGE HILL |
| 297 | 024.312.037 | LINDEN CT | SPCL PROJ AREA 2 |
| 298 | 023.453.002 | BANBURY RD | NORTH LODGE HILL |
| 299 | 024.301.024 | PICKWICK LN | SPCL PROJ AREA 2 |
| 300 | 024.312.022 | LONDON LN | SPCL PROJ AREA 2 |
| 301 | 023.086.001 | HARVEY ST @ WINDSOR | MARINE TERRACE |

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|---|---|---|---|
| 302 | 024.261.027 | PIERCE AVE | LODGE HILL |
| 303 | 023.451.026 | MALVERN ST | NORTH LODGE HILL |
| 304 | 024.211.013 | RICHARD AVE | LODGE HILL |
| 305 | 023.462.016 | BUCKINGHAM PL | NORTH LODGE HILL |
| 306 | 024.142.031 | STUART @ HOLDEN | LODGE HILL |
| 307 | 023.115.029 | AVON AVE | LODGE HILL |
| 308 | 022.182.054 | CAMBRIDGE ST | PARK HILL |
| 309 | 024.372.015 | PINERIDGE DR @ NORTON | LODGE HILL |
| 310 | 024.062.045 | ARDATH DR | LODGE HILL |
| 311 | 024.123.004 | ORVILLE PL | LODGE HILL |
| 312 | 023.291.031 | LEONA DR | LODGE HILL |
| 313 | 024.241.025 | ARLISS DR | SPCL PROJ AREA 2 |
| 314 | 023.086.039 | IVAR ST | MARINE TERRACE |
| 315 | 024.311.006 | GREEN ST | SPCL PROJ AREA 2 |
| 316 | 024.112.035 | BURTON DR | LODGE HILL |
| 317 | 024.311.035 | LONDON LN | SPCL PROJ AREA 2 |
| 318 | 023.261.043 | TRENTON ST | LODGE HILL |
| 319 | 024.091.010 | DOVEDALE AVE | LODGE HILL |
| 320 | 024.231.035 | SPENCER ST | SPCL PROJ AREA 2 |
| 321 | 023.215.021 | BURTON CIR | NORTH LODGE HILL |
| 322 | 023.104.010 | BENSON AVE | LODGE HILL |
| 323 | 023.233.019 | RAMSEY AVE | SPCL PROJ AREA 1 |
| 324 | 024.282.007 | PINERIDGE DR | LODGE HILL |
| 325 | 024.112.023 | LEONA DR | LODGE HILL |
| 326 | 023.261.030 | ALBAN PL | LODGE HILL |
| 327 | 023.105.027 | BENSON AVE | LODGE HILL |
| 328 | 024.123.014 | BRADFORD PL | LODGE HILL |
| 329 | 024.171.027 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 330 | 023.036.031 | ARDATH DR @ TRENTON | C PINES ESTATES |
| 331 | 024.322.018 | GLEASON ST | SPCL PROJ AREA 2 |
| 332 | 024.034.012 | CARDIFF DR | LODGE HILL |
| 333 | 023.403.024 | ARDATH DR | LODGE HILL |
| 334 | 023.215.049 | MARGATE AVE | NORTH LODGE HILL |
| 335 | 024.053.006 | TAFT PL | LODGE HILL |
| 336 | 023.402.014 | COWPER ST | LODGE HILL |
| 337 | 023.103.014 | ST JAMES RD | LODGE HILL |
| 338 | 023.087.027 | IVAR ST @ WINDSOR | MARINE TERRACE |
| 339 | 022.212.045 | SUFFOLK ST | PINEKNOLLS |
| 340 | 023.067.018 | ARDATH DR | LODGE HILL |
| 341 | 023.383.057 | MALVERN ST | LODGE HILL |
| 342 | 024.301.009 | PICKWICK LN | SPCL PROJ AREA 2 |
| 343 | 024.122.006 | RICHARD AVE | LODGE HILL |
| 344 | 024.181.041 | SPENCER ST | SPCL PROJ AREA 2 |

