Timothy J. Carmel, SBN 122695
tcarmel@carnaclaw.com
Michael M. McMahon, SBN 157556
mmcmahon@carnaclaw.com
CARMEL & NACCASHA, LLP
1908 Spring Street
Paso Robles, California 93446
Tel.: (805) 226-4148
Fax: (805) 226-4147

Attorneys for Defendant
Cambria Community Services District
(served herein as Cambria Community Water District)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL WINDELER, KAREN WINDELER, JOY SALEMI, JEFF SCHNEIDER, EDNA SCHNEIDER, BARBARA KNIGHT, KENT KNIGHT, BRUCE DEPAOLA, TERRI DEPAOLA, <br><br> Plaintiffs and Petitioners, <br><br> vs. <br><br> CAMBRIA COMMUNITY WATER DISTRICT, COUNTY OF SAN LUIS OBISPO, <br><br> Defendants and Respondents. | Case No. 2:19-cv-06325-DSF(JEMx) <br><br> **CAMBRIA COMMUNITY SERVICES DISTRICT'S REQUEST FOR JUDICIAL NOTICE [FRE 201] (FILED AND SERVED WITH 12(b)(6) MOTION TO DISMISS)** <br><br> Date:       October 2, 2019 <br> Time:       1:30 p.m. <br> Location:   Courtroom 7D <br><br> Assigned to the Honorable Dale S. Fischer <br><br> *Complaint Filed: July 24, 2019* |

Pursuant to Federal Rules of Evidence 201, Cambria Community Services District ("District") requests that the Court take judicial notice of the following matters in connection with its Motion to Dismiss under Rule 12(b)(6).

1

**CAMBRIA COMMUNITY SERVICES DISTRICT'S REQUEST FOR JUDICIAL NOTICE [FRE 201]**

1. San Luis Obispo County Superior Court ("SLOCSC") Case No. CV000325, Gregg Berge v. County of San Luis Obispo, Cambria Community Services District (see Exhibits A and B);

2. SLOCSC Case No. CV011116, Gregg Berge v. Cambria Community Services District (see Exhibit B);

3. SLCOSC Case No. CV021164, Gregg Berge v. County of San Luis Obispo, Cambria Community Services District (see Exhibit B);

4. SLOCSC Case No. CV030214, Greg Allen Berge v. County of San Luis Obispo, Cambria Community Services District, et. al (see Exhibit B);

5. SLOCSC Case No. CV030220, Cambria Community Services District v. Gregg Allen Berge and cross-action Gregg Allen Berge v. Cambria Community Services District;

6. SLOCSC Case No. CV080497, Gregg A. Berge, Eagle Nest Capital v. Cambria Community Services District, County of San Luis Obispo, California Coastal Commission (see Exhibit C);

7. SLOCSC Case No. CV118265, John F. Gilray, et. al v. Cambria Community Services District (see Exhibits D and E);

8. SLOCSC Case No. 15CVP0282, Kenneth Noonan, et. al v. Cambria Community Services District (see Exhibits F and G).

Dated: September 3, 2019                    CARMEL & NACCASHA LLP

                                    By: _____
                                         Timothy J. Carmel
                                         Michael M. McMahon
                                         Attorneys for Defendant
                                         Cambria Community Services District
                                         (served herein as Cambria Community
                                         Water District)

2

**CAMBRIA COMMUNITY SERVICES DISTRICT'S REQUEST FOR JUDICIAL NOTICE [FRE 201]**

# EXHIBIT A

FILED
SAN LUIS OBISPO
SUPERIOR COURT

MAR 2 8 2002

BY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

GREGG BERGE

    Petitioner/Plaintiff,

v.

COUNTY OF SAN LUIS OBISPO
CAMBRIA COMMUNITY SERVICES
DISTRICT

    Respondent/Defendants,

CV 000325

RULING ON DEMURRER TO
THIRD AMENDED COMPLAINT

    Gregg Berge filed a third amended complaint on November 27, 2001.  He alleges he owns property within the Cambria Community Services District ("CCSD") that is zoned for residential development.  In order to develop his property, he must obtain a residential "intent to serve" letter from CCSD before he can obtain a building permit.  To obtain an intent to serve letter, he must have his name placed on the CCSD wait list.  In November 2000, CCSD passed an ordinance providing that new applications for residential wait list positions would not be accepted until further notice.  Mr. Berg alleges CCSD wrongfully closed the wait list without a finding that a water shortage emergency condition exited.  He asserts causes of action for :(1) a writ of mandate pursuant to CCP § 1085; (2) inverse condemnation; and (3) declaratory relief.  CCSD demurs.

-1-

1      The demurrer is sustained.  Since he has had several attempts to amend, this demurrer is

2 sustained without leave.

3                       DISCUSSION

4      **1. Section 1085.**  CCSD demurs to the § 1085 cause of action on the ground it does not

5 have a ministerial duty to provide Mr. Berge with water service.  In a similar case, the court

6 found there was no statutory or other authority that imposed a ministerial duty on the district to

7 provide water service to new customers, and therefore the petitioners failed to state a claim for

8 mandamus relief.  (Building Industry Assn v. Marin Municipal Water Dist. (1991) 235

9 Cal.App.3d 1641, 1650; see also Getz v. Pebble Beach Community Services Dist. (1990) 219

10 Cal.App.3d 229, 232 (district properly allocated permits for sewer connections).)

11      Mr. Berge attempts to distinguish Building Industry on the ground that the district in that

12 case had declared a water shortage emergency under Water Code § 350 whereas CCSD declared

13 an emergency only recently.  One of the issues examined in Building Industry was whether the

14 district had complied with § 350 in declaring an emergency.  (Building Industry, 235 Cal.App.3d

15 at pp. 1646-1648.)  The court's ruling that the district did not have a ministerial duty to supply

16 water was not premised on the water shortage emergency.  The court also examined whether the

17 district had a mandatory duty to make reasonable efforts to augment the available water supply,

18 and concluded it did not.  (Id. at pp. 1648-1650.)  Mr. Berge does not cite any law to show that

19 the allocation of water service to new customers can be limited only in a water shortage

20 emergency.

21      Mr. Berge also cites Swanson v. Marin Min. Water Dist (1976) 56 Cal.App.3d at p. 524.)

22 This observation, however, does not impose a ministerial duty to provide water service.

23      As another basis for a ministerial duty, Mr. Berge cites Government Code §61600, which

24 provides for the creation of community services districts.  The statute states that a district "may

25 exercise the powers granted for any of the following purposes ... to supply the inhabitants of the

26 district with water ..." (Gov. Code §61600(a).)  The language of the statute does not impose a

27

28                             -2-

1    duty to provide water. Here, as in Building Industry Mr. Berge fails to identify a statute that

2    imposes a ministerial duty on CCSD to provide him with water service.

3        Plaintiff/petitioner's final argument is that, assuming the decision to close the list was

4    legislative/quasi-legislative, that decision served no district governmental purpose or at most it

5    served an illegitimate purpose (slow growth), citing Swanson, supra. It is true that the CCSD's

6    Ordinance 2-2000 dovetails with the County's Ordinance 2477 (growth management), but Mr.

7    Berge alleges no factors or inferences that the sole purpose was to regulate growth, especially in

8    light of the five legitimate, declared reasons for the ordinance set forth at Section 1.D. Therefore,

9    the demurrer to the first cause of action is sustained.

10       2. Inverse Condemnation. CCSD contends the second cause of action for inverse

11   condemnation fails because the denial of placement on the wait list does not amount to a taking.

12   A government regulation that deprives a landowner of all economically viable use of the land

13   may constitute a regulatory taking of property which requires just compensation. (Ali v. City of

14   Los Angeles (1999) 77 Cal.App.4th 246, 250.) In Gilbert v. State of California, the court

15   concluded that when the Department of Health Services required the county to impose a

16   moratorium on new water service connections, it did not amount to a taking of real property

17   because the property had never had water service, and thus the moratorium did not take or

18   damage any property value already held by the owners. (Gilbert v. State of California (1990) 218

19   Cal.App.3d 234, 256.)   Similarly, here, the economic viability of Mr. Berge's property is the

20   same both before and after CCSD's failure to issue a "will serve" letter: Mr. Berge holds

21   property that did not have water service and that does not now. Under Gilbert, because the status

22   of the property remains the same, no taking has occurred.

23       Mr. Berge again attempts to distinguish Gilbert on the ground a water shortage

24   emergency had been declared in that case. This fact, however, did not factor into the court's

25   decision on the takings issue. (Gilbert, 218 Cal.App.3d at pp. 249-259.) Rather, the court relied

26   on the distinction between the rights of existing customers versus those of potential users. (Id. at

27

28                                -3-

1    p. 251.) Under Gilbert, the demurrer is sustained.

2         3.  **Declaratory Relief.** CCSD demurs to the third cause for declaratory relief on the

3    ground it is simply a restatement of the first cause of action.  If Mr. Berge cannot state a claim for

4    mandamus relief, then a declaratory judgment will not be of any benefit to him.  He cannot.  The

5    demurrer to this cause is sustained.

6         4.  **New Basis for Claim.**  In opposition, Mr. Berge asserts a new claim: that a

7    conditional certificate of compliance issued to him in 1989 gives him the right to be placed on

8    the wait list.  There does not appear to be any correlation between the issuance of a certificate of

9    compliance and the wait list for water service.  This argument does not provide a basis upon

10   which to state a cause of action.

11

12   DATED: March 28, 2002

13                                              DONALD G. UMHOFER
                                                SUPERIOR COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  -4-

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
Unlimited Civil Division

CERTIFICATE OF MAILING

| | |
|---|---|
| GREGG BERGE<br><br>VS.<br><br>COUNTY OF SAN LUIS OBISPO | CV000325 |

Hall, Clayton U.
    Attorney for Defendant
HALL & HEIATT
1194 Pacific Street, Suite 100
San Luis Obispo    CA 93401 0000

Orton, James B, Deputy County Counsel
    Attorney for Defendant
County of San Luis Obispo
Rm 386 County Government Center
San Luis Obispo    CA 93408 0000

Montandon, Arther
    Attorney for Defendant
MONTANDON & FLEISHMAN
204 East Cook Street
Santa Maria    CA 93454

Eldridge,. Paul J
    Attorney for Plaintiff
TYLER, DORSA & ELDRIDGE, LLP
41877 Enterprise Circle North Ste 200
Temecula    CA 92590

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                    OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

WAYNE HALL, Court Executive Officer

by _____ , Deputy    Dated: _____

# EXHIBIT B

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO

DATE: June 24, 2003                                      DEPARTMENT NO. VMB

PRESENT: HON. MARTIN J. TANGEMAN, JUDGE                  JoAnne Miller, DEPUTY CLERK

        , BAILIFF                                                   , REPORTER

| TITLE | COUNSEL |
|-------|---------|
| GREGG ALLEN BERGE, | In Pro Per |
| PLAINTIFF(S) | |
| VS. | |
| COUNTY OF SAN LUIS OBISPO, | Molly Thurmond, for Defendant County of San Luis Obispo |
| DEFENDANT(S) | David Fleishman, for Defendant CCSD |

ACTION NO.: CV 030214

PROCEEDINGS: RULINGS ON SUBMITTED MATTERS

Various motions in this matter were properly noticed or continued and came on for hearing on June 24, 2003. After consideration of all of the papers filed in support of and in opposition to the following motions, and the arguments of the parties and/or counsel, the Court now rules as follows:

REQUEST FOR JUDICIAL NOTICE

In its motions, Cambria Community Services District requested that this Court take judicial notice of the records and files in the following files of the San Luis Obispo Superior Court:

CV 000325
CV 011116
CV 021164

The Court, on its own motion, proposed to take judicial notice of the files in Actions CV 000325 and CV 021164 on June 17, 2003, in connection with the County's demurrers; and the County also requested that the Court take judicial notice of those files. The Court continued the hearing on the County's demurrer one week to allow Plaintiff's preparation for, and response to, this proposal to take judicial notice.

No opposition to the requests (or proposal by the Court on its own motion) has been received. The Court has taken judicial notice of the contents of the files in CV 000325, CV 011116 and CV 021164. The Court has also taken judicial notice of Ordinance No. 2477 of the County of San Luis Obispo (attached as Exhibit E to CCSD's request for Judicial Notice).

BERGE v. COUNTY OF SAN LUIS OBISPO                                          June 24, 2003
CV 030214                                                                      Page 2 of 3

## CAMBRIA COMMUNITY SERVICES DISTRICT MOTION FOR ORDER
## DECLARING PLAINTIFF A VEXATIOUS LITIGANT

The motion is granted, based upon Code of Civil Procedure §391(b)(2). The Court finds that there is no reasonable probability that Plaintiff will prevail against Cambria Community Services District in this litigation, for the reasons set forth below. Plaintiff shall be required to furnish security in favor of the Cambria Community Services District in the amount of $15,000.00 by July 10, 2003, as a condition of continued litigation of this action, pursuant to C.C.P. §391.3. In addition, Plaintiff shall be prohibited from filing further actions or lawsuits on his own behalf, in propria persona, against Cambria Community Services District, in the courts of this state, without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed, pursuant to C.C.P. §391.7.

## CAMBRIA COMMUNITY SERVICES DISTRICT DEMURRER

The demurrer of the Cambria Community Services District to Plaintiff's Complaint/Petition for Writ of Mandate, Inverse Condemnation, and Declaratory Relief is sustained without leave to amend on the following grounds:

1.      All of the claims and causes of action are barred for the same reasons as set forth at length in the Ruling on Demurrer to Third Amended Complaint in San Luis Obispo County Superior Court Action CV 0 00325; and/or

2.      All of the claims and causes of action are barred by res judicata and/or collateral estoppel.

## COUNTY DEMURRER

The demurrer of the County of San Luis Obispo to Plaintiff's Complaint/Petition for Writ of Mandate, Inverse Condemnation, and Declaratory Relief is sustained without leave to amend on the following grounds:

1.      All of the claims and causes of action are barred by res judicata and/or collateral estoppel, having already been determined adversely to Plaintiff;

2.      As to all of the claims and causes of action, the County is immune from liability under Government Code § 818.4 ; and/or

3.      Plaintiff has failed to establish that he has (or can) allege any duty on the part of the County to provide or issue the requested water entitlement, and accordingly each claim and cause of action against the County must fail.

## PLAINTIFF'S MOTION TO AMEND

Plaintiff filed a motion to amend on June 20, 2003 , scheduling a hearing for two (2) court days later, i.e. June 24, 2003. The motion is denied without prejudice as untimely and without adequate notice.

Counsel for County shall prepare an order of dismissal based upon the sustaining of its demurrer without leave to amend.

Counsel for Cambria Community Services District shall prepare an order granting its motion to declare Plaintiff a vexatious litigant consistent with the terms hereof, and an order of dismissal based upon the sustaining of its demurrer without leave to amend.

BERGE v. COUNTY OF SAN LUIS OBISPO
CV 030214

June 24, 2003
Page 3 of 3

Counsel for Cambria Community Services District shall prepare a proposed judgment.

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F<sup>I</sup>LED

OCT 03 2008

SAN LUIS OBISPO SUPERIOR COURT

BY _____

L. Wetlay, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

| | |
|---|---|
| GREGG A. BERGE, an individual;<br>EAGLE NEST CAPITAL, LLC, a<br>California Limited Liability Company; and<br>DOES 1 through 10,000, inclusive,<br><br>               Plaintiffs,<br><br>vs.<br><br>CAMBRIA COMMUNITY SERVICES<br>DISTRICT; COUNTY OF SAN LUIS<br>OBISPO; CALIFORNIA COASTAL<br>COMMISSION; and DOES 1-100,<br>inclusive,<br><br>               Defendants. | Case No.: CV 080497<br><br>ORDER SUSTAINING DEMURER<br>WITHOUT LEAVE TO AMEND AND<br>DENYING MOTION FOR SANCTIONS |

      Plaintiffs Gregg Berge ("Berge") and Eagle Nest Capital, LLC ("Eagle Nest")

bring this action for inverse condemnation and breach of contract against Cambria

Community Services District ("CCSD").[1]  CCSD demurs to the complaint and brings a

motion for sanctions (CCP §128.7).  Plaintiffs oppose the demurrer and the sanction

motion.  Following oral argument, the Court took the matter under submission.  Having

fully considered the briefs and arguments of counsel, the Court's ruling follows.

_____

      [1]  Although the complaint attempts to include approximately 10,000 similarly situated
Doe plaintiffs, the case is not pleaded as a class action or representative suit.  Therefore, plaintiffs
identified as "The plaintiffs" do not have standing to sue.

