1 | Gregory B. Beam (SBN 102443)
Mark D. Alpert (SBN: 138152)
2 | GREGORY BEAM & ASSOCIATES, INC.
23113 Plaza Pointe Drive, Suite 100
3 | Laguna Hills, CA  92653
(949) 598-5800
4 | malpert@beamlaw.net

5 | Attorneys for Plaintiffs
Michael Windeler, Karen Windeler, Joy Salerni,
6 | Jeff Schneider, Edna Schneider, Barbara Knight,
Kent Knight, Bruce DePaola, Terri DePaola

7

8 | UNITED STATES DISTICT COURT OF CALIFORNIA

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | MICHAEL WINDELER, KAREN )   Case No. 2:19-cv-06325-DSF(JEMx)
WINDELER, JOY SALERNI, JEFF )
12 | SCHNEIDER, EDNA SCHNEIDER, )
BARBARA KNIGHT, KENT )   **PLAINTIFFS' OPPOSITION TO**
13 | KNIGHT, BRUCE DEPAOLA, )   **MOTION TO DISMISS OF**
TERRI DEPAOLA, )   **DEFENDANT COUNTY OF SAN**
14 | )   **LUIS OBISPO**
    Plaintiffs and Petitioners, )
15 | )   Date:      October 7, 2019
vs. )   Time:      1:30 p.m.
16 | )   Location:  Courtroom 7D
CAMBRIA COMMUNITY )              First Street Courthouse
17 | SERVICES DISTRICT; )              350 West 1st Street
COUNTY OF SAN LUIS OBISPO, )              Los Angeles, CA
18 | )
    Defendants and Respondents. )   Assigned to Honorable
19 | )   Dale S. Fischer
20 | )   Complaint Filed:  July 24, 2019
21 | )   [FILED CONCURRENTLY WITH
)   REQUEST FOR JUDICIAL NOTICE]
22 | _____ )

23 |       Plaintiffs submit the following memorandum of points and authorities in

24 | opposition to County of San Luis Obispo's Motion to Dismiss Plaintiffs' Amended

25 | Complaint.

26 | ///

27 | ///

28 | ///

- 1 -

1

## **<u>TABLE OF CONTENTS</u>**

2  1.  Introduction...................................................................................................2

3  2.  Standards for Consideration of the Motion to Dismiss .........................4

4  3.  Statement of Facts ........................................................................................5

5  4.  Plaintiffs State a Claim for Taking Two Recognized Forms of Property ...........8

6      A.    Plaintiffs Allege a Property Interest in Water and Sewer Service ..............9

7      B.    Plaintiffs Allege a Taking of the Value of Their Land ............................11

8  5.  Plaintiffs State a Claim for Denial of Substantive Due Process ........................17

9  6.  Public Policy Necessitates Following the Law and Compensating Property

10     Owners for Property Taken for Public Use .......................................................19

11 7.  Conclusion ..........................................................................................................20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS BY COUNTY OF SAN LUIS OBISPO**

1

## **TABLE OF AUTHORITIES**

2

## **FEDERAL CASES**

3   *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996) ........................................................5

4   *Bank of Am. Nat. T. & S. v. Summerland Cty. Water D.* (9th Cir. 1985) 767 F.2d 544,

5   548 ..............................................................................................................................12

6   *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) ...............................4

7   *Board of Regents v. Roth*, 408 U.S. 564 (1972) 408 U.S. 564, 577 ...........................9

8   *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*,

9   482 U.S. 304, 314 (1987) ......................................................................................16, 17

10  *Harris v. County of Riverside* (9th Cir. 1990) 904 F.2d 497, 503 ...........................11

11  *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982).........................18

12  *Lingle v. Chevron U.S.A., Inc.* (2005) 544 U.S. 528, 536-537......................12, 13, 16

13  *Lockary v. Kayfetz* (9th 1990) 917 F.2d 1150, 1154-55 .......... 3, 11, 12, 13, 14, 15, 18

14  *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1019............2, 3, 11

15  *McMillan v. Goleta Water Dist.*, 792 F.2d 1453, 1457 (9th Cir. 1986)...............12, 13

16  *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831, 107 S. Ct. 3141, 3145,

17  (1987).........................................................................................................................11

18  *Penn Central Trans. Co. v. New York* (1978) 438 U.S. 104, 124 ..............................13

19  *Phillips v. Washington Legal Foundation*

20  524 U.S. 156, 164, 118 S.Ct. 1925, (1998) ................................................................8

21  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir.1981).................................................4

22  *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989) .....................................18

23  *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707,

24  130 S. Ct. 2592, 2597, (2010)......................................................................................8

25  *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121 ...............11

26

27

28

**OPPOSITION TO MOTION TO DISMISS BY COUNTY OF SAN LUIS OBISPO**

**CALIFORNIA CASES**

*Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1272-73 ...................................................................................................11

*Beutz v. County of Riverside* (2010) 184 Cal.App.4th 1516, 1520–1521 ..................10

*Furey v. City of Sacramento*, 24 Cal.3d 862, 874, (1979)......................................2, 9

*Gilbert v. State of California*, 218 Cal.App.3d 234 (1990)........... 3, 10, 13, 14, 15, 19

*Hollister Park Investment Co. v. Goleta County Water Dist.*
(1978) 98 Cal.App.3d 290 ............................................................... 10, 12, 13, 15, 16

*Knox v. City of Orland* (1992) 4 Cal.4th 132 ...........................................................9