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|---|---|---|---|
| 345 | 024.171.026 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 346 | 024.141.045 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 347 | 024.081.002 | LANGTON ST | LODGE HILL |
| 348 | 023.213.028 | WILTON DR | NORTH LODGE HILL |
| 349 | 023.096.051 | ARDATH DR | LODGE HILL |
| 350 | 024.022.054 | CARDIFF DR | LODGE HILL |
| 351 | 024.022.055 | CARDIFF DR | LODGE HILL |
| 352 | 023.093.011 | ARDATH DR | MARINE TERRACE |
| 353 | 023.104.011 | BENSON AVE | LODGE HILL |
| 354 | 024.172.031 | STUART ST | LODGE HILL |
| 355 | 023.074.037 | ARDATH DR | LODGE HILL |
| 356 | 023.423.020 | PINEY WAY | NORTH LODGE HILL |
| 357 | 023.221.040 | TRENTON ST | NORTH LODGE HILL |
| 358 | 023.107.029 | CHESTER LN | LODGE HILL |
| 359 | 022.192.031 | CAMBRIDGE ST | PARK HILL |
| 360 | 024.222.007 | RICHARD AVE | LODGE HILL |
| 361 | 022.083.025 | SUNBURY AVE | HAPPY HILL |
| 362 | 023.073.022 | TULLY PL | LODGE HILL |
| 363 | 013.351.005 | CHISWICK WAY | LEIMERT |
| 364 | 024.301.032 | PICKWICK LN | SPCL PROJ AREA 2 |
| 365 | 023.261.032 | ALBAN PL | LODGE HILL |
| 366 | 024.281.031 | PRESTON TO SPENCER (STREET TO STREET) | LODGE HILL |
| 367 | 024.211.034 | RICHARD AVE | LODGE HILL |
| 368 | 024.131.013 | LANGTON ST | LODGE HILL |
| 369 | 013.084.041 | KATHRYN DR | LEIMERT |
| 370 | 023.462.022 | WOOD DR | NORTH LODGE HILL |
| 371 | 022.151.010 | WINDSOR BLVD | PARK HILL |
| 372 | 022.291.024 | LANCASTER ST | PARK HILL |
| 373 | 023.072.021 | PITT PL | LODGE HILL |
| 374 | 023.067.005 | DRAKE ST | LODGE HILL |
| 375 | 024.211.021 | RICHARD AVE | LODGE HILL |
| 376 | 024.013.027 | COWPER ST | LODGE HILL |
| 377 | 024.231.046 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 378 | 024.021.042 | DOWNING AVE | LODGE HILL |
| 379 | 024.091.027 | BERWICK DR | LODGE HILL |
| 380 | 023.087.034 | JEAN ST | MARINE TERRACE |
| 381 | 023.451.027 | ORIN PL | NORTH LODGE HILL |
| 382 | 024.261.007 | PIERCE AVE | LODGE HILL |
| 383 | 023.151.053 | CHESTER LN | LODGE HILL |
| 384 | 022.171.046 | PEMBROOK DR | PARK HILL |
| 385 | 024.081.051 | MELROSE AVE | LODGE HILL |
| 386 | 023.116.021 | CHESTER LN | LODGE HILL |
| 387 | 023.111.035 | ASTOR AVE | LODGE HILL |