1

1 | **THE DEMURRER**

2 | Plaintiffs allege that the CCSD has taken their property without compensation as

3 | a result of its refusal to issue an "Intent to Serve" letter, which plaintiffs must possess in

4 | order to obtain a Minor Use Permit from the County.  CCSD argues plaintiffs are unable

5 | to assert a claim for inverse condemnation against CCSD because it does not have the

6 | authority to issue land-use permits.  CCSD also argues that its actions in declaring a

7 | Water Code §350 emergency, adopting Ordinance No. 2-2000 and/or considering the

8 | proposed Buildout Reduction Program do not constitute a taking.  Rather, CCSD asserts

9 | that its actions involve water and sewer service.

10 | This is not the first time this Court has addressed the inverse condemnation cause

11 | of action.  Indeed, this is the *fifth* time in *eight* years that Berge has pursued this claim,

12 | as a result of which Berge has been deemed a vexatious litigant under CCP §391(b)(2).[2]

13 | Moreover, the doctrine of "[r]es judicata prohibits the relitigation of claims and issues

14 | which have already been adjudicated in an earlier proceeding.  The doctrine has two

15 | components.  "In its primary aspect the doctrine of res judicata [or 'claim preclusion']

16 | operates as a bar to the maintenance of a second suit between the same parties on the

17 | same cause of action."  The secondary aspect is "collateral estoppel" or "issue

18 | preclusion," which does not bar a second action but "precludes a party to an action from

19 | relitigating in a second proceeding matters litigated and determined in a prior

20 | proceeding." "[Citations.]" (*Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th

21 | 1329, 1335.)

22 | On three prior occasions this Court has sustained demurrers without leave to

23 | amend as to Berge's inverse condemnation cause of action.  An order sustaining a

24 | demurrer in a prior action is a final judgment for purposes of issue preclusion (*Border*

25 | *Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1564.)  Berge is

26 | precluded under the res judicata and collateral estoppel doctrines from now pursuing his

27 | inverse condemnation claim.

28 |

[2]  At CCSD's request, the Court takes judicial notice of the contents of the files in
CV 000325, CV 011116, CV 021164, CV 030214 and CV 030220.

2

1   With respect to Eagle Nest, the pleadings portray this limited liability
2   corporation as being in the same position as Berge, and aggrieved by the same factual
3   scenario.  Eagle Nest fails to articulate any unique facts or arguments relative to its
4   claim.  Because Eagle Nest is in privity with Berge, and because Eagle Nest does not
5   provide any distinction between it and Berge to refute the appearance of an "identity or
6   community of interest," issue preclusion bars Eagle Nest from attempting to relitigate
7   the same issue. (*California Physicians' Service v. Aoki Diabetes Research* (2008) 163
8   Cal.App.4th 1506, 1522.)

9   In order to avoid the bar of res judicata and collateral estoppel, plaintiffs now
10  attempt to paint the inverse condemnation cause of action as a "land-use dispute" rather
11  than a "water-law issue."  Initially, as plaintiffs must concede, California law does not
12  recognize potential water use as a compensable property right.  (*Gilbert v. State of
13  California* (1990) 218 Cal.App.3d 234, 250.)  Without going through each analytical
14  step, the Court concludes that the facts here are very similar to those in *Gilbert*, such that
15  *Gilbert* controls the outcome:

16      In a regulatory taking case such as this where the government
17      action does not physically appropriate, invade or damage
        appellants' property; where appellants had no recognized property
18      interest in the very improvement, the denial of which allegedly led
19      to extinction of all viable use of their land; and where we cannot
        meaningfully characterize the public action as coming within the
20      field of regulating or restricting land use, we conclude the state has
21      not, in any constitutional sense, caused the purported extinction.

22  Moreover, as stated by the Court in its ruling on CCSD's demurrer in Berge's
23  first action (CV 000325): "Mr. Berge holds property that did not have water service and
24  that does not now."  There has been no change in plaintiffs' status.  Plaintiffs' do not
25  have a right in potential water service.  Plaintiffs' complaint confirms plaintiffs'
26  properties were never on the "waiting list."  Whether termed "land-use" or "water-law,"
27  plaintiffs' claim is fundamentally premised upon an alleged taking of plaintiffs' property
28  through CCSD's refusal to provide an "Intent to Serve" Letter for water and sewer

3

1    service. A potential water user has no absolute right to water service, so CCSD's

2    actions have not resulted in any taking.

3         The only "new" fact alleged by plaintiffs is a reference to the CCSD's Buildout

4    Reduction Program, which appears to be connected with CCSD's Water Master Plan.

5    However, plaintiffs' complaint merely alleges that the CCSD "intended to adopt" the

6    Buildout Reduction Program, and does *not* claim that it has ever been adopted or

7    implemented. *See* Complaint ¶42. Until such time as a specific program is actually

8    adopted and instituted, the Court "cannot meaningfully characterize the public action as

9    coming within the field of regulating or restricting land use." *Gilbert,* 218 Cal.App.3d at

10   250.

11        There is another procedural barrier to consideration of the merits. Plaintiffs'

12   status is the same as it was back in November 2000 when CCSD passed Ordinance No

13   2-2000. Plaintiffs never were members of the waiting list and never did become

14   members. It is long past the time for bringing a claim for inverse condemnation based

15   upon infirmities with respect to Ordinance No 2-2000. The claim for inverse

16   con demnation is barred by the statute of limitations.

17        In sum, CCSD's demurrer to plaintiffs' inverse condemnation cause of action is

18   sustained without leave to amend on the grounds of res judicata, collateral estoppel, and

19   the statute of limitations. Further CCSD's actions to date do not amount to a taking of

20   any compensable property right.

21        With respect to the contract cause of action, plaintiffs fail to establish

22   compliance with the mandatory government claims filing requirement. (*Lozada v. City*

23   *and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1152.) Moreover, for the

24   reasons set forth above, plaintiffs' breach of contract claim is barred by the applicable

25   four year statute of limitations. Finally, plaintiffs fail to provide any authority to support

26   their contention that a "special assessment" may be the basis for a breach of contract

27   cause of action. CCSD's demurrer to plaintiffs' cause of action for breach of contract is

28   sustained without leave to amend.

4

## MOTION FOR SANCTIONS

Pursuant to CCP §128.7, CCSD seeks sanctions (attorneys' fees) against plaintiffs and their counsel in the amount of $14,154 for filing a frivolous complaint against CCSD that was motivated by an improper purpose. The District contends that plaintiffs' suit is totally meritless, and, further, that plaintiffs have violated various ethical and legal restrictions in recruiting additional plaintiffs for the purposes of bringing additional legal actions.[3]

CCP §128.7(b) is an implied certification that the pleading is being presented for a proper purpose, with legal merit and evidentiary support. "This certification is designed to create an affirmative duty of investigation as to both law and fact, and thus to deter frivolous actions and costly meritless maneuvers. (Citation)" (*Weil & Brown, California Practice Guide, Civil Proc. Before Trial,* 9:1158.)

In terms of the merits, plaintiffs are convinced that recent activities by CCSD have converted this matter from a water issue to a land use issue under *Gilbert v. State of California* (1990) 218 Cal.App.3d 234. While the Court disagrees with plaintiffs' interpretation of the facts and legal analysis, plaintiffs' position does not warrant sanctions.

With respect to an alleged improper purpose for bringing suit, CCSD represents and presents evidence that plaintiffs, through UnClog Cambria, LLC, are "capping" for plaintiffs' counsel in violation of Bus. & Prof. Code §6150, and are "sharing" fees in violation of Rule 1-320 of the Rules of Professional Conduct. Plaintiff's counsel vehemently disputes these allegations. This may or may not be a matter for the State

\\\
\\\
\\\
\\\

---

[3] While the Court expressed procedural concerns at oral argument, CCSD did in fact comply with the 21-day "safe harbor" provision. On August 5, 2008, CCSD served plaintiff with the motion for sanctions. On August 27, 2008, CCSD filed the motion for sanctions.

5

1   Bar to investigate, but the evidence presented does not establish that plaintiffs' actions in

2   filing the subject complaint are solely for improper purposes.

3       CCSD's motion for sanctions is denied. It is so ORDERED.

4   \\\

5   DATED: October 3, 2008

6                                           CHARLES S. CRANDALL
                                            Judge of the Superior Court
7

8

9   CSC/lk
    W:\COURTOPS\LKING\JUDGES\CRANDALL\CV080497-BERGE.doc
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 6

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

*Civil Division*

*CERTIFICATE OF MAILING*

| | |
|---|---|
| GREGG BERGE | |
| VS. | CV080497 |
| CAMBRIA COMMUNITY SERVICES DISTRICT | |

Linehan, Andrew F
 *Attorney for Plaintiff*
LINEHAN & ASSOCIATES
42225 Remington Ave, Ste 5
Temecula          CA 92590

Bowen, Stephanie A.
 *Attorney for Defendant*
HALL, HIEATT & CONNELY
1319 Marsh St. 2nd Floor
San Luis Obispo       CA 93401

Olivas, Daniel
 *Attorney for Defendant*
Office of Attorney General
300 South Spring St., Suite 500
Los Angeles          CA 90013

Montandon, Arther R.
 *Attorney for Defendant*
P.O. BOX 65
Cambria          CA 93428

*
 Attached Plea *ding*:
Order Sustaining Demurrer Without Leave
to Amend & denying Motion for Sanctions
10/3/08

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at San Luis Obispo, California, first class postage prepaid, in
a sealed envelope, a copy of the foregoing addressed to each of the above
                    OR
If counsel has a pickup box in the Courthouse that a copy was placed in
said pickup box this date.

SUSAN MATHERLY, Court Executive Officer

by _____ , Deputy     Dated: _10/3/08_

                                          by fax ; mail.

**EXHIBIT D**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Cambria Community Services District, a California Community Services District, and Does 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

John F. Gilray, Donald C. Berry, and Mary E. Craighead, as trustee

FILED

SEP 26 2011

SAN LUIS OBISPO SUPERIOR COURT
By: _____
C. Jewell, Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Luis Obispo County Superior Court<br><br>1035 Palm Street, San Luis Obispo, CA | CASE NUMBER:<br>*(Número del Caso):* CV110576 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Craig M. Collins, Blum Collins LLP, 707 Wilshire Blvd, Suite 4880, Los Angeles, CA 90017

| DATE: 9/26/2011     SEP 26 2011 | Clerk, by SUSAN MATHERLY | /S/ D. JEWELL Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* Public entity
4. ☑ by personal delivery on *(date):* September 26, 2011

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

1
**BLUM COLLINS LLP**
THE AON CENTER
2
707 WILSHIRE BLVD.
SUITE 4880
3
LOS ANGELES, CA 90017
TELEPHONE (213) 572-0400
4
FAX (213) 572-0401
CRAIG M. COLLINS, BAR NO. 151582
5
GARY HO, BAR NO. 229995

6   Attorneys for Petitioners/Plaintiffs

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       FOR THE COUNTY OF SAN LUIS OBISPO

10

11

12   JOHN F. GILRAY, an individual;          Case No.
     DONALD C. BERRY, an individual; and
13   MARY E. CRAIGHEAD, as trustee, an
     individual,
14
                  Petitioners and Plaintiffs,     **PETITION FOR WRIT OF**
15                                                **MANDATE**
                                                 **(CODE CIV. PROC. §§ 1085 AND**
16                                               **1094.5) AND**
                                                 **COMPLAINT FOR DAMAGES**
17        vs.

18   CAMBRIA COMMUNITY SERVICES
     DISTRICT, a California Community
19   Services District, and DOES 1-50,
                                                 Case Filed:
20                Respondents and Defendants.     Trial Date:  None set.
21

22

23

24

25

26

27

28

_____
Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

Petitioners/Plaintiffs John F. Gilray, Donald C. Berry, and Mary E. Craighead, as trustee, allege the following on information and belief:

## THE PARTIES

1.      Petitioners/plaintiffs John F. Gilray, Donald C. Berry, and Mary E. Craighead, as trustee (collectively, "Petitioners") are, and at all relevant times were, owners of three parcels of land that are the subject of this action (the "Properties"). These Properties are located in the City of Cambria, in San Luis Obispo County, California.

2.      Petitioners are informed and believe that Respondent/Defendant Cambria Community Services District (the "CCSD") is, and at all times mentioned herein was, a California Community Services District.

3.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1 through 50 are unknown to the Petitioners, who therefore sue these defendants by fictitious names.  The Petitioners will amend this Petition/Complaint to show the Doe defendants' true names and capacities when ascertained.

## THE PROPERTIES

4.      The three petitioners own parcels of land in Cambria.  Petitioner John F. Gilray owns property located on Burton Drive (lot 9, block 115, APN 024-331-024). Petitioner Donald C. Berry owns property located at Kerry Avenue (lot 12, block 75, APN 023-361-020).  Petitioner Mary E. Craighead, as trustee, owns property located at

1

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

1    2552 Romney Drive (lots 51-54, block 23, APN 023-271-053).  The Petitioners' land is

2    hereinafter referred to as the "Properties").

3

4        5.        The Properties are as yet undeveloped.

5

6                                    **SEWER SERVICE**

7

8        6.        Since at least the 1970's, the Petitioners have paid sewer special

9    assessments and/or taxes on the Properties to fund the creation and operation of

10   Respondent's sewage treatment plant.

11

12       7.        The Petitioners have never obtained sewer service from Respondent.

13

14       8.        On or about June 14, 2011, Petitioners applied for public service review

15   and for sewer service from Respondent CCSD.  Respondent CCSD has refused to

16   accept or process either application.

17

18       9.        Since Respondent failed to point out any incompleteness in the

19   applications, the applications are deemed complete by operation of Gov't Code

20   65943(a).

21

22       10.       Petitioners are informed and believe that the CCSD has ample capacity in

23   its existing sewage treatment facilities.  The CCSD has the ability to serve Petitioners'

24   sewage treatment needs at their Properties.

25

26       11.       Petitioners are informed and believe that the CCSD processes sewage

27   treatment applications for commercial and affordable housing projects, but not for

28   residential projects—not even for residential customers such as Petitioners who paid to

     build the sewage plant through assessments and/or taxes.  There is no

                                              2
                       Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

1 rational basis for this distinction.  It violates the equal protection of law guaranteed by
2 the state and federal Constitutions.

3

4 **SUMMARY OF THIS ACTION**

5

6     12.      In order to develop the Properties, the Petitioners are required to obtain a
7 public service review from the Respondent CCSD.  The Petitioners applied for a public
8 service review from the Respondent, but the Respondent refused to provide it.  Also,
9 in order to develop the Properties, the Petitioners must obtain sewer service from the
10 Respondent.  The Petitioners also applied for Respondent to provide sewer service to
11 the Properties.  The Respondent has refused to accept or consider Petitioners'
12 applications.

13

14     13.      The Respondent's refusal to conduct the public service review or to
15 consider and approve Petitioners' sewer service application constitutes a taking of
16 Petitioners' properties.

17

18     14.      The Petitioners and numerous other similarly situated property owners
19 within the Respondent's district have paid sewer assessments to fund the creation and
20 operation of Respondent's sewage treatment plant, but have never obtained sewage
21 treatment services from Respondent.

22

23     15.      By this action, the Petitioners ask this Court to order the CCSD to:

24 •    Conduct a public service review as Petitioners' have requested, and
25     to grant Petitioners' applications for sewer service; or in the
26     alternative
27

28

3

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

- Pay just compensation to Petitioners for the taking of their Properties.

## FIRST CAUSE OF ACTION
## FOR WRIT OF MANDAMUS
### (Code of Civil Procedure §§ 1085 and 1094.5)
### (Against the CCSD and Does 1-50)
### (CCSD'S Refusal to Conduct Public Service Review and Approve Sewer Service Application)

16.     The Petitioners incorporate the preceding paragraphs.

17.     The CCSD has a duty to conduct public service reviews for prospective applicants for development including Petitioners.

18.     The CCSD has a duty to provide sewer service to prospective applicants for development including Petitioners.

19.     The CCSD refuses to perform a public service review or to make a decision on Petitioners' applications for sewer service.  Petitioners are entitled to file an action pursuant to Section 1085 of the Code of Civil Procedure to compel the CCSD to provide public notice and hold a hearing within 180 days of their applications for public service review and for sewer service.  Gov't Code § 65956.

20.     Under Gov't Code § 61107, the CCSD may not divest itself of the power to provide sewer service unless the CCSD shall first receive the approval of the local agency formation commission.

4

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

21.     The CCSD has *de facto* divested itself of the power to provide sewer service to persons such as Petitioners, but has not obtained local agency formation commission approval.

22.     The CCSD has the ability to perform the requested public service review. The CCSD has the ability to provide sewer service to Petitioners' Properties.