*Regents of University of California v. East Bay Mun. Utility Dist.* (2005) 130
Cal.App.4th 1361, 1375–1376....................................................................................10

*San Marcos Water Dist. v. San Marcos Unified School Dist.*
(1986) 42 Cal.3d 154 ..................................................................................................10

*Silicon Valley Taxpayers Ass'n, Inc. v. Santa Clara County Open Space Authority*
(2008) 44 Cal.4th 431, 441–442................................................................2, 9, 10

*Swanson v. Marin Mun. Water Dist.* (1976), 56 Cal.App.3d 512............10, 13, 15, 16

**OPPOSITION TO MOTION TO DISMISS BY COUNTY OF SAN LUIS OBISPO**

**MEMORANDUM OF POINTS AND AUTHORITIES**

### 1.   Introduction

The state cannot convert legal lots approved for single family homes to open space without paying compensation.  See, e.g. *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1019.  This lawsuit presents the question of whether local governments can convert legally created single family home lots to open space without compensation by choosing to deny water and sewer service and insisting that development can only occur with that service.

Plaintiffs (or their predecessors in interest) paid substantial money for lots in Cambria based on the reasonable expectation that they would be able to develop homes on approved lots zoned for that purpose.   (First Amended Complaint ("FAC") ¶¶ 13, 21-25)   Defendants County of San Luis Obispo ("County") and Cambria Community Services District ("District") have decided these lots will not be allowed to be developed to effectuate a no growth policy and the denial of water and sewer service is simply a tool to effectuate that purpose without compensating the owners of these lots.  (FAC ¶¶ 20, 26-43)

County's Motion to Dismiss ("MTD") is predicated on a single argument: Plaintiffs cannot state a claim because they do not have a protected "property interest" as mere "potential" water users.  The argument fails for two, basic separate reasons.

First, the FAC alleges facts which give rise to a property right or interest in sewer and water service.  Under California law, a property right in utility service can arise from a "special assessment" or other fee charged particularly for the development and maintenance of utility infrastructure, which gives rise to a "special benefit" to the affected properties.  See, e.g. *Silicon Valley Taxpayers Ass'n, Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 441–442; *Furey v. City of Sacramento*, 24 Cal.3d 862, 874, (1979).  The FAC alleges such special

- 2 -

1   assessments and fees were assessed and paid in this case.  (FAC ¶¶ 15-20)[1]  Thus,

2   even assuming County is correct and this case depends on establishing a "property

3   right" in water service, the FAC alleges an interest in water and sewer service.

4        Second, this case does not depend on a property interest in water and sewer

5   service.  The primary property interests allegedly taken in this case are the

6   underlying value of Plaintiffs' legal lots and the right to develop the lots as single

7   family homes.[2]  The FAC alleges the County and District have not simply failed to

8   provide water and sewer service to Plaintiffs, but rather that they affirmatively

9   denied such service to Plaintiffs as a means of stopping growth, thereby depriving

10  plaintiffs of their right to develop and the value of their land.  In other words, this

11  case is about the attempt by the County and District to convert developable lots to

12  open space, using the denial of utility service as a tool to that end.

13       The Ninth Circuit has affirmed that just such a case may be stated in *Lockary*

14  *v. Kayfetz* (9th 1990) 917 F.2d 1150, 1154-55 ("Lockary") which, like this case,

15  arose from the denial of water service by a utility district. The Court in *Lockary*

16  found the plaintiffs had no property right in water service under state law[3], but

17  nonetheless reversed summary judgment against lot owners, affirming their right to

18  pursue claims for taking, equal protection, and substantive due process based on

19  evidence that the defendant district had acted to deny the property owners the right

20  of development.  *Lockary* is dispositive of this case.

21       County does not address *Lockary* or even language in the decision it relies

22  upon heavily, *Gilbert v. State of California*, 218 Cal.App.3d 234 (1990) ("Gilbert"),

23

24  ———————————

    [1] County's failure to address this authority and argument is difficult to understand in
25  light of the fact that it was pled in the FAC and previously briefed in conjunction
    with the prior complaint filed by Plaintiffs in U.S. District Court Case No. 2:14-cv-
26  08536.
    [2] Of course, a regulatory taking does not involve the physical confiscation of real
27  property, but rather regulation that confiscates its underlying value.  See *Lucas,*
    *supra*, at 1014-1016.
28  [3] There was no contention in *Lockary* that the lot owners had paid special
    assessments for utility development or maintenance.

- 3 -

1  which make clear that if the evidence demonstrates that utility services are denied in

2  an effort to stop development or growth, there is a regulatory taking.

3        Instead of addressing these dispositive cases and factual allegations, County

4  takes pains to inform the Court of the terrible consequences of allowing valid taking

5  claims to proceed.   County wants the Court to know it will cost a great deal of

6  money to pay compensation to all property owners whose lots have been taken when

7  local governments have been unable to obtain water to serve legal lots.

8        County's policy argument is based on factual allegations that are inconsistent

9  with the factual allegations of the FAC.   Plaintiffs will demonstrate that the County

10  and District have <u>chosen</u> to deny Plaintiffs water service and chosen to deny

11  Plaintiffs access to <u>available</u> sewer facilities to effectuate a policy of limited growth.

12  (FAC ¶¶ 13-20, 37-44)

13        In reality, this case gives rise to a much different public policy concern.  <u>Can</u>

14  <u>local governments convert legal developable lots to open space without paying just</u>

15  <u>compensation to the owners of those lots by requiring such developments use public</u>

16  <u>water and sewer systems and refusing to obtain sufficient water or make available</u>

17  <u>existing sewer systems</u>?   If the facts alleged in the FAC are proved, that is exactly

18  what happened in this case.  If this case is dismissed, the Court will be holding that

19  local governments can convert legal lots to open space without compensation by

20  choosing to make utilities unavailable and demanding a connection to such utilities

21  as a condition of development.