**Updated 5/15/2019**

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|---|---|---|---|
| 388 | 024.123.023 | PIERCE AVE | LODGE HILL |
| 389 | 024.282.003 | PINERIDGE DR | LODGE HILL |
| 390 | 023.382.055 | ADAMS ST & MCCABE @ ORIN | LODGE HILL |
| 391 | 024.252.042 | PICKWICK LN | SPCL PROJ AREA 2 |
| 392 | 023.151.039 | CHESTER LN | LODGE HILL |
| 393 | 024.361.030 | PINERIDGE DR | LODGE HILL |
| 394 | 013.084.011 | KATHRYN DR | LEIMERT |
| 395 | 024.041.023 | PIERCE AVE | LODGE HILL |
| 396 | 022.131.054 | SUNBURY AVE | HAPPY HILL |
| 397 | 023.142.026 | BENSON AVE | LODGE HILL |
| 398 | 024.242.054 | ARLISS DR | SPCL PROJ AREA 2 |
| 399 | 023.025.001 | MADISON ST | C PINES ESTATES |
| 400 | 022.192.046 | CAMBRIDGE ST | PARK HILL |
| 401 | 023.282.004 | NEWPORT AVE | SPCL PROJ AREA 1 |
| 402 | 024.081.005 | MELROSE AVE | LODGE HILL |
| 403 | 023.214.032 | WILTON DR | NORTH LODGE HILL |
| 404 | 024.143.019 | RICHARD AVE | LODGE HILL |
| 405 | 022.093.007 | SUNBURY AVE | HAPPY HILL |
| 406 | 022.071.084 | KENT ST | HAPPY HILL |
| 407 | 024.151.020 | BRADFORD RD | LODGE HILL |
| 408 | 024.161.014 | RICHARD AVE | LODGE HILL |
| 409 | 023.423.007 | ROGERS DR | NORTH LODGE HILL |
| 410 | 024.081.053 | MELROSE AVE | |
| 411 | 024.231.045 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 412 | 023.205.002 | ANDOVER PL | NORTH LODGE HILL |
| 413 | 024.211.026 | PIERCE AVE | LODGE HILL |
| 414 | 023.052.023 | MADISON ST @ DRAKE ST | LODGE HILL |
| 415 | 023.411.004 | ROGERS DR | NORTH LODGE HILL |
| 416 | 024.122.001 | ARDATH DR | LODGE HILL |
| 417 | 023.361.052 | PINERIDGE DR | LODGE HILL |
| 418 | 013.084.028 | CAMBRIA PINES RD | LEIMERT |
| 419 | 023.076.026 | TWEED AVE | LODGE HILL |
| 420 | 024.034.056 | SANDOWN PL | LODGE HILL |
| 421 | 023.373.011 | MARJORIE PL @ MALVERN | LODGE HILL |
| 422 | 024.143.028 | RICHARD AVE | LODGE HILL |
| 423 | 023.322.016 | COWPER ST | LODGE HILL |
| 424 | 024.101.001 | BURTON DR | LODGE HILL |
| 425 | 023.102.002 | OGDEN DR | LODGE HILL |
| 426 | 023.222.047 | FERN DR | SPCL PROJ AREA 1 |
| 427 | 023.073.028 | AVON AVE | LODGE HILL |
| 428 | 024.082.018 | NORWICH AVE | LODGE HILL |
| 429 | 023.411.020 | PINE CT | NORTH LODGE HILL |
| 430 | 023.086.006 | HARVEY ST | MARINE TERRACE |