23.     The CCSD has failed to comply with its duties.

24.     The CCSD's actions are unlawful under Code Civ. Proc. § 1085 in that the CCSD is ignoring a mandatory duty.

25.     The Petitioners have been harmed by the CCSD's failure to have complied with its duties. The Petitioners have been prevented from developing their Properties.

26.     Petitioners ask the Court to order the CCSD to conduct the necessary public service review, and to grant their requests for sewer service.

27.     The CCSD grants sewage service to applicants for commercial projects and affordable housing projects. There is no rational basis for providing sewer service to these types of projects but not to residential projects. The CCSD's policy is a violation of equal protection.

28.     The Petitioners are beneficially interested in the issuance of the subject writ mandating the CCSD to conduct the necessary public service review, and to grant their requests for sewer service. The Petitioners cannot develop their Properties until the CCSD complies with its duties. As a result of the CCSD's actions, the Petitioners have suffered, and continue to suffer, the loss of economically beneficial or productive use of their properties.

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

1    29.    The Petitioners are also beneficially interested in the issuance of the writ

2    because as property owners and taxpayers of the State of California they have an

3    interest in ensuring that public officials do not unlawfully overstep their jurisdiction,

4    and in ensuring that laws, regulations, and duties are executed and enforced

5    uniformly, fairly, and as written.

6

7    30.    The Petitioners have performed all conditions precedent to the filing of

8    this petition and otherwise exhausted all administrative remedies.

9

10    31.    The Petitioners have no plain, speedy, and adequate remedy in the

11    ordinary course of law, other than the relief sought in this Petition.  Absent

12    intervention by this Court, the CCSD will continue to violate the Petitioners' rights.

13    No additional administrative appeal or other form of relief is available to prevent such

14    an occurrence.

15
                          **SECOND CAUSE OF ACTION**
16
                        **FOR INVERSE CONDEMNATION**
17
              **(U.S. Const. amend. 5 and 14; Cal. Const. art. 1, § 19)**
18
                        **(Against the CCSD and Does 1-50)**
19
20    32.    The Petitioners incorporate the preceding paragraphs.

21
22    33.    The CCSD's actions have taken the Properties without compensation.  The

23    CCSD has taken the property in each of three different, alternative ways, by:

24

25         •    interfering with distinct, investment-backed

26              expectations;

27

28

---
                                    6

• preventing all economically beneficial or productive use; and

• acting in ways that fail to substantially advance a legitimate state interest.

34.     Any one of these alternatives is sufficient to sustain a cause of action for inverse condemnation.

35.     A taking occurs when government action interferes with a property owner's distinct, investment-backed expectations.  When the Petitioners first acquired the Properties, the Petitioners acquired interests in the Properties for investment and development purposes.  At that time, and at all times since then, it was reasonable to believe that the Properties could be developed in highly economically beneficial and productive uses.

36.     The Petitioners did in fact believe they could develop the Properties.  The CCSD's actions have interfered with the Petitioners' distinct, investment-backed expectations, causing severe damage.

37.     A taking also occurs when government action prevents a property owner from making economically beneficial or productive use of land.  The CCSD's refusal to conduct a public service review and to grant sewer service will limit the use of the Properties to undeveloped open space.  It is legally and practically impossible for the Petitioners to obtain any economically beneficial or productive use of the Properties.

38.     A taking also occurs when government action fails to substantially advance a legitimate state interest.  The CCSD's conduct with respect to precluding the

7

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

development of the Properties was not done to advance a legitimate governmental interest. The government has no "legitimate" interest in compelling one citizen to give up its land without compensation in order to provide a less-crowded community to other citizens. In so doing, the CCSD harmed the Petitioners.

39.     In the alternative, Petitioners allege that there is no variance procedure or administrative appeal from the CCSD's findings. The CCSD's decision is final.

40.     The submission of another development plan by the Petitioners for this Properties would be an idle and futile act. The CCSD's responses to the Petitioners' previous development proposals have as a practical matter defined what development, if any, will be allowed—*i.e.*, none. This Court may now determine whether there has been a taking.

41.     No matter what the Petitioners might do to modify the project, no modification will ever allow anything to be built on the Properties. Any further development applications would result in denial.

42.     The CCSD has effected a regulatory taking of the Petitioners' Properties. The CCSD is constitutionally required to compensate the Petitioners for that taking.

43.     The CCSD's conduct has denied the Petitioners their constitutional right to just compensation as guaranteed by Article I, § 19 of the California Constitution and the 5th and 14th Amendments to the United States Constitution.

44.     As a direct and proximate result of the CCSD's conduct, the Petitioners has been damaged in an amount that will be proven at trial.

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

1    45.    As a direct and proximate result of the CCSD's conduct, the Petitioners

2    have been compelled to employ counsel to protect their rights.  The Petitioners are

3    entitled to recover their attorneys' fees and litigation costs under Code Civ. Proc.

4    § 1036.

5

6

7

8                          **PRAYER FOR RELIEF**

9

10        WHEREFORE, the Petitioners respectfully pray for relief as follows:

11

12    1.    That the Court issue a peremptory writ of mandate, injunction, order or

13    declaration commanding that the CCSD conduct a public service review as Petitioners'

14    have requested, and to grant Petitioners' applications for sewer service;

15

16    2.    That the Court issue a peremptory writ of mandate, injunction, order or

17    declaration commanding that the CCSD must make a decision on Petitioners'

18    application.  Petitioners are entitled to file an action to compel the CCSD to provide

19    public notice and hold the hearing.  Gov't Code § 65956.

20

21    3.    That the Court issue a peremptory writ of mandate, injunction, order or

22    declaration commanding that the CCSD must grant Petitioners the right to connect to

23    Respondent's sewer system.

24

25    4.    That the Court issue a peremptory writ of mandate, injunction, order or

26    declaration commanding that the CCSD must treat applications for sewer service for

27    commercial and affordable housing projects on an equal basis with applications for

28    sewer service for residential projects.

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

1      5.      That the Court issue a peremptory writ of mandate, injunction, order or

2  declaration commanding that the CCSD either must seek local agency formation

3  commission approval to divest itself of the power to provide sewer service to residential

4  properties, or must continue providing service to residential properties.

5  Or in the alternative:

6      6.      For just compensation to Petitioners for the taking of their Properties.

7

8      7.      That the Petitioners recover reasonable attorney's and expert fees under

9  Code Civ. Proc. § 1021.5, Code Civ. Proc. § 1036, Gov't Code § 800, or other applicable

10  law; and

11

12      8.      For costs of this proceeding and for such other and further relief as the

13  Court deems just and proper.

**BLUM|COLLINS** LLP

CRAIG M. COLLINS
Attorneys for Petitioners/Plaintiffs

10

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

**VERIFICATION**

State of California         )
                              )
County of Los Angeles   )

     I am an attorney representing Petitioners John F. Gilray, Donald C. Berry, Mary E. Craighead in this action, and am authorized to make this verification on their behalf under California Code of Civil Procedure § 446.

     I have read the foregoing **PETITION FOR WRIT OF MANDATE (CODE CIV. PROC. §§ 1085 AND 1094.5); AND COMPLAINT** and know the contents thereof. I certify that I believe the same is true.

     I am making this verification in the place of Petitioners on the grounds that the facts are within my knowledge.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed September 24, 2011 at Los Angeles, California.


_____
CRAIG M. COLLINS

Petition for Writ of Mandate (Code Civ. Proc. §§ 1085 and 1094.5) and Complaint

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

| | | CASE NUMBER |
|---|---|---|
| JOHN GILRAY | Plaintiff(s), | CV110576 |
| VS. | | |
| CAMBRIA COMMUNITY SERVICES | Defendant(s). | **Case Management Conference** |

Collins, Craig M
BLUM COLLINS LLP
707 Wilshire Blvd STE 4880
Los Angeles        CA  90017

### NOTICE OF ASSIGNMENT & CASE MANAGEMENT CONFERENCE.

This case is assigned to **Hon. Dodie A. Harman** for all purposes.

Plaintiff must serve the Summons and Complaint, a copy of this Notice, a Case Management Policy Statement, a blank Case Management Statement, Alternative Dispute Resolution Policy & Stipulation to ADR & must file proofs of service within 60 days after the complaint is filed. **Defendants shall file responsive pleadings within 30 days of service** unless the parties stipulate to an extension of not more than 15 days.

IT IS HEREBY ORDERED:

1. The parties must appear for a first Case Management Conference on:
**November 10, 2011  at  9:00 am  in Department 8**
*THE PARTIES OR THEIR ATTORNEYS MUST APPEAR AT THE CASE MANAGEMENT CONFERENCE ***
For information about **telephone appearances** call **COURTCALL at (888) 882-6878**

2. Each party must file & serve a Case Management Statement at least 15 days before the conference.
3. The person appearing at the first Case Management Conference must be familiar with the case and prepared to discuss suitability of the case for mediation, binding arbitration, judicial arbitration or some form of alternative dispute resolution.
4. Trial will be set within the 11th or 12th month after the filing of the complaint. Counsel must arrange their schedules, reserve dates with witnesses and schedule trial preparation with this in mind. Continuances will be granted only on a clear showing of good cause.
5. All law and motion matters will be calendared in the department of the assigned judge and filed with the Clerk's Office.
6. Each party should be prepared to show cause why sanctions should not be imposed for a failure to comply with these rules.
**LIMITED JURISDICTION ONLY:** unless the parties have entered into arbitration as required by Local Rules 9.00 and 26.00. "Entered into arbitration" means the date upon which the administrator mails the arbitration list.

encs.3

| SUPERIOR COURT, STATE OF CALIFORNIA<br>COUNTY OF SAN LUIS OBISPO<br>Department 8 | |
|---|---|

STANDING CASE MANAGEMENT ORDER
FOR CASES ASSIGNED TO THE HON. DODIE A. HARMAN

---

### INSTRUCTIONS TO PLAINTIFF(S)/CROSS-COMPLAINANT(S):

**YOU shall serve a copy of this Standing Case Management Order on all Defendants/Cross-Defendants at the same time the complaint/cross-complaint is served.**

---

## I.    GENERAL MATTERS

A.    It is the Court's policy to provide a dignified forum in which to resolve disputes in a peaceful, professional, legally correct and expeditious manner. All of the following rules are designed to achieve these goals. It is not the Court's intention to prohibit a party from raising any issue by any means allowed by Rule of Court, Code or statute. If any of the rules or procedures discussed herein creates a problem, counsel should raise the matter with the Court at the earliest opportunity after the parties have appeared.

B.    Electronic communication with the courtroom clerk is permissible for routine communications having to do with scheduling, stipulated continuances, and/or joint requests. Substantive arguments are not permitted unless approved by the Court. In any correspondence with the clerk, opposing counsel should be copied in order to avoid ex-parte communications. The clerk's email address is Sara.St.Cyr@slo.courts.ca.gov.

C.    Counsel will turn off all audible telephones and pagers and instruct their clients and witnesses to do so. Communication devices worn on the head are not permitted in the courtroom.

## II.    CASE MANAGEMENT CONFERENCES ("CMC")

A.    Unless otherwise specifically ordered, CMC Statements are required. The Court expects that counsel will be prepared to discuss the current status of the case, discovery, amenability to mediation, and any unusual factual, legal or evidentiary issues that may need resolution. Counsel who fail to appear will typically be set for an OSC hearing why sanctions should not be issued. The initial amount is ordinarily $150.00.

B.    Early mediation is strongly encouraged. Good faith participation in mediation will ordinarily excuse participation in a Mandatory Settlement Conference. The Court will typically sign an order to mediate at an early CMC.

C.    It is the Court's policy to resolve discovery disputes informally and efficiently. Accordingly, the Court has instituted special procedures for the resolution of discovery disputes through Pretrial Discovery Conferences, which can be scheduled on forms that are available from the clerk's office.

## III.    MEDIATION

A.    The parties are strongly encouraged to engage in early, meaningful mediation. Mediation will ordinarily take place within 90-120 days of all parties' appearance, but a longer time may be allowed. Either private or judical mediation is acceptable.

B.    Parties who select private mediation should comply with the mediator's instructions regarding briefing and payment of fees, which ordinarily should be divided equally.

---

**COURTROOM POLICIES**                                          **Page 1 of 4**

C.      A worthwhile mediation process means that parties, attorneys and any other person whose consent or authority is required to achieve a final disposition of the dispute should be present, as well as a representative of any insurer who has authority to settle the case for any amount up to the limits of the policy.

D.      Plaintiff should file a one-page Notice of Mediation with the clerk's office notifying the Court of the date of the mediation and name of the mediator.

## IV.     LAW AND MOTION MATTERS

A.      To the extent practicable, the Court will post tentative rulings on law and motion matters on the Court's website no later than the evening before the hearing.   The Court's website is located at www.slocourts.net.

B.      When parties agree to submit the matter based on a tentative ruling, or to have a matter taken off calendar, counsel should promptly notify both the courtroom clerk and the Research Attorneys via e-mail or by phone.  This is important in order to avoid unnecessary commitment of judicial resources to moot matters.  The contact information for the Research Attorneys is 805-781-1321 or SloCourtAttorneys@slo.courts.ca.gov and the courtroom clerk's contact information is Sara.St.Cyr@slo.courts.ca.gov.

C.      Resolution of Discovery Disputes

        1.      The Court no longer requires parties to request an informal Pretrial Discovery Conference prior to filing and serving a motion under Section 2016.010 through 2036.050, inclusive, of the California Code of Civil Procedure.

        2.      However, the parties may stipulate to proceeding with an informal Pretrial Discovery Conference in lieu of filing and serving discovery motions under Sections 2016.010 through 2036.050.  In that event, the parties shall proceed as follows:

                a.      All parties to the discovery dispute shall sign a written stipulation electing to resolve the specified discovery dispute(s) between them according to the procedure outline in this Section IV.C.  In such event, the parties stipulate to waive their right to proceed with regularly notice motions and stipulate that the Court can issue binding discovery orders as a full and final resolution of such dispute(s).

                b.      Any request for a Pretrial Discovery Conference must be filed with the clerk's office on the approved form (which is available online or can be requested from the clerk), must include a brief summary of the dispute, and must be served on opposing counsel in the same manner as the request is filed with the clerk.  Any opposition to a request for a Pretrial Discovery Conference must also be filed on an approved form (provided by the clerk), must include a brief summary of why the requested discovery should be denied, must be filed within two (2) business days of receipt of the request, and must be served on opposing counsel in the same manner as the opposition is filed with the clerk.

                c.      No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

                d.      The parties will be notified by minute order whether the request has been granted or denied and, if granted, the date and time of the Pretrial Discovery Conference.

                e.      The Court will issue a binding order at the conclusion of the Pretrial Discovery Conference.

## V.      READINESS CONFERENCE

A.      These conferences are typically scheduled during the week before trial.  At these conferences, trial counsel should be *personally present*, and prepared to discuss at least the following topics:

        1.      Estimated trial length. A jury trial will ordinarily be in session from Monday through Friday from 1:30 to 4:45 p.m., although trial days beginning at 10:00 a.m. are not uncommon.

        2.      Number, timing and availability of witnesses, as well as any special witness needs, or the need to call witnesses out of order.

---

a.      Counsel have responsibility for arranging the appearance of all witnesses during their presentation of the case so as to eliminate delays. Counsel should confer among themselves as to when witnesses will be needed *at least 24-48 hours in advance of a witness' testimony*.

b.      Counsel are to inquire of their clients and witnesses to determine whether they are in need of any type of accommodation with an interpreter, under the Americans with Disabilities Act, or any other type of assistance.

3.      Numbering and exchange of exhibits. The parties are encouraged to agree upon a reasonable exhibit numbering system.   Exhibits to be used in the case-in-chief should be pre-marked and exchanged *no later than the morning of trial and earlier if feasible*.  The use of exhibit books or binders is strongly encouraged

4.      Voir dire procedures, including mini-opening statements and preinstruction, and jury questionnaires. Counsel should attempt to agree upon a brief neutral statement of the case to be read to the prospective jury panel.

5.      Jury instructions and verdict forms.

a.      Counsel are to deliver all proposed instructions, verdict forms and requests for special findings to the Court and to opposing counsel *no later than the morning of trial*. Proposed instructions shall be complete in all respects without unfilled "blanks" or "bracketed" portions.

b.      Either before or shortly after trial starts, counsel are to meet and confer with the goal of reducing the amount of contested jury instructions and disagreement as to the form of the verdict. Within two (2) court days after beginning trial, all counsel should notify the Court in writing as to which of the proposed instructions, and which sections of the verdict form, are acceptable to all parties, and which are disputed.