22        **2.    Standards for Consideration of the Motion to Dismiss**

23        Motions to dismiss for failure to state a claim upon which relief can be

24  granted are disfavored and are rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993

25  (5th Cir.1981). A district court cannot dismiss a complaint, or any part of it, for

26  failure to state a claim upon which relief can be granted unless it appears beyond a

27  doubt that the plaintiff can prove no set of facts in support of his claim which would

28  entitle him to relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995).

- 4 -

In reviewing the MTD, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

### 3.     Statement of Facts

Plaintiffs (or their predecessors in interest) purchased legal lots zoned only for the development of single family homes in an unincorporated area of San Luis Obispo County known as Cambria, from the 1940s to 1989. (FAC ¶¶ 21-25). The lots were all purchased for a fair market value reflecting the reasonable expectation that they could be developed with single family homes. (*Id*)

Plaintiffs were specially assessed to finance the construction and maintenance of the District's sewer and water systems[4]. (FAC ¶¶ 13-19)

Plaintiffs sought to obtain water and sewer service from the District or secure a place on a waiting list for water or sewer service, but such applications were refused or rejected, with the District asserting "at this time" it was not accepting applications for service as a result of a continuing water emergency. (*Id* ¶ 26) The District most recently confirmed it is not accepting applications for service in November, 2017. (*Id*)

Plaintiffs submitted applications for a minor use permit that would allow development of single family homes. (*Id* ¶ 27) The applications were returned unprocessed (and thereby rejected) because they were not accompanied by written verification of water and sewer service from the District. (*Id*)

Plaintiffs believe there is no feasible path to development, but in an effort to confirm that assertion they moved forward with a "test case" via the Windelers. (*Id* ¶ 28) In April, 2017, the Windelers submitted a development application along with a variance request, seeking a variance from all requirements that would bar development without verification of water or sewer service from the District. (*Id*)

---

[4] Plaintiffs could allege additional specific facts if needed, including that water availability assessments they paid were used in part to drill three additional wells.

- 5 -

1 | Because development was impossible without the variance, an agreement was
2 | reached to proceed first with the variance application ("Application"). (*Id* ¶ 30)

3 | The Application made clear that the Windelers were prepared to develop with
4 | any combination of services that would be acceptable to the County, such as ground
5 | water from an onsite well water or trucked in water for the source of water and
6 | septic or the available sewer system for sewage disposal. (*Id*)

7 | The Application was first heard and denied by the County Planning
8 | Commission on August 24, 2017. (*Id* ¶¶ 30-31) The Windelers appealed the denial
9 | to the County Board of Supervisors ("Board") (*Id* ¶ 32). The appeal was heard on
10 | October 17, 2017 (*Id* ¶ 34). Staff recommended denial. (*Id*) Staff claimed it was
11 | unknown if the District would allow use of available sewers if alternative sources of
12 | water were approved. (*Id*) The Board voted to deny the appeal. (*Id* ¶ 35) On
13 | October 24, 2017, the County officially adopted Resolution No. 2017-265, denying
14 | the appeal ("Resolution") (*Id*, See Resolution, attached as Exh. 1 to Plaintiffs'
15 | Request to Take Judicial Notice. ("RJN").

16 | Finding E(iii) confirmed that granting the Variance would be inconsistent
17 | with growth limitations adopted by the County and District, because there were 1831
18 | more vacant lots than can be developed under their self-imposed growth limitation.
19 | (*Id*, Finding E(iii)[5], FAC ¶ 35) The findings also specifically reference the limits of
20 | the District's Buildout Reduction Program ("BRP"), designed to limit development
21 | by only providing water service and connections to those lot owners who currently
22 | have a wait list position. (*Id*, See also FAC ¶ 31)

23 | A senior County planner who worked on the project, Mr. Singewald, later
24 | confirmed in public comments that the District's moratorium on new water
25 | connections is part of the County's zero percent growth policy. (FAC ¶ 37)
26 | Singewald confirmed that in order to allow new development in Cambria, the

27 |
28 | [5] Relatedly, County's findings noted that granting a variance would be improper in light of the fact that there were so many other vacant residential lots not on the District's water service wait list. (*Id* Finding C).

1    District would have to lift its moratorium on new water connections and the County

2    would have to amend the growth ordinance to increase Cambria's growth rate to

3    higher than zero percent. (FAC ¶ 37)

4          Thus, the decision to deny a variance to the Windelers was consistent with

5    and indeed the application of the zero growth policy of the County.  The County will

6    not allow development without District water and sewer and the County and District

7    have intentionally declined to take steps to acquire sufficient water that could serve

8    hundreds of legal lots. (*Id* ¶ 43)  In fact, the District, in concert with County, has

9    developed plans to obtain additional water for lot owners who have secured a place

10   on the District wait list, <u>but decided that this additional water source be designed and</u>

11   <u>limited so as to serve only those lot owners currently on the wait list to be consistent</u>

12   <u>with the zero growth policy.</u>  (*Id* ¶¶ 38, 43)

13         County makes the point that sometimes public agencies do not have the power

14   to obtain water, that factors beyond their control prevent them from obtaining

15   sufficient water. (See County Oppos. p. 13)  Presumably, County and District can

16   attempt to prove that state of facts at trial.   As set forth above, Plaintiffs allege a far

17   different state of facts, based on specific factual allegations that demonstrate County

18   and District have purposefully declined to develop water and that demonstrate the

19   County would not allow Plaintiffs to develop their lots even if such water came

20   available (or with available well or trucked in water).