**Updated 5/15/2019**

Exhibit G

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 431 | 024.171.025 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 432 | 024.354.022 | ELLIS AVE | LODGE HILL |
| 433 | 024.272.014 | STUART ST @ MERLYN | LODGE HILL |
| 434 | 023.076.027 | TWEED AVE | LODGE HILL |
| 435 | 023.088.047 | KERWIN ST | MARINE TERRACE |
| 436 | 024.371.004 | PINERIDGE DR | LODGE HILL |
| 437 | 023.023.020 | WARREN RD | C PINES ESTATES |
| 438 | 024.291.017 | PRESTON ST | SPCL PROJ AREA 2 |
| 439 | 023.025.002 | MADISON ST | C PINES ESTATES |
| 440 | 024.181.042 | SPENCER ST | SPCL PROJ AREA 2 |
| 441 | 024.061.049 | MCCABE DR | LODGE HILL |
| 442 | 024.321.024 | LONDON LN | SPCL PROJ AREA 2 |
| 443 | 024.161.025 | RICHARD AVE | LODGE HILL |
| 444 | 013.301.047 | HILLCREST DR | PINEKNOLLS |
| 445 | 024.231.037 | SPENCER ST | SPCL PROJ AREA 2 |
| 446 | 023.088.046 | JEAN ST | MARINE TERRACE |
| 447 | 023.046.039 | DRAKE ST | MARINE TERRACE |
| 448 | 023.382.056 | ADAMS ST | LODGE HILL |
| 449 | 022.192.011 | PLYMOUTH ST | PARK HILL |
| 450 | 024.341.029 | BURTON DR | LODGE HILL |
| 451 | 023.073.008 | TULLY PL | LODGE HILL |
| 452 | 022.084.008 | CROYDEN LN | HAPPY HILL |
| 453 | 023.036.009 | KENNETH DR | C PINES ESTATES |
| 454 | 023.115.016 | AVON AVE | LODGE HILL |
| 455 | 022.091.017 | SUNBURY AVE | HAPPY HILL |
| 456 | 024.281.032 | SPENCER ST | LODGE HILL |
| 457 | 022.071.085 | KENT ST | HAPPY HILL |
| 458 | 023.114.023 | CHESTER LN | LODGE HILL |
| 459 | 024.252.043 | PICKWICK LN | SPCL PROJ AREA 2 |
| 460 | 023.391.016 | COWPER ST @ HADDON | LODGE HILL |
| 461 | 023.016.040 | ATWELL ST | MARINE TERRACE |
| 462 | 023.075.007 | TWEED AVE | LODGE HILL |
| 463 | 023.018.005 | ORLANDO DR | MARINE TERRACE |
| 464 | 023.202.055 | WILTON DR | SPCL PROJ AREA 1 |
| 465 | 024.361.021 | NORTON LN | LODGE HILL |
| 466 | 024.123.056 | 2480 ROSS RD | LODGE HILL |
| 467 | 022.131.019 | SUFFOLK ST | PINEKNOLLS |
| 468 | 023.204.072 | ANDOVER PL | NORTH LODGE HILL |
| 469 | 023.091.009 | MARLBOROUGH LN | MARINE TERRACE |
| 470 | 023.018.026 | CASTLE ST | MARINE TERRACE |
| 471 | 023.104.021 | BENSON AVE | LODGE HILL |
| 472 | 022.342.034 | WORCESTER DR | PARK HILL |
| 473 | 023.116.026 | AVON AVE | LODGE HILL |