6.      Stipulations to reduce the length of trial. Counsel should consult with each other regarding all possible stipulations and reduce them to writing. In particular, counsel should consider waiving the necessity for authentication/foundational evidence regarding all trial exhibits, unless authentication is an important issue

7.      Motions in limine. Prior to hearings on motions in limine, counsel should review *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 669-677, and its progeny.  Counsel should advise their clients and witnesses about rulings on motions in limine that pertain to evidentiary issues.  Counsel will be held responsible for any violations of rulings on motions in limine.

## VI.    TRIAL

A.      The Court will typically hear organizational and scheduling matters, procedural issues and in limine motions at the beginning of trial, including any matters left over or continued from the readiness conference.

1.      Originals of all depositions to be used in the trial are to be lodged with the Clerk at this time.  At the end of the trial, these depositions can be picked up from the Clerk, or they can be returned by mail at the party's expense.

2.      Jury instructions and verdict forms should be submitted at this time.

B.      Jury Selection Procedures

1.      Jury selection ordinarily begins at 1:30 p.m. the first day of trial.

2.      A short statement of the case is read and preinstruction of the venire occurs at this time.

3.      Mini opening statements of no more than 3 minutes per side are encouraged prior to jury selection.

4.      After the entire panel is screened for hardship, eighteen names are drawn at random, and voir dire is conducted. Unless otherwise ordered, a time limit of thirty minutes per side for 18 prospective jurors will apply.

5.      Challenges for cause are exercised and ruled upon at sidebar. Upon request, counsel will be given the opportunity to make a record of any unreported sidebar conference once the jury is not present.

---

**COURTROOM POLICIES**                                          **Page 3 of 4**

6.      At least two alternate jurors are typically selected.  If it becomes necessary to substitute an alternate juror, the first alternate chosen will be the first substitute.

9.      Trial Procedures

a.      No charts, diagrams or other exhibits should be shown or read aloud to the jury unless by stipulation or after admission of the item into evidence.

b.      Counsel should provide hard copies of any power point presentations, audio or video recordings and the like to opposing counsel in advance of showing them to the jury

c.      If counsel will seek to introduce an audio recording (or audio portion of a video recording), please review California Rule of Court 2.1040.

d.      Marking documents out of files: Please review *Neal v. Farmers Insurance Exchange* (1978) 21 Cal.3d 910, 923-924.

e.      Any object that cannot be folded into 8½" x 11" such as models, blowups, etc. should be accompanied by either a photograph or a photocopy to be retained by the Court in lieu of the oversized exhibit.

f.      When objections are made, counsel should state only the legal basis, without speaking objections.

g.      Sidebar conferences are normally held off the record.  Counsel may make a record of any unreported sidebar conference at an appropriate opportunity in the proceedings.  During trial, if counsel wish to place matters on the record, he or she may so request and the Court will provide an opportunity to do so, ordinarily at the end of the trial day once the jury has been excused.

10.      Post Trial Procedures

a.      After the verdict is rendered by the jury, the prevailing party is expected to prepare the judgment, which should be submitted on the next Court day following trial unless otherwise ordered.

b.      Counsel should make arrangements with the Clerk to withdraw exhibits in cases that will not be appealed.  The Clerk will hold the exhibits for sixty days after the filing of the notice of entry of judgment.  Any exhibits remaining after that time will be destroyed unless a notice of appeal is filed.


**DATED:  July 27, 2011**


_____/S/Dodie A. Harman_____
**HON. DODIE A. HARMAN**
*Judge of the Superior Court*
*County of San Luis Obispo*


**COURTROOM POLICIES**                                        **Page 4 of 4**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional):* | |
| E-MAIL ADDRESS *(Optional):* | |
| ATTORNEY FOR *(Name):* | |

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** |
|---|
| STREET ADDRESS: |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: |
|---|
| DEFENDANT/RESPONDENT: |

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*   ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                          Time:                          Dept.:                    Div.:                          Room:

Address of court *(if different from the address above):*

☐ **Notice of Intent to Appear by Telephone, by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*


4. **Description of case**
   a. Type of case in   ☐ complaint   ☐ cross-complaint   *(Describe, including causes of action):*

Page 1 of 5

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a. Attorney:
b. Firm:
c. Address:
d. Telephone number:      f. Fax number:
e. E-mail address:      g. Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1) For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2) For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.
b. **Referral to judicial arbitration or civil action mediation** (if available).
(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10.  c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

CM-110 [Rev. July 1, 2011]      **CASE MANAGEMENT STATEMENT**      **Page 3 of 5**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
   ☐ Bankruptcy ☐ Other *(specify):*

   Status:

**13. Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
      ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

   | Party | Description | Date |
   |---|---|---|

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110 [Rev. July 1, 2011]      **CASE MANAGEMENT STATEMENT**      Page 4 of 5

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

CM-110

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM-110 [Rev. July 1, 2011]        **CASE MANAGEMENT STATEMENT**        Page 5 of 5

44 Exhibit D

## ALTERNATIVE DISPUTE RESOLUTION POLICY STATEMENT

### WAYS TO RESOLVE YOUR DISPUTE WITHOUT A TRIAL
Presented by the San Luis Obispo County Superior Court

The mission of your Superior Court is to resolve civil disputes fairly and efficiently.  It is the court's policy to encourage persons involved in a lawsuit to consider methods other than a trial to resolve their disputes.

Did you know that 95% of all cases filed in court do not go to trial?  Most cases are settled or decided in some other way.  In fact, methods of settling disputes that do not require a trial have become the first choice of most businesses, government agencies and unions.  Agreements to mediate or arbitrate disputes are now commonly found in contracts covering employment, medical care, banking and insurance.

Alternative Dispute Resolution is a catch-all term that refers to the ways other than a trial that can be used to resolve the dispute you brought to the courthouse.  These options are typically less formal than trial and many provide opportunities to reach an agreement through a problem-solving approach rather than the adversarial approach of a trial.  ADR can save time, reduce costs and increase your overall satisfaction with the outcome.

### THE ADVANTAGES OF ADR

**Reduce Legal Costs**: Nearly all cases are resolved without a trial.  If a settlement is likely anyway, wouldn't it be better to save attorneys fees, court costs and experts fees by settling early?  In a recent survey, two thirds said they saved money by using ADR.

**Reduce The Time Spent on the Dispute**: A dispute can usually be decided or settled much sooner by using ADR. It is almost always less expensive.

**Increase Control Over the Result**: Some methods of ADR allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR methods permit the parties to entrust a decision about the dispute to an expert in a particular field instead of to a judge or a jury without the same experience or knowledge.  And in ADR, both the dispute and its resolution can remain confidential.

**Preserve Relationships**: ADR is generally a less adversarial and hostile forum for dispute resolution than a trial.  An experienced mediator or arbitrator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction**: In ADR, the parties usually have a better chance to tell their side of the story than they do in trial.  This increases the likelihood the case will settle as well as the parties= overall satisfaction with the outcome.

**Improve Attorney-Client Relationships**:  Attorneys may benefit from ADR by being seen as problem-solvers instead of as aggressive advocates.  Quick, cost-effective results are likely to produce repeat and new business from clients and their friends and associates.

### WHAT ARE THE ADR OPTIONS?

#### MEDIATION

In mediation, an independent, neutral person called a mediator helps the parties reach a mutually acceptable resolution of their dispute.  The mediator does not decide the dispute but is trained to help the parties communicate so they can settle the dispute on terms they design themselves.
If mediation does not result in a settlement, the case is returned to court.  And if the case goes to trial, there are laws that protect the confidentiality of the things discussed during mediation.

**Advantages**:  Mediation leaves control of the outcome with the parties.  It may be a particularly effective tool when the

---

CVDC04
Rev 07/01/02
Mandatory

ALTERNATIVE DISPUTE RESOLUTION

SLO rule 9.11.4

www.slocourts.net

parties have a continuing relationship to consider such as persons who work together, are neighbors or are members of the same family. Mediation is also effective where emotions are blocking a resolution. An effective neutral mediator can hear the parties out and help them communicate with each other in an effective and non-destructive manner.

**Disadvantages**: Mediation may be ineffective if one of the parties will not cooperate or is unwilling to compromise. And it may not be a good choice if the history of the parties includes abuse or victimization. Mediation may not produce a satisfactory resolution of the dispute if one of the parties has a significant advantage in power or rank than cannot be neutralized by the mediator.

## ARBITRATION

In arbitration, an independent, neutral person called an arbitrator decides what the outcome of the dispute will be. Each side presents evidence supporting its case in a setting that is more informal than a trial. Rules of evidence are relaxed.

Arbitration may be either binding or non-binding. Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's award as final. Generally, there is no right to appeal an arbitrator's final decision. Non-binding arbitration means that the parties are free to request a trial by a judge or a jury if they are unwilling to accept the arbitrator's findings and award.

**Advantages**: Arbitration is informal and usually less expensive than a trial. If the dispute involves a particularly complex matter, the parties can select an arbitrator who has training or experience in the subject matter of the dispute. If the dispute is not complex, the parties may simply wish to avoid the expense of a trial

**Disadvantages**: Generally, there is no appeal from an arbitrator's finding or award even if it is not supported by the evidence or the law. If a party to a non-binding arbitration requests a trial, there may be penalties for failing to achieve a better result.

## NEUTRAL EVALUATION

In early neutral evaluation, the parties employ an expert in the subject matter of the dispute and ask him or her to give them an opinion about how the dispute ought to be resolved. The expert's opinion is not binding and the parties use it to negotiate a resolution of the dispute.

**Advantages**: Neutral evaluation can produce early, creative settlements. If the parties are willing to listen and to compromise, the opinion of an expert they mutually select can provide a solid foundation for a long-lasting agreement.

**Disadvantages**: An expert can be expensive. The parties usually agree that neither the expert nor his or her opinion can be used in a trial if they cannot agree.

## COURT-SUPERVISED SETTLEMENT CONFERENCE

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a court-supervised settlement conference officer. The settlement conference judge or officer does not make a decision that is binding upon the parties. The judge or settlement officer helps the parties evaluate the case and to make decisions about settlement.

**Advantages**: A mandatory settlement conference gives the parties an opportunity before trial to negotiate a settlement in light of what they learned investigating the case and through discovery. The opinion of a settlement judge about the most likely outcome may inspire the parties to reevaluate their positions.

**Disadvantages**: A mandatory settlement conference is usually late in the life of a litigated dispute. It comes only after time and money has been spent preparing for trial. The parties' positions may have been hardened by what they have been through and they may be less willing to compromise.

**ALTERNATIVE DISPUTE RESOLUTION**

www.slocourts.net

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF SAN LUIS OBISPO COUNTY**<br>☐ **San Luis Obispo Branch,** 1035 Palm Street, Rm 385, San Luis Obispo, CA 93408<br>☐ **Grover Beach Branch,** 214 South 16th Street, Grover Beach, CA 93433<br>☐ **Paso Robles Branch,** 901 Park Street, Paso Robles, CA 93446 | |
| Plaintiff:<br><br>Defendant: | |

| | CASE NUMBER: |
|---|---|
| **STIPULATION TO USE OF ALTERNATIVE**<br>**DISPUTE RESOLUTION PROCESS (CRC 201.9)** | Judge |

The parties and their attorneys hereby stipulate that all claims in this action shall be submitted to (select one):

☐ Mediation                                         ☐ Neutral Case Evaluation

☐ Binding Judicial Arbitration               ☐ Binding Private Arbitration

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to close 15 days before arbitration under CRC, rule 1612)

☐ Nonbinding judicial arbitration under CCP 1141.2 (discovery to remain open until 30 days before trial: order required under CRC, rule 1612)

☐ Other


It is also stipulated that the arbitrator, mediator or other neutral shall be:

Name:

    Date:                                                    Date:


    Name of Plaintiff                                    Name of Defendant

_____          _____
    Signature                                               Signature


    Name of Plaintiff's Attorney                   Name of Defendant's Attorney

_____          _____
    Signature                                               Signature

(Attach another sheet if additional names are necessary)
It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, rule 225.

**IT IS SO ORDERED. IT IS ALSO ORDERED** that no new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

Date:                                                    _____
                                         JUDGE OF THE SUPERIOR COURT

---

CVDC05
Rev. 08/01/2009
Optional

**Martin Dean's**
**ESSENTIAL FORMS™**

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

SLO Local Rule 9.11 4

# EXHIBIT E

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN LUIS OBISPO
*Civil Division*

*Clerk's Certificate of Service*

| | |
|---|---|
| JOHN GILRAY | |
|     VS. | CV118265 |
| CAMBRIA COMMUNITY SERVICES DISTRICT | |

**Collins, Craig M**
    *Attorney for Petitioner*
BLUM COLLINS LLP
707 Wilshire Blvd STE 4880
Los Angeles      CA 90017

**McMahon, Michael M**
    *Attorney for Respondent*
CARMEL & NACCASHA LLP
1410 Marsh Street
San Luis Obispo    CA 93401

Attached order dated 12.9.11

Under penalty of perjury, I hereby certify that I deposited in the United
States mail, at Paso Robles, California, first class postage prepaid, in a
sealed envelope, a copy of the foregoing addressed to each of the above.
                      OR
If counsel has a pickup box in the Courthouse that a copy was placed in said
pickup box this date.

SUSAN MATHERLY, Court Executive Officer

by _____ Deputy    Dated:

FILED

DEC - 9 2011

SAN LUIS OBISPO SUPERIOR COURT
BY _____
Julie Vieira, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN LUIS OBISPO

PASO ROBLES BRANCH

GILRAY                                          Case No.: CV 118265

                    Plaintiff,                  RULING SUSTAINING DEURRER

v.

CAMBRIA CSD,

                    Defendant.

Petitioners' request for judicial notice is granted.

In their petition and complaint, filed September 26, 2011, Petitioners allege they own parcels of land located within the jurisdiction of Respondent, Cambria Community Services District. [¶4.][1]   The parcels are unimproved. [¶5.]  Petitioners allege they cannot develop their parcels without obtaining a public service review and sewer service from Respondent. [¶12.]  On or about June 14, 2011, desiring to develop their parcels, Petitioners applied to Respondent for a public service review

---

1   "[¶ N.] refers to paragraphs of the Petition & Complaint.

1

and for sewer service. [¶8.] Petitioner alleges further: Notwithstanding the fact that Respondent has the capacity to serve Petitioners [¶10.], and has granted sewer service to commercial projects and affordable housing projects [27]; Respondent refused to process Petitioners' requests. [¶¶8, 12.]  Petitioners allege Respondent's refusal to conduct the requested public service review or to consider and approve Petitioners' applications for sewer service constitutes a taking of their property rights. [¶13.]

In their first cause of action, styled as a request for issuance of a writ of mandate, Petitioners allege they are "prospective applicants for development" [¶¶17 & 18.] and that Respondent has the ability and a mandatory duty to conduct the necessary public service review and to grant their request for sewer service. [¶¶22-24.] [2]  They pray for issuance of writ of mandate commanding Respondent to conduct the allegedly necessary public service review and to grant their requests for sewer service. [¶26.]

In their second cause of action for inverse condemnation, Petitioners allege that Respondent's refusal to conduct a public service review and to grant them sewer service prevents them from developing their parcels or otherwise obtain any economically beneficial or productive use of them resulting in a taking without compensation. [¶¶32, 37.] They also allege this result interferes with their legitimate investment-backed expectations and fails to substantially advance a legitimate state interest.  The government has no "legitimate" interest in compelling one citizen to give up its land without compensation in order to provide a less-crowded community to other citizens. [¶¶36 & 38.]  The Petitioners allege further that Respondent's "decision" is final because there is no "variance" procedure or administrative appeal process and that the submission of another development plan for their parcels would

---

[2]  In oral argument and their briefs Petitioners stress that the District has not "banned providing sewer service", and Petitioners reason that there is a mandatory duty to both confirm the service is available, and grant the service, if not banned.

2

be futile. [¶¶39-41.]  They pray for just compensation for the "regulatory taking" of their property and for attorneys' fees pursuant to CCP §1036.[3]

Respondent attacks the Petitioners' request for issuance of a traditional writ of mandate by arguing that the first cause of action does not plead the source or basis of the alleged mandatory duty. (*See Women Organized for Employment v. Stein* (1980) 114 Cal.App.3[rd] 114, 137.)  Respondents argue that Respondent's Water Master Plan, the Permit Streamlining Act and the fact that Plaintiffs parcels are subject to special assessment for sewer service do not  require Respondent to conduct public service reviews on all development applications or provide them sewer service on demand. Each of these three items is discussed in the same order below.

Respondent's long-term water supply strategy (i.e., Water Master Plan) consists of sea water desalination, recycled water, water demand management, and potable water distribution system improvements. Respondent's Water Master Plan includes certain mitigation measures including "Public Services and Utilities" (aka "PSU") mitigation measures.