21         Finally, County suggests that the Windelers knew when they purchased their

22   lot that "the District could not provide water for new hookups for the development

23   of vacant, unimproved lots in Cambria." (County Oppos. p. 4, lines 20-21, citing its

24   RJN, Exhibit C, p. 4.)   While this "fact" does not appear to be relevant to the MTD,

25   it is necessary to point out that County mischaracterizes the evidence.

26         County "Exhibit C" is a letter from counsel for the Windelers to the County

27   relating to the variance application.  It notes that when the Windelers purchased their

28   lot in 1988 they were aware the District was limited to 125 new connections a year

- 7 -

1 | because of EPA environmental concerns over <u>sewer connections</u>. (*Id*)  A waiting list
2 | was only needed when new construction demand exceeded the annual sewer
3 | connection constraint. (*Id* pp 2-4).    In other words, <u>the waiting list had nothing to</u>
4 | <u>do with water being unavailable</u>.  It simply limited the new connections to 125 a
5 | year out of environmental concerns regarding sewer connections.[6] (*Id*)

6 |     In reality, if Defendants would have allowed 125 new connections a year
7 | since 1988, this lawsuit would be unnecessary.[7]  Defendants arbitrarily chose instead
8 | to allow no growth beyond those lots which already had service or a wait list
9 | position.

10 | **4.**      **Plaintiffs State a Claim for Taking Two Recognized Forms of**
11 | **Property**

12 |     Generally speaking, state law defines property interests.  *Stop the Beach*
13 | *Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 707, 130 S. Ct. 2592,
14 | 2597, (2010), citing  *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164,
15 | 118 S.Ct. 1925, (1998).

16 |     The MTD only addresses the right to a water connection as "property."
17 | Plaintiffs allege facts demonstrating a right to water and sewer service under
18 | California law, arising from the payment of special assessments for water and sewer
19 | services.  County simply ignores the facts and law supporting this taking claim.

20 |     County also curiously ignores the primary form of property that is alleged to
21 | have been taken, the underlying value of Plaintiffs' lots which includes the right to
22 | develop the lots consisting with their existing zoning.  Defendants are alleged to
23 | have taken all or substantially all of the Plaintiffs' property by rendering their legal

24 |

25 | [6] At trial, the Windelers will demonstrate they had a reasonable expectation of water
service being available when they planned to build their home and were repeatedly
26 | assured by District representatives that utility service would be available.
[7] Over 30 years, from 1986 to 2016, this 125 connection a year limit would allow for
27 | 3,750 new connections.  There are 1871 lots without a wait list position.  (FAC ¶ 35)
The District wait list (Exh. G to District's RTN) shows a 663 owner wait list.  In
28 | other words, 125 connections a year would easily have allowed services for all legal
lots within Cambria.

- 8 -

1    lots undevelopable and converting them to open space.  Plaintiffs have a right to
2    compensation when their lots are taken for public use without compensation, a right
3    recognized by California and federal courts, including decisions which County cites
4    and relies upon.

5         A.    **Plaintiffs Allege a Property Interest in Water and Sewer**
6    **Service**

7         Plaintiffs allege a property interest in water and sewer service from the
8    District arising from the payment of special assessments[8].  California courts have
9    recognized a property right in utility service to properties which have not received
10   service where those properties have been specially assessed for utility
11   improvements. *Silicon Valley, supra* 44 Cal.4th at 441–442.  A special assessment
12   may not be imposed without providing the associated special benefit to the assessed
13   property. *Id*, citing *Knox v. City of Orland* (1992) 4 Cal.4th 132.   See *Furey v. City*
14   *of Sacramento*, 24 Cal.3d 862, 874-75 (1979), cert.den. 444 U.S. 976 ("Furey")
15   (imposing the special assessments for sewers against the property, but not providing
16   the associated "special benefit," the City is a taking).  See also, *Board of Regents v.*
17   *Roth*, 408 U.S. 564 (1972) 408 U.S. 564, 577 (Specific factual circumstances can
18   demonstrate a "legitimate claim of entitlement").

19        In *Furey*, a special assessment district was created for the establishment of
20   sewer improvements in an area of Sacramento County that was intended by planning
21   agencies for transition from agriculture to urban development and properties in the
22   area paid the assessments when due.  (*Id* at 866-867).  The County thereafter
23   amended its ordinance to set aside the land as permanent agricultural and open
24   space.  (*Id* at 868)  The Court concluded that by imposing the special assessments

25

26

---

27  [8] In addition, Plaintiffs can demonstrate at trial that they retain ground water rights
    that ran with the land when they acquired title.  As previously explained, County
28  refuses to allow development utilizing this water source and Plaintiffs can prove
    they cannot obtain a permit to drill such wells.