**Updated 5/15/2019**

Exhibit G

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 474 | 023.223.017 | TRENTON ST | SPCL PROJ AREA 1 |
| 475 | 023.471.001 | WOOD DR | NORTH LODGE HILL |
| 476 | 024.141.022 | STUART ST | LODGE HILL |
| 477 | 023.363.002 | PIERCE AVE | LODGE HILL |
| 478 | 022.071.002 | COVENTRY LN | HAPPY HILL |
| 479 | 023.019.006 | MARLBOROUGH LN | MARINE TERRACE |
| 480 | 023.401.024 | ARDATH DR | LODGE HILL |
| 481 | 024.353.023 | RICHARD AVE | LODGE HILL |
| 482 | 023.142.030 | BENSON AVE | LODGE HILL |
| 483 | 024.091.014 | DOWNING AVE | LODGE HILL |
| 484 | 024.171.028 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 485 | 024.281.021 | PRESTON ST | LODGE HILL |
| 486 | 024.141.023 | STUART ST | LODGE HILL |
| 487 | 023.025.013 | WARREN RD | C PINES ESTATES |
| 488 | 024.271.021 | RICHARD AVE | LODGE HILL |
| 489 | 024.142.008 | RICHARD AVE | LODGE HILL |
| 490 | 023.107.002 | AVON AVE | LODGE HILL |
| 491 | 023.423.005 | ROGERS DR | NORTH LODGE HILL |
| 492 | 024.321.032 | GREEN ST | SPCL PROJ AREA 2 |
| 493 | 024.012.009 | LANGTON ST | LODGE HILL |
| 494 | 024.011.019 | LANGTON ST | LODGE HILL |
| 495 | 022.193.012 | HASTINGS ST @ PEMBROOK | PARK HILL |
| 496 | 023.091.031 | OXFORD AVE | MARINE TERRACE |
| 497 | 024.182.054 | SPENCER ST | SPCL PRJ AREA 2 |
| 498 | 024.063.055 | SPENCER ST | SPCL PROJ AREA 2 |
| 499 | 024.092.003 | LANGTON ST | LODGE HILL |
| 500 | 022.151.066 | PEMBROOK DR | PARK HILL |
| 501 | 023.181.022 | ASTOR AVE | LODGE HILL |
| 502 | 022.093.025 | SUNBURY AVE | HAPPY HILL |
| 503 | 023.104.004 | ASTOR AVE | LODGE HILL |
| 504 | 024.332.026 | BURTON DR | LODGE HILL |
| 505 | 023.092.036 | ARDATH DR | MARINE TERRACE |
| 506 | 024.031.019 | DORKING AVE | LODGE HILL |
| 507 | 024.301.034 | PICKWICK LN @ LINDEN CT | SPCL PROJ AREA 2 |
| 508 | 023.115.018 | WALES RD | LODGE HILL |
| 509 | 022.212.015 | HILLCREST DR | |
| 510 | 023.118.006 | TWEED AVE | LODGE HILL |
| 511 | 023.301.021 | PINERIDGE DR | LODGE HILL |
| 512 | 023.091.020 | OXFORD AVE | MARINE TERRACE |
| 513 | 023.116.013 | AVON AVE | LODGE HILL |
| 514 | 023.115.009 | AVON AVE | LODGE HILL |
| 515 | 024.341.033 | ELLIS AVE | LODGE HILL |
| 516 | 023.088.043 | KERWIN ST | MARINE TERRACE |

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 517 | 023.048.010 | FALLBROOK ST | MARINE TERRACE |
| 518 | 024.352.008 | RICHARD AVE | LODGE HILL |
| 519 | 024.012.004 | LANGTON ST | LODGE HILL |
| 520 | 024.252.022 | ROSCOE PL | SPCL PROJ AREA 2 |
| 521 | 013.292.012 | GROVE ST | PINEKNOLLS |
| 522 | 023.271.043 | ROMNEY DR @ AMHERST | SPCL PROJ AREA 1 |
| 523 | 022.212.013 | HILLCREST DR | PINEKNOLLS |
| 524 | 023.068.017 | MADISON ST | LODGE HILL |
| 525 | 024.152.025 | BURTON DR | LODGE HILL |
| 526 | 023.086.033 | HARVEY ST | MARINE TERRACE |
| 527 | 023.119.022 | NORWICH AVE | LODGE HILL |
| 528 | 023.064.010 | AVON AVE | LODGE HILL |
| 529 | 022.083.055 | ASHBY LN | HAPPY HILL |
| 530 | 022.151.012 | WINDSOR BLVD | PARK HILL |
| 531 | 023.303.028 | WILCOMBE RD | LODGE HILL |
| 532 | 023.048.032 | GAINES ST | MARINE TERRACE |
| 533 | 024.151.029 | BRADFORD RD | LODGE HILL |
| 534 | 024.151.007 | BRADFORD RD | LODGE HILL |
| 535 | 024.151.018 | BRADFORD RD | LODGE HILL |
| 536 | 023.017.003 | WINDSOR BLVD | MARINE TERRACE |
| 537 | 023.392.013 | NORWICH AVE | LODGE HILL |
| 538 | 023.087.003 | IVAR ST | MARINE TERRACE |
| 539 | 023.205.056 | BLYTHE PL | NORTH LODGE HILL |
| 540 | 024.321.019 | LONDON LN | SPCL PROJ AREA 2 |
| 541 | 023.213.031 | WILTON DR | NORTH LODGE HILL |
| 542 | 023.134.021 | ST JAMES RD | LODGE HILL |
| 543 | 024.371.009 | PINERIDGE DR | LODGE HILL |
| 544 | 024.011.047 | DOVEDALE AVE | LODGE HILL |
| 545 | 024.372.019 | NORTON LN | LODGE HILL |
| 546 | 024.182.056 | SPENCER ST. | |
| 547 | 022.084.020 | CROYDEN LN | HAPPY HILL |
| 548 | 023.075.036 | TULLY PL | LODGE HILL |
| 549 | 024.222.014 | RICHARD AVE | LODGE HILL |
| 550 | 022.151.080 | PEMBROOK DR | PARK HILL |
| 551 | 024.311.037 | LONDON LN | SPCL PROJ AREA 2 |
| 552 | 024.122.004 | PIERCE AVE | LODGE HILL |
| 553 | 024.132.039 | MELROSE AVE | LODGE HILL |
| 554 | 023.048.046 | FALLBROOK ST | MARINE TERRACE |
| 555 | 023.115.025 | WALES RD | LODGE HILL |
| 556 | 023.074.040 | ARDATH DR | LODGE HILL |
| 557 | 023.086.028 | HARVEY ST | MARINE TERRACE |
| 558 | 023.243.024 | EMERSON RD | SPCL PROJ AREA 1 |
| 559 | 022.034.028 | CROYDEN LN | HAPPY HILL |