PSU-3 provides that prior to submittal of land use and building permit applications to the County for action, Respondent "shall review the development applications to ensure that police, schools, park/recreation, and solid waste facilities, services, and resources are adequate to support the increased demands associated with" the proposed development.( Petitioners Exhibit A at 8-1 through 8-13; Exhibit E.)

Cambria is an unincorporated community within the boundaries of the County's North Coast Planning Area and subject to the North Coast Area Planning Standards. Community Wide Standard number 8, (aka "CW-8") of the Cambria Urban Area Standards provides that "Prior to application acceptance, land use and

---

[3]  The U.S. Supreme Court has recognized "regulatory takings" in cases where there is no physical invasion of property by government. A regulatory taking occurs when an owner's use of its property is severely restricted by a law or regulation.  See, e.g., *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking")

3

building permit applications shall include a written verification of water and sewer service from the Cambria Community Services District.  A water and sewer service condition compliance letter from the Cambria Community Services District shall be provided to the Department of Planning and Building prior to final building inspection." Standard CW-8 is incorporated by reference in Respondent's Master Plan Mitigation Measure PSU-5. (Ibid.)

Petitioners allege and argue that they are entitled to apply for and Respondent is obligated to provide them sewer service separate from water service. While the language of PSU-3 may be ambiguous (i.e. do the nouns "services, and resources" refer only to services and resources" in connection with "solid waste facilities" or do they refer to all public services taxed by new development?) CW-8 is unequivocal: "applications shall include a written verification of water and sewer service" from Respondent. In addition, to insure that the project has "water and sewer service" from Respondent, a compliance letter must be presented to the County Department of Planning and Building prior to a final building inspection.

Without explanation Petitioners ignore the words "water and." Considering PSU-3 and PSU-5 (CW-8) together, the only reasonable construction is that the services review contemplated by PSU-3 necessarily includes all services not just sewer services. These mitigation measures call for analysis of the project's impact on community resources. Read together the mitigation measures direct analysis of project impacts on police, schools, parks, as well as water and sewer. The resources must be determined to "be adequate to support the increased demands for development. (Petitioners Exhibit A at 8-1 through 8-13; Exhibit E.)

It is clear from the language of PSU-3 that the review is only triggered by a "development application". Evaluation of the impact of a project on existing community resources would impossible without some description of the project.

4

1   The Petition alleges that the application was only for review of the availability of

2   sewer service, and for provision of sewer service. The language of the mitigation

3   measures does not support the piece-meal analysis of separate resources suggested by

4   Petitioners.  Mitigation measures PSU-3 and PSU-5 do not impose a mandatory duty

5   on Respondent to deal with such an application.

6       As the third source of the alleged mandatory duty, Petitioners argue that their

7   payment of money pursuant to special assessments imposed to finance a sewage

8   treatment plant gives them an absolute right to sewer service and creates a

9   corresponding duty in Respondent to provide the same. Petitioners rely exclusively

10  on *Knox v. City of Orland* (1992) 4 Cal.4[th] 132. In *Knox* defendant city formed a

11  special assessment district under the Landscaping and Lighting Act. The district

12  levied an assessment on each dwelling unit in the district for the maintenance of five

13  existing parks within the district. Plaintiff property owners challenged the

14  assessment, contending that it was a special tax requiring a two-thirds vote under Cal.

15  Const., Art. XIII A, §4. The court approved the assessment. Petitioners contend that

16  the following passage compels the relief they are seeking:

18          "Therefore, while a special assessment may, like a special tax, be
19          viewed in a sense as having been levied for a specific purpose, a critical
            distinction between the two public financing mechanisms is that a
20          special assessment must confer a special benefit upon the property
            assessed beyond that conferred generally. Accordingly, if an assessment
21          for park maintenance improvements provides a special benefit to the
22          assessed properties, then the assessed property owners should pay for
            the benefit they receive. If it does not, the assessment effectively
23          amounts to a special tax upon the assessed property owners for the
            benefit of the general public." (*Knox v. City of Orland, supra*, at 142-
24          143).

26      The language cited above was from a discussion of the difference between a

27  special assessment and a tax. It should not be read to imply a mandatory duty to

28  provide services on the assessee's time-table.  Indeed there is nothing about a

mandatory duty to provide services that can be taken from Knox; if the levy was not a proper special assessment, then it was a tax. Knox is inapposite, thus, Petitioners have failed to support their contention with any legal authority supporting their argument that being assessed for a service carries the mandatory duty to provide the service on the applicant's demand.

In the caption of the first cause of action, Petitioners refer to both CCP §1085 and 1094.5. In their opposition to Respondent's demurrer, Petitioners argue that section 1094.5 applies because Respondent's refusal to perform a public service review or to make a decision on their application for sewer service is a final decision. Such "logic" is a fallacy. Civil Procedure section 1094.5 was designed to set out an orderly process for the review of quasi-judicial functions of local agencies. (*Royal Convalescent Hospital, Inc., v. State Board of Control* (1979) 99 CalApp3rd 788, 793.) Challenges for an agency's failure to perform an act required by law, as opposed to decisions or results of an administrative hearing require markedly different types judicial review. Remedy for the former is by ordinary mandate, not by administrative mandate under CCP §1094.5. (*Conlan v Bonta* (2002) 102 CalApp4th 745, 748, *Wellbaum v Oakdale Joint Union High Sch. Dist.* (1977) 70 CalApp3rd 93, 96. Petitioners affirmatively allege that there is no administrative remedy; therefore, the court will disregard the reference to 1094.5 contained in the caption.

Petitioners argue that their request for a service review and application for sewer service is a "project" within the meaning of the Permit Streamlining Act (PSA) (Gov. Code §§65920-65964). The PSA was enacted to ensure a clear understanding of the requirements concerning approval of development projects, and to expedite decisions on development projects. The PSA sets time limits for governmental action on some types of projects (see Government Code sections 65920-65963.1. Failure to act within those time limits can mean automatic approval of a project.

Section 65928 defines "development project" as "... any project undertaken for the purpose of development. 'Development project' does not include any ministerial

6

projects proposed to be . . . approved by public agencies." As a rule, "[A]n act is ministerial when it is the doing of a certain thing that is unqualifiedly required. In other words, where the law prescribes and defines the duties to be performed by a public officer with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial." (52 Cal.Jur.3d, Public Officers, § 170, p. 333, fns. omitted.) Ministerial decisions involve little or no personal judgment by the public official. The official merely applies the law to the facts and uses no special discretion or judgment in reaching a decision. (*Prentiss v. City of S. Pasadena* (1993) 15 CalApp4[th] 85, 90).

This distinction makes sense. Where approval of a project requires only a ministerial act, without the exercise of discretion, mandamus is available to compel performance of the ministerial act. Conversely mandamus will not lie to control discretion conferred upon a public officer or agency. The PSA therefore supplies a strong remedy -- automatic project approval -- to those discretionary acts of public agencies that are insulated from compulsion by way of mandamus. (*Findleton v. El Dorado County Bd. of Supervisors* (1993) 12 CalApp4[th] 709, 713). Having alleged Respondent has a mandatory duty to conduct a service review and grant their application for sewer service, they can't rely upon the PSA because the PSA does not apply to ministerial projects. *Findeleton v. Board of Supervisors* (1993) 12 CalApp.4[th] 709, 713).

During its oral presentation Petitioners raised one further argument with respect to the PSA; that Respondent had a ministerial duty to determine if its application was complete, and to advise Petitioner of its determination. (Govt. Code section 65943). Service reviews pursuant to the above cited mitigation measures are not development projects within the meaning of the PSA. If we are to accept Petitioners counter response-- that their project is for a "sewer connection", and nothing more; we observe that the key word is "connection." There is no

7

1  "connection" without a building, and the water needed to convey sewage to the sewer

2  plant.

3        The cases cited by Petitioners in their supplemental brief grew out of

4  proposals for actual improvements to property or establishment of subdivisions. For

5  the reasons stated above the Petitioners application in this must be distinguished form

6  those.

7        The petition fails to identify a source or basis for the alleged mandatory duty

8  and having failed to do so, Respondent's general demurrer to the first cause of action

9  is sustained without leave to amend. (*Loomis v. Murphy* (1990) 217 Cal.App.3rd 589,

10  596 [where a defect in the cause of action is not curable by amendment the correct

11  ruling is to sustain the demurrer without leave to amend]).

12        Petitioners argue that even if Respondent does not have the alleged mandatory

13  duty there has still been a compensable taking. Although a claim for inverse

14  condemnation can and often is joined with a petition for writ of mandate, a takings

15  claim is not ripe until there has been a final administrative decision from the

16  permitting agency. (*Williamson County Regional Planning Commission v. Hamilton*

17  *Bank of Johnson City* (1985) 473 U.S. 172).

18        After *Williamson County*, the Court has consistently adhered to this ripeness

19  formulation. For example, in *MacDonald, Sommer & Frates v. County of Yolo*,

20  (1986) 477 U.S. 340 [106 S.Ct. 2561, 91 L.Ed.2d 285] the Court stressed that a case

21  is ripe only if "the type and intensity of development legally permitted" is known.

22  The demand for finality is satisfied only when there is no question about how the

23  regulations at issue apply to the particular land in question. (*Suitum v. Tahoe*

24  *Regional Planning Agency,* (1997)  520 U.S. 725, 739).

25        Landowners who do not vigorously pursue the permit process have difficulty

26  proving the existence of a taking. (See *U.S. v. Riverside Bayview Homes, Inc. (*1985)

27  474 U.S. 121 [106 S.Ct. 455, 88 L.Ed.2d 419]).   State courts have adhered to this

28  rule as well. (See, e.g., *Calprop Corp. v. City of San Diego*, 77 CalApp4th 582 (2000)

8

1   (futility exception to be read narrowly; landowners must pursue permit process);

2   *Palazzolo v. Rhode Island*, 746 A.2d 707 (R.I. 2000) (landowner actually had to

3   complete permitting process despite belief permit would probably be denied); *Alegria*

4   *v. Keeney*, 687 A.2d 1249 (R.I. 1997) (even though wetlands permit denied, other

5   uses still possible); *Gil v. Inland Wetlands and Watercourses Agency of the Town of*

6   *Greenwich*, 593 A.2d 1368 (Conn. 1991) (landowner's driveway permit application

7   too "grandiose").

8          More recently a case arising in this county demonstrates that the "ripeness"

9   doctrine is alive and well. In *Charles A. Pratt Construction Co. v. California Coastal*

10  *Commission*, (2008) 162 CalApp.4th 1068,  Pratt submitted a development proposal

11  and went through the approval process for over eight years before receiving approval

12  from the San Luis Obispo County Board of Supervisors. Pratt then submitted

13  environmental impact studies that included ten alternative development proposals to

14  the California Coastal Commission.  The Coastal Commission denied the permit for

15  the previously approved project and indicated that the modification of any of the ten

16  alternatives would be futile.

17         Pratt sued in this court alleging a regulatory taking.  The claim was then

18  dismissed for failure to obtain a final decision.  The Court of Appeals affirmed,

19  relying on the United States Supreme Court's decision in *City of Monterey v. Del*

20  *Monte Dunes at Monterey, Ltd.* (1999) 526 U.S. 687 [119 S.Ct. 1624, 143 L.Ed.2d

21  882]  The court noted that, in Del Monte Dunes, the developer submitted nineteen

22  different site plans, whereas Pratt only presented one.  Therefore, the court explained,

23  the decision by the Coastal Commission "does not settle the question of what

24  development will be allowed; nor does it indicate it would be futile for Pratt to

25  submit other development plans."

26         Because Petitioners have not yet identified the type of development they

27  propose, much less obtained a final decision determining what development will be

28

9

1    allowed on their parcels, their inverse condemnation claim is not ripe. Therefore,

2    Respondent's general demurrer is sustained without leave to amend. (*Loomis, supra.*)

3        All future settings are vacated.

4

5    Dated: December 9, 2011

6                                        JAC A. CRAWFORD
                                         Judge of the Superior Court
7

8    JAC:sl
9    rev1

10   w:\supcourt\crawford\gilray118155ruling.doc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        10

# EXHIBIT F

1    **JACK B. FRIEDELL Bar No 222437**

2

3    The Law Offices of Jack B. Friedell
2173 Salk Ave., Ste 250
Carlsbad, CA 92008

4    760-295-8913; 760-295-8914 fax

5    Attorney for Plaintiffs

6

7

8

9           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN LUIS OBISPO

10

11    KENNETH A. NOONAN and COLLEEN B.     Case No.   15CVP0282
NOONAN, TRUSTEES OF THE KENNETH

12    AND COLLEEN NOONAN 1999 TRUST;
PATRICIA LEKO, TRUSTEE OF THE          SECOND AMENDED COMPLAINT FOR:

13    HELEN K. KILGORE FAMILY TRUST;         DECLARATORY RELIEF AND DAMAGES
CHARLES STANTON; WILMA SUTCLIFFE;

14    AND KARLA SELWYN,

15

16           Plaintiffs,

17

18         vs.

19    CAMBRIA COMMUNITY SERVICES
DISTRICT; and DOES 1 through 20,

20    INCLUSIVE,

21

22           Defendants.

23

24        COMES NOW PLAINTIFFS, who allege as follows:

25                    **INTRODUCTION**

26        Plaintiffs are the owners of undeveloped, residentially zoned parcels within the coastal

27    zone and inside the urban service line of the Cambria Community Services District (CCSD).

28    Plaintiffs have attempted to determine whether their properties are authorized to obtain coastal

---

-1-
SECOND AMENDED COMPLAINT

1    development and building permits. Plaintiffs must obtain written verification that CCSD actually
2    plans to provide water, sewer, and fire protection service to the properties before they are eligible
3    to file coastal development or building permit applications with the County of San Luis Obispo
4    (County). Plaintiffs requested application forms and criteria to file and complete applications for
5    these services, but CCSD failed to provide the requested information. CCSD also refused to
6    process Plaintiffs' self-generated applications for these and other services.

7         Cambria enjoys amazing natural and scenic resources but has a chronic water shortage.
8    CCSD is actively seeking permits for a desalination plant to secure an inexhaustible source of
9    water to lift a declared water emergency. In order to obtain a coastal development permit for the
10   desalination plant, CCSD must comply with the California Coastal Act of 1976 (Coastal Act)
11   and the County's Local Coastal Program (LCP). Specifically, the desalination plant must be
12   limited in design, size, and use consistent with community planning documents. These include
13   CCSD's Water Master Plan, which incorporates a Buildout Reduction Program (BRP). The BRP
14   is a tool to limit development by capping the allowable number of residential water connections
15   and dwelling units to mitigate the growth inducing impacts of the proposed desalination plant.

16        The Coastal Act requires new public works projects to be designed and limited consistent
17   with the goals of protecting the state's natural and scenic resources. When design and size
18   constraints prevent a class of landowners from obtaining the public services required for
19   development, there is tension with the Coastal Act's prohibition against taking private property
20   rights for public use without payment of just compensation. Very simply, because a larger
21   capacity desalination plant could provide sufficient water for every undeveloped parcel within
22   CCSD's urban service line, the proposed plant capacity burdens a class of landowners with the
23   public cost of protecting the state's natural and scenic resources.

24        In an effort to minimize the chance that state and local agencies will be required to pay
25   for private development rights, the LCP includes mandatory planning area standards that prevent
26   targets of the scheme from filing development permits with the County. By design, the LCP
27   prevents Plaintiffs from obtaining a final administrative decision from the local land use
28   authority that could ripen a traditional takings claim. The CCSD's role in the scheme to limit

-2-
SECOND AMENDED COMPLAINT

1   development is to avoid providing a process or making a formal decision that informs Plaintiffs

2   that they cannot obtain water and sewer services from CCSD. The CCSD's disturbing and

3   unlawful policies prevent Plaintiffs from alleging a final decision has been made that ripens a

4   traditional claim for inverse condemnation.

5          The scheme to limit development frustrates Plaintiffs' due process rights and protected

6   property interests. Therefore, because CCSD will not provide a process or make a decision that

7   applies a crucial implementing regulation, Plaintiffs seek a declaration whether District Code

8   Section 8.04.050 prevents CCSD from providing water and sewer service to the properties.

9   Plaintiffs include a cause of action for damages because CCSD regulations and unlawful policies

10  frustrate protected rights and interests.

11         By this verified complaint, Plaintiffs allege as follows:

12                                      **PARTIES**

13  1)     Kenneth A. Noonan and Colleen B. Noonan, Trustees of The Kenneth and Colleen

14  Noonan 1999 Trust, own a parcel on Burton Ave. (Lots 3 & 4 of Block 114, APN 024-332-015).

15  Patricia Leko, Trustee of The Helen M. Kilgore Family Trust, owns a parcel on Richards Ave.

16  APN (Lots 1-3 of Block 89, APN 024-122-003). Charles Stanton is the owner of a parcel on

17  Newport Ave (Lots 15 & 16 of Block 25, APN 023-282-040). Wilma Sutcliffe and Karla Selwyn

18  are owners of a parcel on Wales Road (Lots 17-19 of Block 208, APN 023-113-001).