- 9 -

1  for sewers against the property, but not providing the associated "special benefit,"

2  the City caused a taking.  (*Id* at 874-75)

3  　　　Other courts have recognized that special assessments or charges which are

4  the functional equivalent of such special assessments give rise to special benefits

5  protected under state law.  See, e.g. *Beutz v. County of Riverside* (2010) 184

6  Cal.App.4th 1516, 1520–1521 (A special assessment must confer a special benefit

7  upon the property assessment beyond that conferred generally); *Regents of*

8  *University of California v. East Bay Mun. Utility Dist.* (2005) 130 Cal.App.4th 1361,

9  1375–1376 (a particular tax or charge, though not adopted as a special assessment,

10  must be treated as a special assessment if it has the same purpose. (*Id*, citing  *San*

11  *Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, the

12  Court explained:

13  　　　　　In sum, a fee aimed at assisting a utility district to defray costs of

14  　　　　　capital improvements will be deemed a special assessment from which

15  　　　　　other public entities are exempt." (*Id* at 282, quoting *San Marcos,*

16  　　　　　*supra*, pp. 164–165)

17  　　　Plaintiffs allege in detail that they were specially assessed to finance the

18  construction of the District's sewer system, but are now being denied the benefit of

19  the utility systems they paid to develop.  (See FAC ¶¶ 14-19)  County simply

20  ignores these factual allegations and the line of cases cited above, including

21  California Supreme Court cases,  *Silicon Valley* and *Furey, supra*, which were

22  asserted in Plaintiffs' prior complaint as well.   Instead, County relies on *Gilbert v.*

23  *State of California*, 218 Cal.App.3d 234 (1990) ("Gilbert"), and two decisions cited

24  in *Gilbert, Hollister Park Investment Co. v. Goleta County Water Dist.* (1978) 98

25  Cal.App.3d 290, ("Hollister") and *Swanson v. Marin Mun. Water Dist.* (1976), 56

26  Cal.App.3d 512 ("Swanson").  None of these cases address whether a lot owner who

27  paid a special assessment for the development of utilities has a property right in the

28  service of that utility.      Plaintiffs allege a property right in utility service

- 10 -

1  recognized under California law.  That property right has been taken without
2  compensation.

### B.   Plaintiffs Allege a Taking of the Value of Their Land

4  County's MTD entirely ignores the basic property right alleged to be taken for
5  public use: the economic value of Plaintiffs' lots and the right to develop those lots
6  consistent with existing zoning. The California Constitution prevents the taking of
7  private property for public use without compensation.  (Cal. Const. art. I, § 19).
8  Courts have recognized a "property right" in devoting land to any legitimate use.
9  *Harris v. County of Riverside* (9th Cir. 1990) 904 F.2d 497, 503, citing *Washington*
10 *ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 121.  When a government
11 body takes private property for public use, it must provide compensation, even
12 where title to the property remains in the name of the property owner.  See, e.g.
13 *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831, 107 S. Ct. 3141, 3145,
14 (1987).  (Requiring allowance of public beach access as a condition of a building
15 permit is a regulatory taking).

16 The Supreme Court has recognized that governments cannot convert legal lots
17 to open space without paying compensation.   *Lucas, supra,* 505 U.S. at 1019.
18 Indeed, even down-zoning a large lot in order to preserve open space can give rise to
19 a taking. See, e.g. *Avenida San Juan Partnership v. City of San Clemente* (2011) 201
20 Cal.App.4th 1256, 1272-73. (limiting development to 1 unit instead of 4 to advance
21 open space a taking)  In this case, Plaintiffs allege their lots are being effectively
22 "downzoned" to zero units.

23 This Circuit has recognized a taking (and substantive due process) claim may
24 be stated against California public entities in almost identical circumstances in
25 *Lockary, supra*. The Court in *Lockary*, which was reviewing the granting of
26 summary judgment against the property owner, found triable issues of fact as to
27
28

- 11 -

1   taking claims based on various takings' analyses. (*Id* at 1154-55)[9]  For example, the

2   Court found the refusal to grant a water hook up could state a taking claim because it

3   might deny the plaintiffs all economically viable use of their land. (*Id* at 1154)  The

4   Court also found triable issues of fact as to whether arbitrary government action

5   rather than a shortage of water was the actual cause of the economic loss.  (*Id* at

6   1155).

7        The FAC alleges Plaintiffs have been denied all economically viable use of

8   their land and that their property has been taken under the alternate multi-factor tests

9   recognized for evaluating regulatory taking under federal law.[10]  The FAC alleges

10   District's actions were undertaken with the purpose of depriving Plaintiffs the right

11   to develop their lots for their legal use.  *Lockary* confirms that the refusal to allow a

12   water connection does impact a recognized property right when it "takes" the value

13   of the underlying real property.  See also, *Bank of Am. Nat. T. & S. v. Summerland*

14   *Cty. Water D.* (9th Cir. 1985) 767 F.2d 544, 548 (where the denial of water was

15   pursuant to a land use decision, there may be a compensable taking).

16        County cites an earlier decision in this Circuit, *McMillan v. Goleta Water*

17   *Dist.*, 792 F.2d 1453, 1457 (9th Cir. 1986).  *McMillan* includes a discussion of the

18   distinction between potential and actual water users, based on *Hollister,*[11] *supra*.

19   The decision is largely irrelevant as it does not address a claim by a property owner

20   that the denial of water service was utilized as a tool to take the value of the

21   underlying real property.  *McMillan* simply affirms the rule that there is no property

22   right in potential water service.  Plaintiffs' assertion of a property right in water and

23

24

---

25   [9] The 1990 decision described the various takings analysis differently than it would
today in light of the Supreme Court's more recent clarification of the various

26   standards.  For example, the Court in *Lockary* applied the "substantially advances"
test to determine whether there was a taking (*Id* at 1154).   The Supreme Court

27   unambiguously rejected this test in *Lingle v. Chevron U.S.A., Inc.* (2005) 544 U.S.
528, 536-537 ("Lingle").