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 560 | 024.123.019 | PIERCE AVE | LODGE HILL |
| 561 | 024.142.035 | RICHARD AVE | LODGE HILL |
| 562 | 023.071.013 | TULLY PL | LODGE HILL |
| 563 | 024.271.010 | PIERCE AVE | LODGE HILL |
| 564 | 024.271.022 | RICHARD AVE | LODGE HILL |
| 565 | 023.091.029 | MARLBOROUGH LN | MARINE TERRACE |
| 566 | 023.203.020 | WILTON DR | NORTH LODGE HILL |
| 567 | 023.132.012 | NEWHALL AVE | LODGE HILL |
| 568 | 022.093.043 | CORNWALL ST | WEST VILLAGE |
| 569 | 024.063.085 | PINERIDGE DR | LODGE HILL |
| 570 | 024.291.031 | PRESTON ST | SPCL PROJ AREA 2 |
| 571 | 023.119.011 | NORWICH AVE | LODGE HILL |
| 572 | 024.042.046 | WILCOMBE RD | LODGE HILL |
| 573 | 024.291.011 | PRESTON ST | SPCL PROJ AREA 2 |
| 574 | 022.225.004 | HASTINGS ST | PARK HILL |
| 575 | 023.117.008 | WALES RD @ TULLY | LODGE HILL |
| 576 | 023.111.032 | ASTOR AVE | LODGE HILL |
| 577 | 024.361.016 | PINERIDGE DR | LODGE HILL |
| 578 | 024.011.017 | LANGTON ST | LODGE HILL |
| 579 | 022.261.071 | HARTFORD ST | WEST VILLAGE |
| 580 | 023.036.036 | Trenton St | C Pines Estates |
| 581 | 023.142.009 | ASTOR AVE | LODGE HILL |
| 582 | 024.112.005 | BURTON DR | LODGE HILL |
| 583 | 023.151.045 | CHESTER LN | LODGE HILL |
| 584 | 022.271.052 | SHEFFIELD ST | WEST VILLAGE |
| 585 | 013.084.006 | KATHRYN DR | LEIMERT |
| 586 | 023.452.008 | BANBURY RD | NORTH LODGE HILL |
| 587 | 024.082.010 | DREYDON AVE | LODGE HILL |
| 588 | 023.068.020 | MADISON ST | LODGE HILL |
| 589 | 023.303.045 | WILCOMBE RD | LODGE HILL |
| 590 | 023.034.013 | WARREN RD | C PINES ESTATES |
| 591 | 022.342.031 | HUNTINGTON RD | PARK HILL |
| 592 | 024.372.010 | NORTON LN | LODGE HILL |
| 593 | 022.172.032 | BRISTOL ST | PARK HILL |
| 594 | 023.087.038 | JEAN ST | MARINE TERRACE |
| 595 | 023.087.002 | IVAR ST | MARINE TERRACE |
| 596 | 023.391.026 | HADDON DR | LODGE HILL |
| 597 | 022.225.002 | NOTTINGHAM DR | PARK HILL |
| 598 | 022.131.029 | HILLCREST DR | PINEKNOLLS |
| 599 | 022.151.045 | PEMBROOK DR | PARK HILL |
| 600 | 013.101.058 | GROVE ST | PINEKNOLLS |
| 601 | 024.311.002 | LONDON LN | SPCL PROJ AREA 2 |
| 602 | 024.253.012 | GREEN ST | SPCL PROJ AREA 2 |