19  Collectively, these individual plaintiffs will be referred to as "Plaintiffs."

20  2)     Defendant Cambria Community Service District is the special district authorized to

21  provide water, sewer, fire protection, and other public services to properties inside its urban

22  service line.

23  3)     Does 1 through 250 are persons or entities unknown to Plaintiffs who may have an

24  interest that may be affected by this action sufficient to render them necessary parties. Plaintiffs

25  will amend this complaint to specifically identify each person or entity as a defendant and/or real

26  party in interest, if and when their identities become known.

27

28

---

## VENUE

4)      Venue is proper in this court because the properties are located in San Luis Obispo County.

## LEGAL BACKGROUND

5)      In the mid-1980's demand for sewer service exceeded an annual sewer connection constraint. In 1986 CCSD formed a water and sewer service waiting list to cue landowners seeking services for development; a $5,000 fee was paid to join the list. A water and sewer service wait list position represents a CCSD commitment to provide water and sewer services, including will serve letters and connections. According to information posted on CCSD's website, a wait list position entitles the landowner to a water and sewer connection from CCSD.

6)      In 1990 the County adopted Growth Management Ordinance No. 2477. The edict ordered CCSD to freeze its water and sewer service waiting list. The CCSD complied with the edict by adopting Ordinance 14-90, which closed the water and sewer waiting list on December 31, 1990. The County has not rescinded the closure edict, and the waiting list has never re-opened. Ordinance 14-90 (as amended) is codified as District Code Section 8.04.070 (Section 8.04.070), which reads, in relevant part:

> *Only commercial or affordable housing applications for water and*
> *sewer wait list positions will be accepted by the district. Pursuant to*
> *Section 2.5-5 of Ordinance No. 14-90, enacted to conform with the*
> *provisions of Section 26.01.070h(2) of San Luis Obispo County*
> *Ordinance No. 2477, effective four p.m. on December 31, 1990,*
> ***Residential applications for the Water and Sewer Waiting List are***
> ***no longer taken.***

7)      In 1998 the California Coastal Commission (Commission) conducted a periodic review of the LCP and threatened to impose a building moratorium, unless the build out of Cambria was limited.

8)      In 2000 the District Board of Directors (District Board) adopted Resolution 2-2000. Consistent with the Commission's desire to limit development in Cambria, the resolution restricted new residential water and sewer services (including will serve letters and connections) to those properties with residential water and sewer service wait list positions. Resolution 2-2000

-4-
SECOND AMENDED COMPLAINT

1   (as amended) is codified as District Code Section 8.04.050 (Section 8.04.050), which reads, in

2   relevant parts:

3       *Water and/or sewer services provided to new customers shall*
        *come only from one of the following sources and be subject to*
4       *any conditions or restrictions currently in effect, or which may*
        *be imposed by the board of directors in the future:*
5

6       *B.  Allocation from the district water and sewer waiting lists*
        *(commercial, **residential**, multifamily or affordable housing)*
7       *in accordance with district ordinances.*

8

9   9)      In 2001 the District Board declared a Water Code Section 350 water emergency, and

10  adopted a moratorium on issuing new will serve letters for water service. No other regulations

11  were adopted to avoid overcommitting the CCSD's limited water supply. The declared water

12  emergency and moratorium remain in force and effect.

13  10)     The Coastal Act (PRC § 30000-30900) regulates development by requiring a coastal

14  development permit to develop in the coastal zone (see Section 30600[a]). The Coastal Act a)

15  requires local governments to adopt an LCP (see Sections 30500(a) and 30108.6), b) requires

16  public works projects to be designed and limited consistent with the Coastal Act (see Section

17  30254), but c) does not provide authority to take private property for public use without payment

18  of just compensation (see Section 30010).

19  11)     In order to certify an LCP, the Commission must find that the subject LCP will achieve

20  the policies and objectives of the Coastal Act (see Section 30512). When the County's LCP was

21  certified in 1988, delegation of coastal development permit authority transferred to the County.

22  By certifying the LCP update in 2007, the Commission deemed the LCP adequate to achieve the

23  objectives of the Coastal Act. Thus, the LCP's planning area standards and CCSD's draft BRP

24  were found adequate to achieve the objectives of the Coastal Act (see Section 30108.6).

25  12)     The LCP includes the North Coast Area Plan (NCAP), the area plan for the

26  unincorporated communities of Cambria and San Simeon. The NCAP includes three relevant,

27  mandatory planning area standards (Standards). The Limitation on Development Standard (CW-

28  4) restricts the size and use of the proposed desalination plant. Specifically, "(t)he maximum

-5-
SECOND AMENDED COMPLAINT

1  service capacity of the project will not induce growth inconsistent with the protection of coastal

2  resources and public access and recreation opportunities." The plant must "avoid or fully

3  mitigate any adverse environmental impacts to coastal resources." Before a permit for the

4  desalination project can be obtained, CCSD must show that "reasonable progress is being made

5  to implement a build out reduction program." In sum, the LCP requires CCSD to limit the

6  number of new water connections and dwelling units, before it can obtain a permit to construct

7  the desalination plant.

8  13)    The LCP includes two Standards that limit access to the County's coastal development

9  permitting process. Under the Cambria Community Services District Review Standard (CW-8),

10  the County cannot take in or process a development application, unless it includes written

11  verification that CCSD plans to provide water and sewer service. CW-8 reads:

12         *Prior to application acceptance, land use and building permit*

13         *applications shall include a written verification of water and sewer*

14         *service from the Cambria Community Services District. A water*

15         *and sewer service condition compliance letter from the Cambria*
       *Community Service District shall be provided to the Department*
       *of Planning and Building prior to final building inspection.*

16  14)    Under the Cambria Fire Department Review Standard (CW-9), the County cannot take in

17  or process a development application, unless it includes a fire plan review. CW-9 reads:

18         *All new development shall comply with applicable state and local*

19         *Cambria fire codes. Prior to application acceptance, land use and*

20         *building permit applications shall include a fire plan review from*
       *the Cambria Fire Department.*

21

22  (RJN CW-4, CW-8 and CW-9)

23  15)    In 2008 the District Board adopted a Water Master Plan (WMP) update. The WMP

24  incorporates an Environmental Impact Report (EIR) that includes Public Services and Utilities

25  (PSU) mitigation measures. The PSU-3 mitigation measure requires CCSD to review

26  development applications, before they are submitted to the County. PSU-3 reads:

27         *Prior to submittal of land use and building permit applications to*

28         *San Luis Obispo County, the CCSD shall review the development*
       *applications to ensure police, schools, parks/recreation, and solid*

*waste facilities, **services**, and resources **are adequate to support the increased demands associated with new development**.*

Note: the term "services" includes water, sewer, and fire protection service.

(RJN PSU Mitigation Measures)

16)     CCSD's Buildout Reduction Program (BRP) is a crucial mitigation measure incorporated within the WMP-EIR. To comply with CW-4, the BRP was adopted to mitigate the growth inducing impacts of the proposed desalination plant by capping the total number of water connections and dwelling units. The BRP requires 3357 parcels to be left undeveloped because they will not be provided with water and sewer services. To maintain the dwelling unit cap, the BRP requires 879 properties to be acquired and retired. Most of the retired parcels will be owned by CCSD.

(RJN Executive Summary of the BRP)

## FACTUAL ALLEGATIONS

17)     Plaintiffs own undeveloped, residentially zoned parcels ("the properties") located within the coastal zone and inside CCSD's urban service line. The properties are relatively small (between .08 and .14 acres) and have between 50 and 150 feet of frontage along publically maintained roads. Water and sewer lines front in the street. Similar sized parcels are developed on all sides of the properties. Plaintiffs do not have water and sewer service wait list positions. CCSD has confirmed Plaintiffs have never had wait list positions.

18)     CCSD is the special district created and solely authorized to provide water, sewer, fire protection, and other services, to parcels within its urban service line. CCSD is the agency responsible for implementing the WMP-EIR's mitigation measures. CCSD is a responsible agency for development in Cambria (see Gov't Code Section 65933). As the local land use authority, the County is the lead agency for development in Cambria (see Gov't Code Section 65929).

19)     CCSD has confirmed Plaintiffs cannot obtain water and sewer service will serve letters (or connections) because they do not have wait list positions. However, in the event CCSD miraculously provides written verification that it will provide water, sewer, and fire protection

-7-
SECOND AMENDED COMPLAINT

1   service to the properties, Plaintiffs allege they can obtain coastal development permits. After
2   obtaining coastal development permits, Plaintiffs allege they would be authorized to apply for
3   and can obtain building permits. Once coastal development and building permits are obtained,
4   Plaintiffs allege they would be authorized to apply for water and sewer connections from CCSD.
5   Assuming the Water Code Section 350 emergency has not been lifted, the applications for
6   connections could be denied under Water Code Section 356.
7   20)    Plaintiffs allege they must obtain a coastal development permit (CDP) before they are
8   authorized to apply for a building permit to construct a home. A CDP is a discretionary permit
9   for development in the coastal zone. The coastal development permitting process determines
10  whether a property can be used as subdivided and zoned; thus, a CDP is a land use permit. Under
11  County Code Section 23.04.430, a CDP cannot be granted without an approved source of water
12  and wastewater treatment method. Pursuant to CW-8, a land use permit cannot be accepted for
13  processing, unless the project plans for a) the use of CCSD supplied water, and b) wastewater to
14  be treated by CCSD's sewer system.
15  21)    Plaintiffs allege the coastal development permitting process commences upon delivery of
16  applications for development projects to CCSD; see CW-8 and PSU-3. The second step requires
17  the completion of the PSU-3 review because "the CCSD shall review the development
18  applications" before applications for development permits are submitted to the County. The
19  PSU-3 review should determine which services (if any) CCSD plans to provide.
20  22)    Plaintiffs allege they requested application forms to a) obtain the PSU-3 review, b) join
21  the water and sewer service waiting lists, and c) obtain water, sewer, fire protection, and other
22  services. CCSD did not provide any application forms or criteria to file and complete their
23  applications.
24  23)    The Permit Streamlining Act (Gov't Code § 65920-65964) is relevant to this dispute.
25  Under Section 65931, the term "project" means *any activity* involving the issuance of a permit,
26  or other entitlement for use by a public agency. Plaintiffs allege the delivered applications were
27  for projects because a) they commenced the coastal development permitting process, and b) they
28  sought verification whether Plaintiffs can use CCSD's water and sewer systems. Under Section

-8-
SECOND AMENDED COMPLAINT

65928, the term "development project" means "*any project* undertaken for the purpose of development." Plaintiffs allege their applications were for development projects because a) they commenced the land use phase of the permitting process to construct homes in the coastal zone, and b) they sought the verification of services required to file and obtain coastal development and building permits.

24)     The Permit Streamlining Act (PSA) burdens local agencies with express duties. Under Section 65940 (a), "*each local agency shall* compile one or more lists that shall specify in detail the information that will be required from *any applicant for a development project*." Under Section 65941 (a), "(t)he information compiled pursuant to Section 65940 *shall also indicate the criteria which the agency will apply in order to determine the completeness of any application* submitted to it for a development project." Under Section 65943 (a) "(n)ot later than 30 calendar days after any public agency *has received an application* for a development project, *the agency shall determine in writing whether the application is complete* and shall immediately transmit the determination to the applicant for the development project."

25)     The PSA provides maximum timeframes to approve or disapprove applications for development projects. Plaintiffs allege Section 65950 is not on point because the County is the lead agency for development, and applications from Stanton and Kilgore were returned without being accepted for processing by the County. Consequently, under Sections 65950-65952, none of the conditions that set the maximum timeframe for approval or disapproval of the development projects can be met, until the lead agency accepts a development application. Nonetheless, Section 65953 can be read to mean that CCSD should have quickly disapproved the water and sewer applications because Plaintiffs do not have wait list positions. Properties with wait list positions are posted on CCSD's website; hence, the basis for denying the applications could have been determined within minutes of receiving the applications.

26)     After CCSD refused to provide the requested application materials and criteria, Plaintiffs delivered applications to CCSD on July 22, 2015. For each property, the materials included the County's land use permit application, site plans, assessor's map, house renderings, zoning, and other property specific information. The materials delivered included applications to a) obtain

-9-
SECOND AMENDED COMPLAINT

1  the PSU-3 review, b) join the water and sewer waiting lists, and c) obtain water, sewer, fire

2  protection, and other services, from CCSD. Under Government Code Section 65943 (a),

3  Plaintiffs allege the applications were complete (by law) on August 21, 2015. In the end, if

4  CCSD required the use of specific applications forms, such forms should have been provided no

5  later than August 21, 2015. Consequently, a claim that the "fabricated" applications were not

6  complete is meritless because the applications were (by law) complete on August 21, 2015.

7  27)    Plaintiffs delivered self-generated application forms (similar to the form previously used

8  by CCSD to apply for the waiting list) because CCSD failed to provide application forms. CCSD

9  did not accept or process these applications. Instead, District Counsel threatened Plaintiffs'

10  attorney with sanctions should litigation be filed.

11  (RJN Noonan's application materials).

12  28)    Plaintiffs allege the County returned (unprocessed) land use permit applications delivered

13  by Kilgore and Stanton because their applications did not include written verification that CCSD

14  planned to provide water, sewer, and fire protection service. Thus, Plaintiffs verified the real

15  world impact of CW-8 and CW-9. Plaintiffs allege the Kilgore and Stanton applications would

16  have been accepted for processing by the County (and could have been approved), if the

17  applications included written verification of water, sewer, and fire protection service from

18  CCSD.

19  29)    Plaintiffs allege the declared water emergency provides no authority to frustrate

20  Plaintiffs' due process and protected property rights. Upon adoption of the Water Section 350

21  emergency, Water Code Section 353 obligated CCSD to adopt regulations that limit the *delivery*

22  of water to conserve its water supply. Plaintiffs allege the only regulation the District Board

23  adopted to limit delivery of water is the moratorium on issuing new will serve letters for water

24  service. Plaintiffs allege no additional regulations were required to limit delivery of water to the

25  properties because District Code Section 8.04.050 was sufficient to prevent Plaintiffs from

26  obtaining water and sewer services from CCSD. Significantly, CCSD has not alleged it

27  employed a regulation (adopted under water law authority) to limit the processing of the

28  applications.

-10-
SECOND AMENDED COMPLAINT

30)    Plaintiffs allege the moratorium on issuing new water will serve letters only impacts wait list holders. Landowners with wait list positions are the only property owners entitled to obtain water services (including will serve letters and connections) from CCSD; thus, they must wait for the emergency to be lifted to obtain unconditional water will serve letters. Plaintiffs allege the moratorium has no impact on them because they do not have water commitments; hence, they are not entitled to obtain water will serve letters or connections from CCSD. Assuming the declared water emergency is lifted after the desalination plant is completed, Plaintiffs will still not be able to join the waiting list.

31)    Water Code Section 356 provides the authority to *deny applications for new water connections*, but provides no authority to refuse to accept and process applications for water and sewer service. Plaintiffs have alleged the regulatory scheme prevents them from applying for water connections until sometime after they obtain coastal development *and* building permits. Under CW-8, Plaintiffs only require written verification of water and sewer service to file development applications with the County; thus, active connections or connection permits are not required to file or obtain coastal development or building permits from the County.

32)    Plaintiffs allege there is no authority to restrict the processing of their applications. In *Beck Development Co., Inc. v. Southern Palisades Bowl Transportation Co.* (1996) 44 Cal. App 4th 1160, the city's refusal to accept a development application during a moratorium was invalid and placed *Beck's* development aspirations "in a temporally indefinite limbo without an opportunity for a hearing, a factual showing, a formal decision, review, or any of the other of the procedural safeguards which are its due." *Id* at 1203.  "(N)othing in the Government Code permits a local agency to defer or delay its procedural obligations with respect to land use regulations." *Ibid*. Plaintiffs allege Sections 8.04.050 and 8.04.070 were not adopted with temporary water law authority; thus, the PSA and *Beck* are on point.

33)    In the end, CCSD has not alleged a regulation (adopted with temporary water law authority) was employed to limit the processing of applications that cannot be approved; clearly, such applications pose no risk to the CCSD water supply. Therefore, it would be erroneous to

1    conclude water law was (or could be) employed to limit the processing of the applications for

2    water, sewer, fire protection, and other services.