28   [10] See *Lingle, supra* at 538-539.
[11] See discussion regarding *Hollister*, below.

1   sewer service arises from the special assessments they paid to develop those

2   facilities, which is not discussed in *McMillan* (or any case County cites).

3        County's argument that Plaintiffs' takings claims can be dismissed without

4   consideration of the merits is rejected by *Lockary*. Oddly enough, it is also rejected

5   by the authority the District relies upon. District relies upon, *Gilbert, supra*, which,

6   in turn, relies upon the other two state law cases County cites, *Hollister* and

7   *Swanson, supra*. *Gilbert* approved the sustaining of a demurrer as to an inverse

8   condemnation case against property owners who had been denied a water connection

9   under a temporary water connection moratorium. (*Id* at 239)  <u>However, *Gilbert*</u>

10  <u>acknowledged that the absence of a right to a property right in water did not dispose</u>

11  <u>of the takings claim</u>. (*Id* at 252)  The Court noted the complaint alleged the

12  regulatory action of prohibiting new water connections was alleged to have deprived

13  the property owners of all economically viable use of their property, concluding:

14          Given that appellants have related the Department's action to the value

15          of the real property itself, it is appropriate to further analyze these

16          allegations in light of current taking jurisprudence. (*Id*)

17       The Court in *Gilbert* proceeded to analyze the inverse condemnation claim on

18  the merits at length, applying what it understood to be the takings law of the day (*Id*

19  at 252 to 259)[12].  This Court would be required to apply a takings analysis

20  differently than the Court in *Gilbert* and Plaintiffs question the extent to which the

21  Court appeared to be making factual findings in reviewing the ruling on a demurrer,

22  but *Gilbert* undeniably rejects the District's position in this case by undertaking a

23  _____

24  [12] As with Lockary, the takings analysis in *Gilbert* is inconsistent with current law in
    applying a "substantially advances" formula to determine if there is a taking (*Id* at

25  253). See FN 6, *infra, Lingle, supra*. The decision is also problematic in failing to
    differentiate between the two separate takings tests, one stated as "denial of all
    economically viable use" and the second being the multi-prong balancing analysis of

26  *Penn Central Trans. Co. v. New York* (1978) 438 U.S. 104, 124, which the Court in
    *Gilbert* seemed to treat as a single standard. See *Gilbert, supra* at 255. They are

27  two separate standards.  See *Lingle, supra*, 538-39.  County did not argue the
    substantive merits of a taking claim in the MTD.  Plaintiffs offer this information so

28  the Court is aware that merits of the takings analysis in this case will proceed under
    a different legal framework than stated in *Gilbert* or *Lockary*.

                                            - 13 -

takings analysis on the merits, predicated on the taking of the plaintiff's real property. <u>In that regard, *Gilbert* is consistent with *Lockary*</u>. Both cases make it clear that a property owner who could prove that the denial of water was part of a land use planning effort to deny development could state a taking claim.

*Gilbert's* analysis of the merits of the taking claim are moot, given that it applies an outdated takings analysis (See FNs 9 and 12, infra) and County has not itself argued the merits of an underlying taking claim in its MTD. However, it is still worthwhile to point out that the Court in *Gilbert*, in ruling on the merits, relied on factual "findings" that are different and inconsistent with the facts alleged in the FAC. For example, *Gilbert's* takings analysis was predicated on the assumption that the alleged harmful conduct was limited to a temporary moratorium until there was an improved supply of water. (*Id* at 253) The Court undertook what can only be described as a factual analysis to conclude that the water district had acted properly and that the moratorium was a necessary and temporary condition. (*Id* at 254-255). The Court factually rejected arguments that the plaintiffs were permanently denied access to water, finding the moratorium would lapse when conditions changed and the District planned to provide water service when it could. (*Id* at 256) The court examined whether the actions of the Department could be characterized as an effort to regulate or restricting land use, finding as a <u>factual</u> matter that the state's action could not be characterized as land use planning. (*Id* at 258).

In contrast to *Gilbert*, the FAC alleges the County and District are permanently denying utility service to Plaintiffs to implement a no growth policy and County's own findings denying the Windelers a variance confirm the County would not allow development without District water and sewer because it would violate the County's growth limitations, its "Buildout Reduction Plan". (FAC ¶ 35)

This case is different from *Gilbert* in another important factual respect. In *Gilbert*, the demurring defendant was not the water district or planning agency, it was the State Department of Health Services, which had recommended denial of

- 14 -

1   service under the Health & Safety Code, based on a moratorium declared by the
2   water district.  (*Id* at 239-240, 245-46)  This impacted the takings analysis because
3   the asserted responsibility to either provide service or end the water emergency was
4   with the water district, <u>not state department</u>. (*Id*)  The Court found the Department's
5   sole action of requiring the District to maintain its moratorium until it could show an
6   improved supply did not amount to a regulatory taking. (*Id* at 252).

7           The County (and District) MTD undertakes no analysis of the merits of the
8   takings claims, essentially ignoring the last 12 pages of *Gilbert*.