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 603 | 024.273.020 | PINERIDGE DR | LODGE HILL |
| 604 | 022.151.027 | PEMBROOK DR | PARK HILL |
| 605 | 023.213.029 | WILTON DR | NORTH LODGE HILL |
| 606 | 023.333.002 | EMERSON RD | SPCL PROJ AREA 1 |
| 607 | 024.061.053 | MILLS ST | LODGE HILL |
| 608 | 023.423.009 | ROGERS DR | NORTH LODGE HILL |
| 609 | 024.253.017 | ARLISS DR | SPCL PROJ AREA 2 |
| 610 | 023.141.028 | ST JAMES RD | LODGE HILL |
| 611 | 024.043.023 | LEONA DR | LODGE HILL |
| 612 | 023.075.003 | PITT PL | LODGE HILL |
| 613 | 023.074.006 | ARDATH DR | LODGE HILL |
| 614 | 024.131.040 | BERWICK DR | LODGE HILL |
| 615 | 024.202.019.000 | BURTON DR | LODGE HILL |
| 616 | 024.212.002 | PIERCE AVE | LODGE HILL |
| 617 | 023.432.022 | BURTON DR | NORTH LODGE HILL |
| 618 | 023.182.019 | ASTOR AVE | LODGE HILL |
| 619 | 023.322.025 | LANGTON ST | LODGE HILL |
| 620 | 023.291.016 | WILCOMBE RD | LODGE HILL |
| 621 | 023.118.014 | TULLY PL | LODGE HILL |
| 622 | 024.242.039 | HUDSON AVE | SPCL PROJ AREA 2 |
| 623 | 022.341.031 | HUNTINGTON RD | PARK HILL |
| 624 | 023.121.024 | MARLBOROUGH LN | MARINE TERRACE |
| 625 | 013.101.070.002 | GROVE ST | PINEKNOLLS |
| 626 | 023.086.002 | IVAR ST | MARINE TERRACE |
| 627 | 022.023.012 | WARWICK ST | HAPPY HILL |
| 628 | 013.331.009.001 | BUCKLEY DR | LEIMERT |
| 629 | 023.036.004 | KENNETH DR | C PINES ESTATES |
| 630 | 023.182.044 | ASTOR AVE | LODGE HILL |
| 631 | 023.411.008 | ROGERS DR | NORTH LODGE HILL |
| 632 | 023.451.011 | BANBURY RD | NORTH LODGE HILL |
| 633 | 024.142.007 | RICHARD AVE | LODGE HILL |
| 634 | 023.233.006 | NEWTON DR | SPCL PROJ AREA 1 |
| 635 | 023.451.028 | ORIN PL | NORTH LODGE HILL |
| 636 | 023.451.029 | ORIN PL | NORTH LODGE HILL |
| 637 | 024.043.019 | LEONA DR | LODGE HILL |
| 638 | 023.121.013 | MARLBOROUGH LN | MARINE TERRACE |
| 639 | 023.221.041 | TRENTON ST | NORTH LODGE HILL |
| 640 | 023.015.022 | WINDSOR BLVD | MARINE TERRACE |
| 641 | 023.093.028 | OGDEN DR | MARINE TERRACE |
| 642 | 022.191.028 | PLYMOUTH ST | PARK HILL |
| 643 | 022.341.037 | HUNTINGTON RD | PARK HILL |
| 644 | 022.243.012 | LEIGHTON ST | PARK HILL |
| 645 | 023.341.070 | SANDOWN PL | SPCL PROJ AREA 1 |