**FIRST CAUSE OF ACTION**
**For Declaratory Relief concerning District Code Section 8.04.050**
**(Code of Civil Procedure Section 1060)**

3

4

5    34)    Plaintiffs incorporate the preceding paragraphs.

6    35)    Plaintiffs seek declaratory relief to determine whether Section 8.04.050 prevents them

7    from obtaining water and sewer service from the CCSD.

8    36)    Plaintiffs have alleged they cannot obtain water and sewer services from CCSD because

9    Section 8.04.050 requires all new water and sewer customers to come from one of CCSD's

10   waiting lists; hence, new residential water and sewer services (including will serve letters and

11   connections) can only be provided to landowners with residential wait list positions. To fulfill its

12   role in the scheme to limit development without payment of just compensation, CCSD will not

13   apply Section 8.04.050 to the applications and development projects. Nonetheless, CCSD

14   concedes Plaintiffs cannot obtain water and sewer services because they do not have wait list

15   positions.

16   37)    Plaintiffs allege this is an actual controversy because a) the scheme to limit development

17   implicates protected property rights, and b) CCSD's refusal to provide any process that yields a

18   formal decision concerning its service plans implicates due process rights. The disturbing and

19   unlawful lack of process leaves Plaintiffs' development rights (if any) "in a temporally indefinite

20   limbo without an opportunity for a hearing, a factual showing, a formal decision, review, or any

21   of the other of the procedural safeguards which are its due." *Beck Development Co., Inc. v.*

22   *Southern Palisades Bowl Transportation Co.* (1996) 44 Cal. App 4th 1160, 1203. When protected

23   interests are implicated, the right to some kind of hearing is paramount. *Board of Regents v. Roth*

24   (1972) 408 U.S. 564, 570. The requested relief will a) safeguard protected rights, b) provide

25   Plaintiffs an opportunity to be heard, and c) result in a formal decision.

26   38)    Plaintiffs' allege they exhausted administrative remedies to obtain a formal decision that

27   applies Section 8.04.050 to their applications, projects, and properties. Plaintiffs have alleged

28   that upon receipt of their request for information, Government Code Sections 65940 (a) and

65941 (a) obligated CCSD to provide a list of the information required to file and complete applications for their development projects. Plaintiffs have alleged CCSD refused to provide the requested list of information, and did not provide applications materials for its service functions.

39)    Plaintiffs have alleged that because CCSD refused to provide application forms, they delivered self-generated applications to determine, among other things, whether CCSD plans to provide water and sewer services to the properties. Plaintiffs have alleged Government Code Section 65943 (a) obligated CCSD to issue a written notice whether the applications were complete by August 21, 2015. CCSD claims Plaintiffs' "fabricated" applications were not complete. Therefore, because CCSD received Plaintiffs applications, Section 65943 (a) burdened CCSD with the obligation to provide application forms that would enable Plaintiffs to complete their applications. Nonetheless, by failing to provide a written notice of incompleteness, Plaintiffs' have alleged that the applications were (by law) complete on August 21, 2015. Finally, because CCSD did not comply with the PSA, Plaintiffs were prevented from obtaining a formal decision that could appealed to the District Board.

40)    Plaintiffs allege they have a beneficial interest in obtaining a declaration whether Section 8.04.050 prevents them from obtaining water and sewer services from CCSD. In *Harris v. County of Riverside* (1990) 904 F.2d 497, 503, (citing *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121) the Ninth Circuit confirmed that "(t)he right of an owner to devote his land to any legitimate use is properly within the protection of the Constitution." Plaintiffs allege their protected property interests include the right to be informed whether a regulation (or the regulatory scheme) prevents the filing of development applications. Therefore, Plaintiffs allege they have a beneficial right to determine whether Section 8.04.050 prevents them from obtaining water and sewer services from CCSD.

41)    Finally, Plaintiffs allege they are not potential customers of CCSD because Section 8.04.050 states that *"new customers shall come only from… the district water and sewer waiting lists."* Furthermore, because CCSD concedes Plaintiffs cannot obtain water and sewer services because they do not have wait list positions, a declaration that Section 8.04.050 prevents Plaintiffs from obtaining water and sewer services from CCSD is appropriate.

-13-
SECOND AMENDED COMPLAINT

42)     For the reasons stated above, judicial resolution of this actual controversy is necessary and proper at this time.

**SECOND CAUSE OF ACTION**
**For Damages Under 42 U.S. Code § 1983**
**(Against CCSD and Does 1-10)**

43)     Plaintiffs incorporate the preceding paragraphs.

44)     42 U.S. Code § 1983 (Section 1983) provides authority to state a claim for damages from regulations and policies that deprive any person of rights and privileges secured by the Federal Constitution. Section 1983 reads:

> *Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

45)     The Supremacy Clause of Article VI of the Federal Constitution requires states to provide hospitable forums for federal claims; thus, state courts have jurisdiction for Section 1983 claims. (See *Felder v. Casey,* 487 U.S. 131, that held state law is pre-empted pursuant to the Supremacy Clause when a Section 1983 action is brought in state court). Local governments are persons under Section 1983. (See *Monell v. New York City Dept. of Social Services* (1978) 436 U. S. 658, which held local government can be sued under Section 1983). CCSD may not assert the good faith of its officers as a defense to liability under Section 1983. (See *Owen v. City of Independence* (1980), 445 U.S. 622, that held a municipality may not assert the good faith of its officers as a defense to liability under Section 1983).

46)     To state a Section 1983 claim for deprivation of rights protected by the Federal Constitution, Plaintiffs must show: (1) that they possessed a constitutionally protected right or interest; and (2) that they were deprived of that right or interest without due process of law. First, Plaintiffs allege the parcels were lawfully subdivided, and are zoned for residential development.

When they acquired title, Plaintiffs acquired all rights that ran with the land. Thus, because they own lawfully subdivided and residentially zone parcels, Plaintiffs have a legitimate claim of entitlement to construct homes on the properties. *Board of Regents v. Roth* (1972) 408 U.S. 564, 577. Further, Plaintiffs allege the right to develop residential property is a protected interest. *Harris v. County of Riverside* (1990) 904 F.2d 497, 503.

47)     Prior to the adoption of the overly restrictive regulatory scheme, Plaintiffs allege there was no cap on the allowable number of residential dwelling units. Just as their neighbors were able to do, Plaintiffs could have walked into CCSD offices and walked out with water and sewer service will serve letters. After obtaining development permits from the County, Plaintiffs could have obtained water and sewer connections, and constructed homes on the properties. In sum, Plaintiffs allege the properties could be developed before the regulatory scheme deprived them of their development rights. Therefore, Plaintiffs' allege their development rights and property interests could not be deprived without due process of law.

48)     Second, Plaintiffs allege CCSD acted under color of state law (i.e., the Coastal Act, CEQA, and the LCP) when it adopted regulations, mitigation measures, and policies or customs to limit development by establishing caps on water connections and dwelling units. The Due Process Clause of the Fifth and Fourteenth Amendment of the Federal Constitution requires proper notice prior to adoption of regulations that deprive protected property rights or interests. Assuming the regulatory scheme intended to permanently cap the number of allowable dwelling units, and bars landowners without wait list positions from developing, proper notice should have been given to the affected landowners. Plaintiffs allege adequate notice was not provided to them before the LCP, WMP, WMP-EIR, and BRP were adopted. Consequently, Plaintiffs allege their development rights were deprived without due process of law.

49)     Compensatory damages for the deprivation of protected rights or interests can be awarded under Section 1983. Plaintiffs allege actual damages can be determined by the cost to acquire water and sewer service rights from private parties. District Code fosters a secondary market for the private sale of water and sewer service rights; see District Code Section 8.04.100. Real estate agents advertise the sale of active water meters on the local multiple listing service (MLS). These MLS listings include the right to connect to CCSD's sewer system, but do *not* include the sale of land. These water meters are a) sourced from dwellings that have been demolished, b) can be immediately used (i.e., not delayed by the water emergency) to permit development because they

-15-
SECOND AMENDED COMPLAINT

do not place a new demand on CCSD's water supply, and c) currently sell for about $250,000. Therefore, Plaintiffs can be awarded compensatory damages sufficient to purchase active water and sewer connections from private parties; such an award would make them whole, and would not frustrate or exceed the dwelling unit cap.

50)      As it relates to statutes of limitations, Section 1983 claims are treated as tort claims for the recovery of damages for personal injuries. (see *Wilson v. Garcia* (1985) 471 U.S. 26, which held the characterization of Section 1983 claims as a personal injury action for statute of limitations purposes). Plaintiffs have alleged Section 1983 controls the characterization of the action; thus, Section 1983 claims do not require filing of claims pursuant to the CA Government Claims Act. Nonetheless, Plaintiffs allege they filed a claim for damages with CCSD. For Section 1983 claims, Plaintiffs allege state law controls the tolling of claims under statutes of limitation. *Id* at 269. Pursuant to CCP 335.1, Plaintiffs allege their Section 1983 claims are timely because they are filed within two years of the accrual of the injury.

51)      Plaintiffs allege their Section 1983 claims did not accrue until Plaintiffs discovered that CCSD would not provide a process or decision that informed them whether CCSD planned to provide water and sewer services to the development projects. Specifically, Plaintiffs allege their Section 1983 claims accrued when a notice of incompleteness was due (but not issued) on August 21, 2015. At that time, Plaintiffs had reason to discover CCSD would not provide a process or decision that applied its regulations to the applications and projects.

52)      Plaintiffs allege their Section 1983 claims did not accrue when Ordinance 2477 was adopted in 1990. Ordinance 2477 was not adopted to permanently limit development to those properties with existing CCSD wait list positions. Concurrent with the adoption of Ordinance 2477, the County opened an overflow list for those landowners seeking a lineal or placeholder position for water and sewer services from CCSD, who could no longer join CCSD's waiting list. By opening an overflow list that remained open until 2007, the County clearly demonstrated that it did not intend to limit development to members of CCSD's waiting list. Nonetheless, if Ordinance 2477 was intended to permanently deprive landowners of their development rights, Plaintiffs allege adequate notice was not provided to them.

53)      Plaintiffs allege their Section 1983 claims did not accrue upon adoption of Ordinance 14-90, or when it was codified as Section 8.04.070. Ordinance 14-90 was not adopted to permanently limit development to those properties with existing CCSD wait list positions.

-16-
SECOND AMENDED COMPLAINT

Plaintiffs allege they hold a letter from a landowner (with a County overflow list position) wherein CCSD confirmed it would serve properties on the County's overflow list, once the CCSD waiting list was exhausted (i.e., after all positions were provided active connections). Noonan has position #275 on the County's overflow list. Further, District Board Minutes demonstrate that the District Board expected the CCSD waiting list to re-open sometime after Ordinance 14-90 was adopted. Nonetheless, if Ordinance 14-90 was intended to permanently deprive landowners of their development rights, Plaintiffs allege adequate notice was not provided to them.

54)     Plaintiffs allege their Section 1983 claims did not accrue upon adoption of Resolution 2-2000, or when it was codified as Section 8.04.050. Plaintiffs allege Resolution 2-2000 was not intended to permanently remove water or sewer service rights, or limit future development to those properties with CCSD wait list positions. While the Commission clearly wanted growth in Cambria to be limited, Plaintiffs allege the Commission did not delegate land use authority to CCSD for that purpose at that time. Therefore, the authority to adopt Resolution 2-2000 and Section 8.04.050 was limited to the express powers granted to special districts in CA Code; therein, special districts have no express land use or police power. Nonetheless, if Resolution 2-2000 and Section 8.04.050 were intended to permanently deprive landowners of their development rights, Plaintiffs allege adequate notice was not provided to them.

55)     Plaintiffs allege their Section 1983 claims did not accrue when the LCP was adopted or certified. It is settled law that general plans do not take development rights. Also, the LCP does not express the intention to limit new development to those properties with CCSD wait list positions. Nonetheless, if the LCP was intended to permanently deprive landowners of their development rights, Plaintiffs allege adequate notice was not provided to them.

56)     Plaintiffs allege their Section 1983 claims did not accrue upon the adoption of the WMP, WMP-EIR, or BRP. The WMP is a future plan for water supply and distribution within CCSD's service area; such plans do not take development rights. Significantly, the BRP's water connection cap or ceiling includes a) existing users, b) the remaining CCSD wait list, and c) 65 unallocated meters. It is unclear how the unallocated meters will be utilized, but one possibility (referenced in the BRP) is to auction them off to raise money to acquire and retire development rights. Thus, because the 65 unallocated meters evidently remain unallocated, it is reasonable to conclude that CCSD has discretion to allocate those meters to Plaintiffs. Assuming, arguendo,

-17-
SECOND AMENDED COMPLAINT

that Plaintiffs should have known their water and sewer service applications would be denied, Plaintiffs allege they had a reasonable expectation that the District Board would hear an appeal, and would allocate four of the unallocated meters to avoid potential liability. Therefore, when CCSD did not provide a process or decision that could be appealed to the District Board, Plaintiffs had reason to discover that they could not obtain any of the unallocated meters.

57)     Plaintiffs allege filing a Section 1983 claim before they delivered applications would have been premature because it was unknown a) that CCSD would frustrate the PSA; b) that no process would be available to discover CCSD's water and sewer service plans; and b) that no decision would be made that could be appealed to the District Board. In sum, because the MWP provides for 65 unallocated meters within the dwelling unit cap, it was reasonable for Plaintiffs to have assumed a) that they could participate in a process that would yield an appealable decision, b) that the District Board had discretion to issue unallocated meters to Plaintiffs, and c) that the District Board would provide unallocated meters to avoid potential liability for the deprivation of development rights. In the end, Plaintiffs' Section 1983 claims accrued when they discovered that no process was available to obtain any of the unallocated meters.

58)     Section 1983 provides the basis to grant an immediate remedy to cure the continuing impairment of procedural due process and equal protection rights. Plaintiffs allege CCSD's General Manager (acting in his official capacity) employs a CCSD policy or custom of not providing a process that yields a formal decision, which deprives Plaintiffs of their procedural due process and equal protection rights. Therefore, Plaintiffs seek injunctive and prospective relief from the policy or custom that prevents non-wait list holders from commencing any process that applies CCSD's regulations to service applications and development projects. Absent such injunctive and prospective relief, Plaintiffs allege CCSD and its General Manager (Jerry Gruber) will continue to frustrate protected rights. Finally, such relief would also benefit non-parties, who have due process and equal protection rights to a process that informs them whether they can obtain CCSD services, including unallocated meters.

59)     Reasonable attorney's fees can be awarded for Section 1983 claims. The Civil Rights Attorney's Fees Awards Act of 1976 entitles the prevailing party in Section 1983 actions to be awarded attorney's fees (see 42 U.S.C.A. § 1988[b]), and expert fees (see 42 U.S.C.A. § 1988 [c]). However, a prevailing defendant may only be awarded attorney's fees in a frivolous or bad faith action.

## Verification

COMPLAINT FOR DECLARATORY RELIEF and DAMAGES, is true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 15, 2016, at _Morro Bay, CA_, California.

Plaintiff Kenneth A. Noonan, Trustee of The Kenneth and Colleen Noonan 1999 Trust

Plaintiff Colleen B. Noonan, Trustee of The Kenneth and Colleen Noonan 1999 Trust

March 25, 2016

-20-
SECOND AMENDED COMPLAINT

1
2
3                                    <u>Verification</u>
4    I am a party to this action, and I have read the foregoing and the SECOND AMENDED
     COMPLAINT FOR DECLARATORY RELIEF and DAMAGES is true based on my own
5    knowledge, except as to those matters stated on information and belief, and as to those matters I
6    believe them to be true.

7    I declare under penalty of perjury under the laws of the State of California that the foregoing is
8    true and correct.

9    Executed on March 25, 2016, at Redondo Beach, California.

10
11
12
     Plaintiff Patricia L. Leko, Trustee of The Helen M. Kilgore Family Trust
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                        -21-
                             SECOND AMENDED COMPLAINT

1
2
3

# Verification

4
5
6

I am a party to this action, and I have read the foregoing and the SECOND AMENDED
COMPLAINT FOR DECLARATORY RELIEF and DAMAGES is true based on my own
knowledge, except as to those matters stated on information and belief, and as to those matters I
believe them to be true.

7
8

I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.

9

Executed on March 25, 2016, at ⎽⎽VIRGINIA BEACH⎽⎽⎽⎽⎽⎽, Virginia.

10
11
12

13

Plaintiff Charles Stanton

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-22-
SECOND AMENDED COMPLAINT

1
2
3

## Verification

4
5
6

I am a party to this action, and I have read the foregoing and the SECOND AMENDED
COMPLAINT FOR DECLARATORY RELIEF and DAMAGES is true based on my own
knowledge, except as to those matters stated on information and belief, and as to those matters I
believe them to be true.