9           *Lockary, supra*, specifically discussed *Hollister, supra*, in the context of a
10  procedural due process claim, recognizing that potential water users did not have a
11  property interest in water not yet received. (*Lockary, supra* at 1156).  This was
12  dispositive of the procedural due process claim because that claim was linked only
13  to the denial of water service, rather than the taking of the underlying value of the
14  property. (*Id*)  Again, the Court nonetheless affirmed the property owner could
15  proceed with taking and substantive due process claims.

16          County also cites *Hollister* which rejected takings claims predicated on the
17  theory that the impact of the challenged regulation was the implementation of a no
18  growth policy.   However, the Court reached that conclusion predicated on the
19  finding that the challenged laws not only did not establish a no growth policy, but
20  rather that it actually " . . . <u>mandates</u> that the district seek additional sources of
21  water" and represents a moratorium upon new service connections during drought
22  conditions while a feasible and financially acceptable plan for expansion is
23  developed.  (*Id* at 294, emphasis added).

24          The third California decision cited by the County is *Swanson, supra*.
25  *Swanson* does not support the County's motion.  *Swanson* involved an attempt to
26  force a water district to grant a property owner a pipeline extension in order to
27  provide water service to the property where there was a moratorium arising from a
28  water shortage.  56 Cal.App. 3d, 512 at 515.  On appeal, the property owner argued

- 15 -

OPPOSITION TO MOTION TO DISMISS BY COUNTY OF SAN LUIS OBISPO

the denial of service constituted a taking and other constitutional violations. *Id* at 522.

The Court rejected the taking claim, noting there was no "absolute right to be afforded water service" (*Id*)   However, the Court was clear that its decision rested on the assumption that the water district could not and did not adopt the moratorium as part of a no growth policy. (*Id* at 523)   The Court explained:

> Politically, the power to "cut off one's water" by the simple expedient of imposing a moratorium such as the one here involved is a potent weapon in effecting a no-growth policy within a community. Since District has neither the power nor the authority to initiate or implement such a policy, the imposition of any restriction on the use of its water supply for that purpose would be invalid.  We hasten to point out, however, that, as indicated by our decision, **we find no evidence in the record before us of any such abuse of authority.** Nevertheless, we do foresee a continuing obligation on the part of District to exert every reasonable effort to augment its available water supply in order to meet increasing demands. (*Id* at 524, emphasis added)

This case presents the scenarios that the Courts in *Swanson* and *Hollister* found did not exist.  In the case of *Swanson*, this conclusion was reached only after a full trial on the merits.  *Hollister* reached its factual conclusion based on its reading that the challenged laws actually required the defendant to develop new water. There is no such record in this case.

Unfortunately, the Court in *Swanson* is wrong in the sense that the County and District working together do have the ability to implement a no growth policy through, in part, the denial of access to public utilities, as the series of failed California state lawsuits alluded to by the District demonstrate.  Of course, the purpose of a taking claim is to require compensation for <u>valid</u> government action which results in the confiscation of private property for public use[13].  County and

---

[13] As the Supreme Court in *Lingle*, supra, observed "[t]he Fifth Amendment" 'does not prohibit the taking of private property, but instead places a condition on the exercise of that power.'   544 U.S. at 536-537, quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987). "In other words, it 'is designed not to limit the governmental interference with

- 16 -

1 District have the power to take Plaintiffs' property. They have to compensate

2 Plaintiffs for the property they have taken.

3      This is not a case where the Court must infer the County and District are

4 acting pursuant to growth limitations, though there is ample evidence alleged to

5 support such an inference. The County <u>explicitly rejected the Windelers' variance</u>

6 <u>application in its official findings because the requested variance was inconsistent</u>

7 <u>with the County and District's Buildout Reduction Plan</u>. The County and District

8 have expressly chosen to limit the development of water to serve only those lots

9 which either currently have service or have a wait list position to serve the goal of

10 limiting development. These actions were undertaken with the specific stated

11 purpose of limiting development to only those lots which have a water service

12 waiting list position.

13      Not one of the cases cited by the County is based on a case where the local

14 government was a found to have permanently denied water as part of a no growth

15 policy. Likewise, not one of the cases cited by the County involves lot owners who

16 paid special assessments to develop water and sewer capacity and are therefore have

17 a property interest in utility service. The MTD must fail because it is predicated on

18 a state of facts that are directly contracted by the allegations of the FAC.

19     **5.**    **Plaintiffs State a Claim for Denial of Substantive Due Process**

20      County's MTD seeks dismissal of Plaintiffs' substantive due process claims

21 based only on the alleged absence of a protected property right. Thus, the motion

22 should be denied for the reasons already stated. Plaintiffs state a claim for denial of

23 substantive due process based on allegations that the claim of a water emergency

24 and denial of sewer service is pretextual, that the County and District are, in fact,

25 acting on a concerted plan to effectuate County's no growth policy.

26

27

28 property rights per se, but rather to secure compensation in the event of otherwise
proper interference amounting to a taking.'" (Id), quoting *First English* at 315).

- 17 -

1    The Court in *Lockary, supra*, found that summary judgment was not proper as

2  to substantive due process and equal protection claims, notwithstanding the

3  deferential standard of review applicable to such claims. (*Id* at 1155)  The Court

4  noted that the plaintiffs asserted the refusal to provide water service was pretextual,

5  that there was enough water to allow for population growth. (*Id* at 1155-56).  The

6  Court concluded there was enough evidence to create a triable issue of fact,

7  notwithstanding the fact that the conduct was, at least on its face, rationally related

8  to a legitimate government interest. (*Id*)  *Lockary's* holding is consistent with long

9  standing legal authority regarding substantive due process claims. *Spence v.*

10  *Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989).  (the deprivation of a property

11  interest is of constitutional stature if it is undertaken for an improper motive and

12  pretextual, arbitrary, and capricious, and without any rational basis). *Id*, quoting

13  *Hearn v. City of Gainesville*, 688 F.2d 1328, 1332 (11th Cir.1982)).