**Single Family Residential Wait List**

| POS | Parcel | Street | Area |
|-----|--------|--------|------|
| 646 | 022.093.004 | SUNBURY AVE | HAPPY HILL |
| 647 | 024.161.006 | RICHARD AVE | LODGE HILL |
| 648 | 023.049.034 | GAINES ST | MARINE TERRACE |
| 649 | 023.462.012 | SMITH CT | NORTH LODGE HILL |
| 650 | 024.123.016 | PIERCE AVE | LODGE HILL |
| 651 | 024.201.022 | BURTON DR | LODGE HILL |
| 652 | 022.093.015 | SUNBURY AVE | HAPPY HILL |
| 653 | 023.352.030 | LEONA DR | LODGE HILL |
| 654 | 024.243.008 | HUDSON AVE | SPCL PROJ AREA 2 |
| 655 | 024.242.055 | HUDSON AVE | SPCL PROJ AREA 2 |
| 656 | 023.411.007 | ROGERS DR | NORTH LODGE HILL |
| 657 | 023.451.020 | MALVERN ST | NORTH LODGE HILL |
| 658 | 022.192.042 | PLYMOUTH ST | PARK HILL |
| 659 | 024.182.029 | PINERIDGE DR | SPCL PROJ AREA 2 |
| 660 | 013.351.046 | EXETER LN | LEIMERT |
| 661 | 023.381.042 | MCCABE DR | LODGE HILL |
| 662 | 023.072.017 | TULLY PL | LODGE HILL |
| 663 | 024.291.029 | SPENCER ST | SPCL PROJ AREA 2 |

**Updated 5/15/2019**

Exhibit G

**PROOF OF SERVICE**

STATE OF CALIFORNIA ) 
) ss.
COUNTY OF SAN LUIS OBISPO )

I am employed in the County of San Luis Obispo, California; I am over the age of 18 years, and not a party to the within action; my business address is County Government Center, Room D320, San Luis Obispo, CA 93408.

On August 30, 2019, I served a true copy of this declaration and the following described document(s):

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM IN SUPPORT**

**In re: Michael Windeler, et al. v. Cambria Community Water District, et al. 2:19-cv-06325 DSF(JEMx)**

on the party or parties listed below:

**Attorney for Plaintiffs**
Gregory B. Beam
Mark D. Alpert
GREGORY BEAM & ASSOCIATES, INC.
23113 Plaza Pointe Drive, Suite 100
Laguna Hills, CA 92653
malpert@beamlaw.net

**Attorney for Defendant Cambria Community Services District**
Michael M. McMahon
Carmel & Naccasha
1908 Spring Street
Paso Robles, CA 93446
mmcmahon@carnaclaw.com

[X]   **By United States mail.** I enclosed a true copy of the documents in a sealed envelope addressed to each of the persons as indicated above, and then placed the envelope for collection and mailing where it would be deposited with the United States Postal Service with postage fully prepaid on the same day, following my employer's business practice with which I am readily familiar.

[X]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 30, 2019, at San Luis Obispo, California.

_Rebecca Forcier_
Rebecca R. Forcier, Legal Clerk to
Jon Ansolabehere, Chief Deputy County Counsel

19rrfpld.docx