7
8

I declare under penalty of perjury under the laws of the State of California that the foregoing is
true and correct.

9

Executed on March 25th, 2016, at ___Los Angeles___, California.

10
11
12
13

Plaintiff Wilma Sutcliffe

14
15
16
17

attorney-in-fact for Karla Selwyn

Plaintiff Karla Selwyn

18
19
20
21
22
23
24
25
26
27
28

-23-
SECOND AMENDED COMPLAINT

**PROOF OF SERVICE**

STATE OF CALIFORNIA,  ]ss.
COUNTY OF SAN DIEGO  ]

   I am employed in the county of San Diego, State of California.  I am over the age of 18 and not a party to the within entitled action; my business address is 2173 Salk Ave., Ste. 250, Carlsbad, CA 92008.

On March 30, 2016, I caused to be served the following captioned document(s) **SECOND AMENDED COMPLAINT** to be served on the foregoing parties as follows:

> Michael M. McMahon
> Carmel & Naccasha, LLP
> District Counsel to CCSD
> 1908 Spring Street
> Paso Robles CA 93446

[ ]  **BY MAIL** By placing a "true copy" of the foregoing document(s) in a separate envelope which was then sealed and addressed to each addressee, with postage thereon fully prepaid. I deposited each envelope in the United States Postal Service within the county of San Diego, state of California on this same date.

[X]  **BY EXPRESS MAIL / OVERNIGHT DELIVERY** By placing a "true copy" of the foregoing document(s) in a separate envelope designated by the express service carrier which was then sealed and addressed to each addressee, with delivery fees prepaid and given to an authorized courier or driver of the express service carrier on this same date in Orange County, California.

[ ]  **PERSONAL SERVICE** By personally delivering the foregoing documents to the above identified party.

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.  Executed on March 30, 2016.


JACK B. FRIEDELL
Type or Print Name                                          Signature

-1-
PROOF OF SERVICE

# EXHIBIT G

| SUPERIOR COURT OF SAN LUIS OBISPO COUNTY<br>**San Luis Obispo Branch,** 1035 Palm Street, Rm, 385, San Luis Obispo, CA  93408<br>**Paso Robles Branch,** 901 Park Street, Paso Robles, CA  93446 | CASE NUMBER<br><br>15CVP-0282 |
|---|---|
| Kenneth Noonan vs. Cambria Community Services District | Miscellaneous<br>Minute Order |

On the matter heretofore ordered to stand submitted, the attached Tentative Ruling is adopted as the Court's final ruling on the matter.

Dated:  6/9/2016

Honorable Ginger E. Judge Garrett

FILED

JUN - 9 2016

SAN LUIS OBISPO SUPERIOR COURT
BY _____
Julie Vierra, Deputy Clerk

*Noonan v. Cambria Community Services District*, 15CVP-0282

RE:    **Demurrer and Motion to Strike Second Amended Complaint**

Date:   **June 7, 2016**

Plaintiffs are the owners of undeveloped, residentially zoned parcels of property located within the Cambria Community Services District (CCSD) urban service line. Plaintiffs allege that CCSD has refused to provide, accept, or process Plaintiffs' applications submitted for the purpose of assessing the availability of water, sewer, and fire services in connection with their proposed application for a coastal development permit. Plaintiffs further allege that they do not have positions on the waiting list and, as a result, cannot obtain water and sewer "will serve" letters. Finally, they assert that CCSD does not provide any process that yields a formal decision on the availability of a will serve letter.

The First Amended Complaint sought traditional mandate relief to compel CCSD to comply with its alleged mandatory duties to process applications submitted for the purpose of assessing the availability of water, sewer, and fire services in connection with an application for a coastal development permit (CDP). The demurrer to the FAC was sustained with leave to amend.

Plaintiffs have now filed a Second Amended Complaint (SAC) alleging two causes of action. The first cause of action seeks declaratory relief with respect to CCSD Code §8.04.050. The second cause of action alleges damage claims based upon 42 USC §1983. CCSD has demurred to both causes of action and has filed a motion to strike the 42 USC §1983 causes of action because the Court did not authorize amendment of the pleading to include those claims.

The SAC describes some of the pertinent history related to the availability of water in the Cambria area. The history was presented in the previous ruling on the demurrer to the first amended complaint and is provided here again.

In the mid-1980s demand for sewer service exceeded the annual connection restraints and CCSD formed a water and sewer waiting list.

In 1990, the County adopted Growth Management Ordinance No. 2477 that ordered the District to freeze its water and sewer service waiting list. The District complied with the adoption of Ordinance 14-90, codified as District Code §8.04.070. It states, in pertinent part, that residential applications for Water and Sewer Waiting Lists are no longer taken.

In 1998, the Coastal Commission conducted a periodic review of the LCP and threatened to impose a building moratorium unless there were limitations on Cambria's build out.

In 2000, CCSD adopted Resolution 2-2000 as codified in District Code §8.04.050. It states that water and sewer services provided to new customers shall come from only one of three enumerated sources and will be subject to conditions or restrictions currently in effect. The

1

pertinent source applicable here is the allocation from the district water and sewer waiting lists (commercial, residential, multifamily or affordable housing) in accordance with District ordinances.

In 2001, the District declared a Water Code §350 emergency and adopted a moratorium on issuing new intent to serve letters for water service. The "Water Code's more apocalyptical section 350 (Wat.Code, § 350)… grants water providers vast discretion in meeting water emergencies." *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2004) 117 Cal.App.4th 13, 19.[1]

The declaration of the water emergency and the adopted moratorium has not been lifted.

## Demurrer

Declaratory Relief:

Plaintiffs seek a declaration that District Code §8.04.050 prevents Plaintiffs from obtaining water and sewer services (including will serve letters and connections) from CCSD. (SAC ¶35 and Prayer for Relief at ¶1)  The SAC further alleges that this is an actual controversy because (a) the scheme to limit development implicates protected property rights, and (b) CCSD's refusal to provide any process that yields a formal decision concerning its service plans implicates due process rights.  (SAC ¶37)

District Code §8.04.050 states as follows:

> **8.04.050 - New commitments.**
> Water and/or sewer services provided to new customers shall come only from one of the following sources and be subject to any conditions or restrictions currently in effect, or which may be imposed by the board of directors in the future:
>
> A. Allocation from the non-active service commitment section of the table of existing commitments.
> B. Allocation from the district water and sewer waiting lists (commercial, residential, multifamily or affordable housing) in accordance with district ordinances.
> C. New allocations for parks/landscape/irrigation meters may be authorized only by action of the board on a case-by-case basis. Such allocations will thereafter be listed separately on Exhibit B of the ordinance codified in this chapter as parks/landscape/irrigation commitments, shall have no entitlement to EDUs

---

[1]   When a water distributor's governing body declares an emergency shortage, it must adopt regulations that will, in its "sound discretion," conserve the water supply for the greatest public benefit. (Water Code §353.) The regulations adopted pursuant to Water Code section 350 "shall prevail over the provisions of such laws relating to water rights for the duration of the period of emergency," thereby preempting the preferential rights calculations made under section 135. *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2004) 117 Cal.App.4th 13, 19-20.

2

> for residential or commercial use, do not include rights to sewer service and
> shall be utilized only for parks/landscape/irrigation uses.
> *(Ord. 8-2003 § 2.5-5)*

Here, the code section requires water and/or sewer services provided to new customers to come from one of three possible sources, namely from one of CCSD's waiting lists. It further states that any provision of services to new customers is subject to conditions or restrictions currently in effect or which may be imposed in the future.

Declaratory relief is available "in cases of actual controversy relating to the legal rights and duties of the respective parties...." (Code Civ.Proc., §1060.) For appellants to state a cause of action for declaratory relief, there must arguably be a right (on their part) or a duty (on the Department's part). *Gilbert v. State of California* (1990) 218 Cal.App.3d 234, 248.

> A difference of opinion as to the interpretation of a statute as between a citizen and a governmental agency does not give rise to a justiciable controversy and provides no compelling reason for a court to attempt to direct the manner by which the agency shall administer the law. *Zetterberg v. State Dept. of Public Health* (1974) 43 Cal.App.3d 657, 663-64. [Internal Citation omitted.]

Here, the SAC alleges that Plaintiffs are owners of undeveloped, residentially zoned parcels within the urban service line of the CCSD. (SAC ¶1) It further alleges that Plaintiffs do not have wait list positions and the District has confirmed they never had wait list positions. (SAC ¶17) Plaintiffs cannot obtain water and sewer service "will serve" letters because they do not have wait list positions. (SAC ¶19) Plaintiffs' efforts to develop their parcels cannot be processed without an approved source of water and wastewater treatment method. (SAC ¶20) There are no allegations describing when Plaintiffs acquired their property.

In their opposition brief, Plaintiffs assert that they seek a determination of whether District Code §8.04.050 prevents CCSD from providing water and sewer services and that the claim includes (1) an interpretation of the meaning and scope of the code section, (2) whether it requires defendant to provide application forms, accept applications, (3) complete the PSU-3 review, (4) issue "will not' serve letters, and (4) to otherwise explain the meaning of the section. (Plaintiff's Opposition to Demurrer at p. 4; lines 18-26)

In contrast, the demurrer contends that District Code §8.04.050 only reflects sources to be utilized if and when services are provided to a new customer. In addition, the declared Water Code §350 Emergency and the related moratorium on issuance of new "will serve" letters override any law establishing the rights of individual consumers to receive a specific or proportionate amount of the water supply. See Water Code §357.

It appears that the cause of action intends to incorporate determinations similar to those referenced in the prior ruling on demurrer:

3

The threshold question here appears to be the propriety of the District's refusal to accept or process requests for "will serve" letters for water and sewer in light of the circumstances surrounding the regulations and water conditions in the District. This includes the related question of whether the use of a template or "fabricated" application is sufficient to trigger the District's mandatory duty to process the request, should such a mandatory duty exist. Given the circumstances described by the complaint, the relevant District Code sections and the water emergency declaration with its moratorium on issuing new intent to serve letters, the complaint does not allege a clear and present ministerial duty on the part of respondent and a clear and present beneficial right to the performance of that duty in the petitioner. [Ruling on Demurrer to First Amended Complaint.]

Whether Plaintiffs have any right or the District has any corresponding duty regarding the processing of an application under the circumstances of a declared water emergency, or the other issues presented in the cause of action, is not adequately demonstrated by the allegations in the complaint. More importantly, the issues for determination enumerated by Plaintiffs do not appear to be encompassed by an interpretation of District Code §8.04.050 as that code section relates to the sources available to the District when it provides services to a new customer. The demurrer to the First Cause of Action for declaratory relief as to District Code §8.04.050 is sustained without leave to amend.

<u>42 USC §1983:</u>

Plaintiffs' Second Amended Complaint states that Plaintiffs must show a constitutionally protected right or interest to successfully state a claim under 42 USC §1983. It further alleges that Plaintiffs have a protected right to develop their residential property and that the District acted under state law when it enacted regulations to limit development by establishing caps on water connections and dwelling units.[2]

Ultimately, Plaintiffs contend that their efforts to develop their respective properties are thwarted because of an inability to obtain "will serve" letters for water and sewer services. Plaintiffs assert that they seek compensatory damages for the deprivation of their development rights without due process of law.

When asserting a deprivation of procedural due process in support of a cause of action pursuant to 42 USC §1983, a federally protected property interest on which to base a procedural due process claim is required. *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1183, *as modified on denial of reh'g (Sept. 11, 1996)*. Similarly, a party asserting a substantive due process violation must first establish a valid property interest within the meaning of the Constitution, and then must demonstrate that the government's action was arbitrary or irrational." (*Id.* at page 1184.)

---

[2]     The Court notes that Plaintiffs do not allege the time that the properties were acquired, although they do allege that they were never on the wait list for services.

4

In *Gilbert v. State of California* (1990) 218 Cal.App.3d 234, a county public utility district had imposed a moratorium on new water service connections after finding that drought conditions prevented adequate water supplies. The District applied to the State Department of Health Services for a permit to operate its existing water system, and the department's engineering branch recommended granting the permit subject to the condition that the District continue the moratorium. DHS followed this recommendation in issuing the permit. Landowners of unimproved property subject to the moratorium brought an action seeking to compel the DHS to remove the continued moratorium and to develop additional water sources, seeking declaratory relief on the existence of a duty to supply water, and seeking damages for inverse condemnation. The trial court sustained the department's demurrer to all causes of action and entered a judgment of dismissal. *Gilbert v. State of California* (1990) 218 Cal.App.3d 234.

Relevant to the inverse condemnation claim, the Court concluded that "[p]rotected property interests are created and defined by state law. (*Board of Regents v. Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 561, 92 S.Ct. 2701].) California law does not recognize potential water use as a compensable property right. *Gilbert v. State of California* (1990) 218 Cal.App.3d 234, 250.

> In *Hollister*, the reviewing court faced a situation substantially similar to the present case. There, the landowner sought damages for inverse condemnation, complaining that because the Goleta County Water District would not approve any new water service connections, the landowner's property was rendered unsuitable for development or any other purpose. On appeal the court held: "A potential water user does not possess 'an absolute right to be treated in the same manner as existing water consumers within [a] water district ...,'" concluding that damage caused by the moratorium was not compensable. (*Hollister Park Inv. Co. v. Goleta County Water Dist., supra*, 82 Cal.App.3d at p. 294; *Gilbert v. State of California* (1990) 218 Cal.App.3d 234, 250-51.

Although Plaintiffs attempt to distinguish *Gilbert* on the basis that it dealt with inverse condemnation, the central principle that potential water use is not a compensable right is applicable to the constitutional claims presented here. This action does not establish a valid protectable property interest in potential water use and, therefore, cannot support causes of action pursuant to 42 USC §1983.

The Court does not reach the statute of limitations argument.

The demurrer to the Second Cause of Action is sustained without leave to amend.

The motion to strike is moot.

5

## STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO
## CERTIFICATE OF MAILING
## MINUTE ORDER ADOPTING TENTATIVE RULING

| Kenneth Noonan vs. Cambria Community Services District | 15CVP-0282 |
|---|---|

Jack Bryan Friedell
2173 Salk Ave Ste 250
Carlsbad            CA  92008

Timothy Carmel
1410 Marsh St
San Luis Obispo CA  93401

Under penalty of perjury, I hereby certify that I deposited in the United States mail, at California, Paso Robles, first class postage prepaid, in a sealed envelope, a copy of the foregoing addressed to each of the above;

OR

If counsel has a pickup box in the Courthouse a copy was placed in said pickup box this date.

Dated:  6/9/2016

Michael Powell, Clerk of the Court

By: _____ Deputy Clerk
         Julie Vierra

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN LUIS OBISPO

I am employed in the County of San Luis Obispo, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1908 Spring Street, Paso Robles, California, 93446.

On September 3, 2019, I served the foregoing document described as **CAMBRIA COMMUNITY SERVICES DISTRICT'S REQUEST FOR JUDICIAL NOTICE [FRE 201] (FILED AND SERVED WITH 12(b)(6) MOTION TO DISMISS)** on the interested parties in this action as follows:

| *Attorney for Petitioner and Plaintiffs*: | *Attorney for Respondent and Defendant, County of San Luis Obispo*: |
|---|---|
| Gregory B. Beam | Jon Ansolabehere |
| Mark D. Alpert | Chief Deputy County Counsel |
| Gregory Beam & Associates, Inc. | County of San Luis Obispo |
| 23113 Plaza Pointe Drive, Suite 100 | 1055 Monterey Street |
| Laguna Hills, CA 92653 | San Luis Obispo, CA 93408 |
| Tel. (949) 598-5800 | |
| Fax: (949) 598-5815 | |
| gbeam@beamlaw.net | |
| malpert@beamlaw.net | |

(X)  BY MAIL: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, I caused such envelope to be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Paso Robles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

(  )  BY OVERNIGHT DELIVERY: I deposited such envelope, with delivery fees paid or provided for, in a box or other facility regularly maintained by Golden State Overnight, or delivered to a driver or courier authorized by Golden State Overnight to receive documents.

(  )  BY EMAIL or ELECTRONIC TRANSMISSION:  Based on a Court order or an agreement of the parties to accept service by email or electronic transmission, I caused the document(s) to be sent from email address lperez@carnaclaw.com to the persons at the email addresses listed above.  I did not receive, within a reasonable time after the transmission, any electronic message of other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct. Executed on September 3, 2019 at Paso Robles, California.

Lisa M. Perez

**CAMBRIA COMMUNITY SERVICES DISTRICT'S REQUEST FOR JUDICIAL NOTICE [FRE 201]**