14    Plaintiffs allege the lack of water is the pretext for effectuating a no growth

15  policy.    The FAC alleges that to the extent there actually is an "emergency" water

16  shortage that has continued for decades, that it wasn't a true emergency at all, but

17  rather a purposefully maintained shortage.  (see e.g. FAC ¶¶ 41-43, 57-58)  In

18  addition, <u>while the County focuses only on water, the FAC also addresses the</u>

19  <u>arbitrary denial of sewer service, which District refuses to provide without</u>

20  <u>explanation, even though sewer lines are immediately available to the Plaintiffs'</u>

21  <u>lots.</u> (See FAC ¶ 13, 33)  The District's actions in simply refusing to accept or

22  process any applications for sewer or water service and ignoring a permit referral

23  from the County are part of this pattern of alleged arbitrary behavior. (*Id* ¶ 26, 33,

24  42)  Such allegations and others in the FAC demonstrate that Plaintiffs state a claim

25  for denial of substantive due process.  *Lockary* is controlling.

26

27

28

- 18 -

1       **6.**    **Public Policy Necessitates Following the Law and Compensating**

2 **Property Owners for Property Taken for Public Use**

3       County's final "argument" is that dismissal of this case is required by public

4 policy in order to protect public agencies from exposure to large takings claims

5 simply because they do not have sufficient water.  The argument is disingenuous as

6 Plaintiffs will prove that the County and District have chosen to prevent the

7 development of Plaintiffs' legal lots as part of a no growth policy that will convert

8 hundreds of these lots to open space.  Thus, local agencies with water shortages who

9 are seeking additional water and not seeking to limit development are not threated

10 by this litigation[14].

11       Thus, the real public policy at issue in this is whether local governments can

12 effectively implement politically popular "no growth" and "open space" policies by

13 converting legal, privately held lots to open space without compensating the owners

14 of those lots, using the device of permanently withholding utility service and

15 insisting that development cannot occur without that utility service?    In this case,

16 to add injury to injury, the lot owners actually paid special assessments to develop

17 the water and sewer infrastructure and are nevertheless being told they are mere

18 "potential users" with no right of service, even as the water and sewer lines run

19 directly by their lots.  What public policy interest favors that result?

20       In any event, this motion must be decided based on the law, not based on the

21 publicly desired result.  The County's MTD is largely an invitation to ignore the law

22 because the consequences would be harmful, oblivious to the consequences to the

23 people who put their savings into the dream of a retirement home in Cambria.

24 ///

25 ///

26

27 [14] County suggests there is potential liability to those lot owners on the current wait list.  These lot owners are "potential" water customers who the District intends to serve through its new desalination water source.  In other words, these lot owners are

28 like the Plaintiffs in *Gilbert* and other state cases the County cites because the County and District are not attempting to prevent the development of those lots.

1

## 7.    Conclusion

For the foregoing reasons, the County's Motion to Dismiss should be denied and County ordered to answer the First Amended Complaint.

Dated:  September 16, 2019          GREGORY BEAM & ASSOCIATES, INC.


By: _____ /s/ Mark D. Alpert _____
        Mark D. Alpert
        Attorneys for Plaintiffs and Petitioners

- 20 -

# PROOF OF SERVICE

*WINDELER, et al. v. CAMBRIA COMMUNITY SERVICES DISTRICT, ET AL.*

Case No. 2:17-cv-08536 -DSF- (JEMx)

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 23113 Plaza Pointe Drive, Suite 100, Laguna Hills, CA 92653. On September 16, 2019, I caused the foregoing document(s) described as:

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS OF DEFENDANT COUNTY OF SAN LUIS OBISPO**

to be served on the interested parties in this action as follows:

☐ By placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as stated below or [XX] by sending a copy as stated and addressed below:

### *SEE ATTACHED SERVICE LIST*

☒ **BY ELECTRONIC SERVICE**. I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 16, 2019, at Laguna Hills, California.

Sandra Beck

1

**SERVICE LIST**

2

*WINDELER, et al. v. CAMBRIA COMMUNITY SERVICES DISTRICT, ET AL.*

3

Case No. 2:19-cv-06325 -DSF(JEMx)

4

Rita L. Neal, Esq.
Jon Ansolabehere, Esq.

5

County Counsel
County of San Luis Obispo

6

1055 Monterey St., Room D320
San Luis Obispo, CA 93408

7

Phone: 805-781-5400
Fax: 805-781-4221

8

Email: jansolabehere@co.slo.ca.us

Michael M. McMahon, Esq.
CARMEL & NACCASHA, LLP
1908 Spring Street
Paso Robles, CA 93446
Phone: 805-226-4148
Fax: 805-226-4147
Email: mmcmahon@carnaclaw.com

9

10

*Attorneys for Defendant and Respondent,*
*COUNTY OF SAN LUIS OBISPO*

*Attorneys for Defendant and Respondent,*
*CAMBRIA COMMUNITY SERVICES*
*DISTRICT*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

PROOF OF SERVICE