Gregory B. Beam (SBN 102443)
Mark D. Alpert (SBN: 138152)
GREGORY BEAM & ASSOCIATES, INC.
23113 Plaza Pointe Drive, Suite 100
Laguna Hills, CA  92653
(949) 598-5800
malpert@beamlaw.net

Attorneys for Plaintiffs,
Michael Windeler, Karen Windeler, Joy Salerni,
Jeff Schneider, Edna Schneider, Barbara Knight,
Kent Knight, Bruce DePaola, Terri DePaola

UNITED STATES DISTRICT COURT OF CALIFORNIA

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WINDELER, KAREN WINDELER, JOY SALERNI, JEFF SCHNEIDER, EDNA SCHNEIDER, BARBARA KNIGHT, KENT KNIGHT, BRUCE DEPAOLA, TERRI DEPAOLA,<br><br>　　　Plaintiffs and Petitioners,<br><br>vs.<br><br>CAMBRIA COMMUNITY SERVICES DISTRICT;<br>COUNTY OF SAN LUIS OBISPO,<br><br>　　　Defendants and Respondents. | Case No. 2:19-cv-06325-DSF(JEMx)<br><br>**REQUEST TO TAKE JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITIONS TO MOTION TO DISMISS OF COUNTY OF SAN LUIS OBISPO AND MOTION TO DISMISS OF CAMBRIA COMMUNITY SERVICES DISTRICT**<br><br>Date:　　　October 7, 2019<br>Time:　　　1:30 p.m.<br>Location:　Courtroom 7D<br>　　　　　　First Street Courthouse<br>　　　　　　350 West 1st Street<br>　　　　　　Los Angeles, CA<br><br>Assigned to<br>Honorable Judge Dale S. Fischer<br><br>Complaint filed:  July 24, 2019 |

Pursuant to Federal Rules of Evidence, Rule 201, Plaintiffs MICHAEL

WINDELER, KAREN WINDELER, JOY SALERNI, JEFF SCHNEIDER, EDNA

SCHNEIDER, BARBARA KNIGHT, KENT KNIGHT, BRUCE DEPAOLA, and

- 1 -

TERRI DEPAOLA ("Plaintiffs") request that the Court take judicial notice of the following matters in support of their Oppositions to the Motion to Dismiss of the County of San Luis Obispo and the Motion to Dismiss of Cambria Community Services District:

       1.      Resolution 217-265 of County of San Luis Obispo Board of Supervisors, dated October 17, 2017, a copy of which is attached hereto as Exhibit 1.

       2.      Reply of County of San Luis Obispo in Support of Motion to Dismiss filed in Case 2:17-cv-08536-DSF, a copy of which is attached hereto as Exhibit 2.

Dated:  September 16, 2019         GREGORY BEAM & ASSOCIATES, INC.

                  By:      /s/ Mark D. Alpert
                      Mark D. Alpert
                      Attorneys for Plaintiffs and Petitioners

EXHIBIT "1"

Attachment 2

# IN THE BOARD OF SUPERVISORS
COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA

Tuesday, October 17, 2017

PRESENT: Supervisors Bruce S. Gibson, Adam Hill, Lynn Compton, Debbie Arnold and
Chairperson John Peschong

ABSENT: None

RESOLUTION NO. 2017-265

RESOLUTION DENYING THE APPEAL OF MICHAEL AND KAREN WINDELER,
AFFIRMING THE DECISION OF THE PLANNING COMMISSION AND DENYING THE
APPLICATION OF MICHAEL AND KAREN WINDELER FOR VARIANCE/ COASTAL
DEVELOPMENT PERMIT DRC2016-00111

The following resolution is now offered and read:

**WHEREAS**, on July 13, 2017, the Planning Commission of the County of San Luis
Obispo (hereinafter referred to as the "Planning Commission") duly considered and denied the
application of Michael and Karen Windeler for Variance/Coastal Development Permit
DRC2016-00111 to allow the processing of a land use permit application for a new single family
residence on a 4,000 square-foot lot on Ramsey Drive in Cambria without verification of
community water and sewer availability; and

**WHEREAS**, Michael and Karen Windeler have appealed the Planning Commission's
decision to the Board of Supervisors of the County of San Luis Obispo (hereinafter referred to as
the "Board of Supervisors") pursuant to the applicable provisions of Title 23 of the San Luis
Obispo County Code; and

**WHEREAS**, a public hearing was duly noticed and conducted and a determination and
decision was made by the Board of Supervisors on October 17, 2017; and

**WHEREAS**, at said hearing, the Board of Supervisors heard and received all oral and
written protests, objections, and evidence, which were made, presented, or filed, and all persons

Page 1 of 5

3

EXHIBIT 1

Attachment 2

present were given the opportunity to hear and be heard in respect to any matter relating to said appeal; and

WHEREAS, the Board of Supervisors has duly considered the appeal and finds that the appeal should be denied and the decision of the Planning Commission should be affirmed, and that the application (DRC2016-00111) should be denied for the reasons described in the findings set forth below.

NOW, THEREFORE, BE IT RESOLVED AND ORDERED by the Board of Supervisors of the County of San Luis Obispo, State of California, as follows:

1. That the recitals set forth hereinabove are true, correct and valid.

2. That this project is found to be statutorily exempt from the California Environmental Quality Act under the provisions of Public Resources Code section 21080(b)(5), which provides that CEQA does not apply to projects which a public agency rejects or disapproves.

3. That the Board of Supervisors makes all of the findings of fact and determinations set forth in Exhibit A attached hereto and incorporated by reference herein as though set forth in full.

4. That the appeal filed by Michael and Karen Windeler is denied, that the decision of the Planning Commission is affirmed, and that the application for Variance/Coastal Development Permit DRC2016-00111 is hereby denied for the reasons described in the findings set forth below.

Upon motion of Supervisor Gibson, seconded by Supervisor Hill, and on the following roll call vote, to wit:

AYES: Supervisors Gibson, Hill, Compton, Arnold and Chairperson Peschong

NOES: None

ABSENT: None

ABSTAINING: None

the foregoing resolution is hereby adopted.

Chairperson of the Board of Supervisors

Page 2 of 5

4

EXHIBIT 1

Attachment 2

ATTEST:

Tommy Gong
Clerk of the Board of Supervisors
By: *Sandy Currens*
Deputy Clerk

[SEAL]

APPROVED AS TO FORM AND LEGAL EFFECT:

RITA L. NEAL
County Counsel

By: */s/Matthew Christian*
Deputy County Counsel

Dated:  September 12, 2017

| | | |
|---|---|---|
| STATE OF CALIFORNIA, | ) | |
| | ) | ss |
| County of San Luis Obispo | ) | |

I, Tommy Gong_____, County Clerk and ex-officio Clerk of the Board of Supervisors, in and for the County of San Luis Obispo, State of California, do hereby certify the foregoing to be a full, true and correct copy of an order made by the Board of Supervisors, as the same appears spread upon their minute book.

WITNESS my hand and the seal of said Board of Supervisors, affixed this 24th day of October, 2017.

Tommy Gong
County Clerk and Ex-Officio Clerk of the
Board of Supervisors

By: *Sandy Currens*
Deputy Clerk

(SEAL)

Page 3 of 5

5

EXHIBIT 1

Attachment 2

EXHIBIT A - FINDINGS

*Environmental Determination*

A.     This project is found to be statutorily exempt from the California Environmental Quality Act under the provisions of Public Resources Code section 21080(b)(5), which provides that CEQA does not apply to projects which a public agency rejects or disapproves.

*Variance/Coastal Development Permit*

B.     The variance constitutes a grant of special privileges inconsistent with the limitations upon other properties in the vicinity along Ramsey Drive in Cambria and land use category in which it is situated because no other landowner with a vacant lot in the vicinity has been able to develop a house without connecting to the community water supply and sewer. In fact, on a regular basis, County staff informs Cambria landowners that they need to obtain an intent-to-serve letter from the CCSD to develop their lot. Since there is nothing particularly unique distinguishing this property from any other vacant parcel in the vicinity, granting a variance to this one landowner would be a special privilege inconsistent with the way other Cambria landowners in the vicinity have been treated in the past.

C.     There are no special circumstances applicable to the property relating to size, shape, topography, location, or surroundings. The subject parcel has no unique characteristics distinguishing it from any other vacant residential parcel in the vicinity along Ramsey Drive in Cambria. Therefore, the parcel should be subject to a strict application of Title 23, including the North Coast planning area standards and LCP policies, consistent with how these regulations have been applied to other residential parcels in the vicinity. The applicant's cover letter dated April 26, 2017 states: "The special circumstances that should allow them to develop without District water and sewer service is the simple fact that they are not eligible for these services because they do not have a District wait list position." This "special circumstance" is not related to the property's size, shape, topography, location, or surroundings. Furthermore, not being on the District's waitlist is not a special circumstance as there are many other vacant residential lots in Cambria that are not on the District's waitlist.

D.     The requested variance would authorize a use that is not otherwise authorized because Section 23.04.044(e) does not allow for a single family residence with a well and septic on a lot that is smaller than one acre.

E.     The granting of the variance adversely affects the public health and safety of persons, is materially detrimental to the public welfare, and is injurious to nearby property or improvements, because:

   i.     Locating a well and septic system on a 4,000 square-foot lot would not allow for adequate separation distances between the domestic well and leach field for the septic, resulting in potential water contamination. To protect public health, the minimum separation distance between a domestic well and septic system is 100 feet. This separation cannot be achieved on the 4,000 square-foot (40' x 80') lot. The subject property is less than 10 percent of the County's one acre minimum site area for developing a single family home with a well and septic system.

Page 4 of 5

6

EXHIBIT 1

Attachment 2

ii.   Trucking-in and storing water would allow for more growth in Cambria than can be sustainably supported by existing resources and infrastructure, and could be unreliable in the long-term. The application does not specify where the water would come from, how long the source would be available, or how often it would have to be delivered. If the water originates locally it could adversely impact other County water supplies. Such a plan could also violate the County's (or another jurisdiction's) water exportation restrictions.

iii.   If the variance and Title 19 appeals were approved and the Growth Management Ordinance amended to allow development in Cambria without an intent-to-serve letter, the County would be compelled to allow other properties in a similar situation to also develop. According to the CCSD's 2006 Buildout Reduction Program, the number of vacant lots in Cambria exceeds Cambria's estimated buildout (4,650 residential water connections) by 1,831. Thus, allowing new development on all vacant lots in Cambria, without regard for the County's growth limitations, would not only be inconsistent with the growth assumptions in the County's LCP, but would also have widespread public health, safety, welfare, and environmental impacts as growth would outpace Cambria's resource and infrastructure availability.

F.   The requested variance is inconsistent with numerous provisions of the San Luis Obispo County General Plan, Coastal Zone Land Use Ordinance, and LCP including but not limited to:
   i.    Section 23.04.430 – Availability of Water Supply and Sewage Disposal Services
   ii.   Section 23.04.044(e) – Minimum Site Area for Residential Uses
   iii.  Section 23.05.034 – Grading standards
   iv.   Public Works LCP Policy #1 – Availability of Service Capacity
   v.    North Coast Area Plan – Cambria community wide standard #8

**EXHIBIT "2"**

1   RITA L. NEAL, SBN 151156
    County Counsel
2   TIMOTHY MCNULTY, SBN 138600
    Assistant County Counsel
3   MATTHEW W. CHRISTEN, SBN 263612
    Deputy County Counsel
4   County of San Luis Obispo
    County Government Center, Room D320
5   San Luis Obispo, CA 93408
    Telephone: (805) 781-5400
6   Facsimile: (805) 781-4221
    Email: mchristen@co.slo.ca.us
7
    Attorneys for Defendant
8   COUNTY OF SAN LUIS OBISPO

9                    UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                         WESTERN DIVISION

12

13   MICHAEL WINDELER, ET AL.,          Case No. 2:17-cv-08536-DSF-(JEMx)

14         Plaintiffs and Petitioners,   **COUNTY'S REPLY TO PLAINTIFFS'
                                          OPPOSITION TO ITS NOTICE OF
15   vs.                                  MOTION AND MOTION TO DISMISS
                                          PLAINTIFFS' FIRST AMENDED
16   CAMBRIA COMMUNITY WATER             PETITION AND COMPLAINT AND/OR
     DISTRICT, ET AL.,                    MOTION TO ABSTAIN AND STAY
17                                        FURTHER PROCEEDINGS**
          Defendants and Respondents.
18
                                          Date: March 12, 2018
19                                        Time: 1:30 p.m.
                                          Location: Courtroom 7D
20
                                          Assigned to the Honorable Judge Dale S.
21                                        Fischer

22

23                                        *Complaint Filed: December 1, 2017*

24

25

26

27

28

                                          1
        County's Reply to Plaintiffs' Opposition to Its Notice of Motion and Motion to Dismiss

                              EXHIBIT 2                                    8

1

<u>**TABLE OF CONTENTS**</u>

2

TABLE OF CONTENTS.................................................................1

3

TABLE OF AUTHORITIES .........................................................2

4

I.   INTRODUCTION.................................................................5

5

II.   *LOCKARY V. KAYFETZ* IS NOT DISPOSITIVE OF PLAINTIFFS' CLAIM

6

THAT THEY HAVE SUFFERED A TAKING OF THEIR REAL PROPERTY.......5

7

III.   PLAINTIFFS' BALD ASSERTIONS THAT IT HAS STANDING ARE

8

UNCONVINCING..................................................................7

9

IV.   NO PLAINTIFF CAN SURVIVE THEIR FAILURE TO COMPLY WITH

10

THE *WILLIAMSON* COUNTY RIPENESS STANDARD TO ESTABLISH

11

STANDING ...........................................................................9

12

V.   PLAINTIFFS' OUT-OF-CIRCUIT *PULLMAN* ANALYSIS IS BASELESS..16

13

VI.   CONCLUSION .................................................................20

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 6

*Craik v. County of Santa Cruz*, 81 Cal.App.4th 880 (2000) ........................... 17

*C-Y Development Co. v. City of Redlands*, 703 F.2d 375 (9th Cir. 1983) .................... 19

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496 (9th Cir. 1990)
.................................................................................................. 8, 14

*Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir. 1987) ........................... 11, 14, 15

*Kollsman v. city of Los Angeles*, 737 F.2d 830 (9th Cir. 1984) ....................... 17

*Lockary v. Kayfetz*, 587 F.Supp. 631 (N.D.Cal.1984) ........................................... 6

*Lockary v. Kayfetz*, 917 F.2d 1150 (9th Cir.1990) ........................................... 5, 6

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) ..................... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................................... 7

*MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340 (1986) ........................ 7

*Meredith v. City of Winter Haven*, 320 U.S. 228 (1943) ................................... 19

*Miller v. Board of Supervisors*, 122 Cal.App.3d 539 (1981) ........................... 17, 18

*Murphy v. New Milford Zoning Com'n*, 402 F.3d 342 (2d Cir. 2005) .................... 15, 16

*Pinheiro v. Civil Service Commission for the County of Fresno*, 245 Cal.App.4th 1458
(2016) .................................................................................................. 18

*Planned Parenthood of Central New Jersey v. Farmer*, 220 F.3d 127 (3d Cir. 2000) . 16

*Railroad Commision of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ................... passim

*Ray Charles Foundation v. Robinson*, 795 F.3d 1109 (9th Cir. 2015) .................... 9, 10

*San Remo Hotel, L.P. v. San Francisco City and County*, 364 F.3d 1088 (9th Cir.2004)
.................................................................................................. 10, 16

*Sederquist v. City of Tiburon*, 590 F.2d 278 (9th Cir. 1978) ........................... 19

*Shelter Creek Development Corp. v. City of Oxnard*, 838 F.2d 375 (9th Cir. 1988) 9, 11

*Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014) ............................... 15, 16

*Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401 (9th Cir.1996) .......... 10, 11

County's Reply to Plaintiffs' Opposition to Its Notice of Motion and Motion to Dismiss

EXHIBIT 2                                                                10

1   *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997)...................7, 8, 9, 12

2   *Sykes v. State of Cal.*, 497 F.2d 197 (9th Cir. 1974).........................................................6

3   *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473

4   U.S. 172 (1985).....................................................................................................passim

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Plaintiffs' Opposition brief does not successfully refute that they have failed to plead that they have a protectable property interest in their Complaint, lack standing and have claims suitable for the Court to apply the *Pullman* abstention.  Distilling the Plaintiffs' arguments in their Opposition and reliance on inapposite precedent requires looking at the subtext throughout the brief, which is that Supreme Court, Ninth Circuit and state court precedent does not support the claims in their Complaint. The Opposition brief is a desperate attempt to evade the binding precedent applicable to their claims, all of which clearly dispose of Plaintiffs' claims that they have a property interest that demands constitutional protection, that they have standing, and that this Court has subject-matter jurisdiction over this case.  The blatant example of this is Plaintiffs' attempt to ignore Ninth Circuit precedent and, instead, rely on Third Circuit precedent to argue that their claims, in the alternative, aren't perfectly suited for the Court to apply the *Pullman* abstention.  As will be discussed in detail, below, these arguments must fail and the County, again, requests the Court to dismiss all causes of action with prejudice or, in the alternative, dismiss the state law claims and abstain from considering the federal constitutional claims under the *Pullman* abstention doctrine.

## II.     *LOCKARY V. KAYFETZ* IS NOT DISPOSITIVE OF PLAINTIFFS' CLAIM THAT THEY HAVE SUFFERED A TAKING OF THEIR REAL PROPERTY

In their opposition papers, Plaintiffs, without elaboration, argue that *Lockary v. Kayfetz*, 917 F.2d 1150 (9th Cir. 1990) is dispositive of the present case.  That is not so.  *Lockary v. Kayfetz* presented a situation where the plaintiffs "submitted evidence that Marin County conditions the grant of building permits on first securing water hookups from [defendant and water purveyor, Bolinas Community Public Utility District (BCPUD)] for their residentially zoned land." *Lockary, supra*, 917 F.2d at

1    1155. The BCPUD adopted a water moratorium on new water hookups and the

2    plaintiffs never received water from BCPUD as a result of the moratorium. *Id.* at 1153.

3    In ruling on BCPUD's motion to dismiss, the District Court preserved the

4    constitutional claims against the BCPUD, which consist of a claim that BCPUD's

5    refusal to grant water hookups constitutes a regulatory taking and violation of

6    substantive due process and equal protection. *Id.* at 1152-1153; *Lockary v. Kayfetz*,

7    587 F.Supp. 631 (N.D.Cal.1984).

8       *Lockary* is not dispositive of the Plaintiffs' action against the County. As the

9    Plaintiffs' correctly admit, the "County...is not the provider of water and sewer."

10    (Opposition p. 8, line 3.)  Since it is not the provider of water and sewer in Cambria,

11    the County has never denied the provision of water and sewer to the Plaintiffs, which

12    was central to the *Lockary* plaintiffs' constitutional claims. Therefore, *Lockary* is

13    inapposite to the case at bar against the County and cannot be applied to the County's

14    action of denying the Windelers' variance application.

15       Further, Plaintiffs' claim, in footnote three of the Opposition and in the

16    Complaint at page 11, paragraph 40, that the County is acting in concert with Cambria

17    Community Services District is uncorroborated and based on speculation.  Plaintiffs

18    have not pled any facts in their First Amended Complaint or Opposition papers that

19    would even hint at such concerted action.  Unsupported legal conclusions, like this

20    one, should be dismissed with prejudice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21    Further, the case cited by Plaintiffs in footnote 3 of the Opposition involved an actual

22    cause of action alleging conspiracy against the plaintiffs in that case. *Sykes v. State of*

23    *Cal.*, 497 F.2d 197, 199 (9th Cir. 1974)..  No such cause of action has been filed

24    against the County. Thus, there is no basis to rule that the District's actions in denying

25    the will-serve letter to the Plaintiffs are effectively imputed to the County or vice

26    versa, as Plaintiffs suggest in footnote three.

27    //

28    //

### III.   PLAINTIFFS' BALD ASSERTIONS THAT IT HAS STANDING ARE UNCONVINCING

Plaintiffs do not, as they baldly assert, have three injuries in fact, including the taking of value of Plaintiffs' real property and denial of the right to water and sewer service. (Opposition, page 9, lines 3-6) The alleged taking injury must be premised on establishing that the Plaintiffs' injuries are actual injuries, not hypothetical or conjectural. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As discussed in the County's Motion and touched on further, below, the Plaintiffs' alleged taking injury is hypothetical and conjectural because the Plaintiffs have not complied with the ripeness requirements established in *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City,* 473 U.S. 172 (1985) requiring a showing that the County has made a final decision on an application for development and a variance for each Plaintiff and that the Plaintiffs have sought just compensation through state procedures before seeking a takings claim in federal court. *Id.* at 186-188, 194-195. The purpose of such a process in regulatory taking claims is to determine whether the government has gone "too far" in implementing its regulation that results in a taking. *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 734 (1997). "A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986). Having failed to comply with *Williamson County,* the Plaintiffs have no injuries in fact to their real property. *Lujan, supra,* 504 U.S. at 560 (requiring a showing of "a causal connection between the injury and the conduct complained of.").

The County has not acted in a manner to support an alleged taking of value of Plaintiffs' real property. Plaintiffs' Opposition brief relies on precedent involving situations dissimilar to this case where a local land use authority acted on development applications which examined the extent of actual development allowed under relevant zoning regulations, taking into consideration regulatory development standards (i.e. property line setbacks, height, density, developable lot area, biological or geological

1   constraints, etc.). *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 739

2   (Defendant's overlay of biological constraints on plaintiff's property indisputably

3   dictate the extent of allowable development.); *Del Monte Dunes at Monterey, Ltd. v.*

4   *City of Monterey*, 920 F.2d 1496, 1503, 1506 ("The City, after extended processes, set

5   forth the development it would permit, with express conditions" taking into account

6   access to the property, "density, number of units, location on the property, and in other

7   respects, as stated in the resolution [including biological and visual resource issues].").

8          The County has not reviewed development applications from any of the

9   Plaintiffs because the CCSD does not have enough water to supply new development

10  with water service.  The County, in the Planning Department's staff report to the Board

11  of Supervisors, which is part of the Board of Supervisors' administrative record,

12  clearly states that "[t]he [Windeler] parcel could be developed in the future when a

13  new community water supply is established or by transferring a water meter from

14  another developed property in Cambria...." (Motion RJN, Exhibit F, p. 6) It is

15  abundantly clear that the County would allow development on vacant lots in Cambria

16  if there is new water or a property owner can work with an owner of a developed lot to

17  transfer the water meter to the vacant parcel.  The County has never foreclosed

18  allowing development on any vacant parcel in Cambria when water becomes available

19  for vacant parcels.  Thus, the County has not acted in a manner that denied all

20  economically viable use of land because, unlike the defendants in the cases noted

21  above, the County has not even had a chance to examine the physical extent of

22  potential development allowable under the zoning regulations on the Plaintiffs' lots.

23  The County vehemently denies that it has acted conclusively on any of the Plaintiffs'

24  parcels' physical development potential.  Moreover, to prove this point, had any

25  Plaintiffs requested a waiver from the application requirement to submit a will-serve

26  letter, under Coastal Zone Land Use Ordinance section 23.02.024 (Reply RJN, Exh.

27  E), with the application, there would have been an opportunity for the County to

28

8

1  approve a land use permit without the will-serve letter in hand at the time of a Planning

2  Department or Planning Commission hearing.

3      Therefore, considering the foregoing, the relevant alleged property right at issue,

4  here, is the Plaintiffs' alleged property right in CCSD water service (which doesn't

5  constitute a property right under California law since there is no right in potential

6  water service, as discussed in the County's Motion at 15-18), not the Plaintiffs' value

7  in their real property.

8

9      **IV.   NO PLAINTIFF CAN SURVIVE THEIR FAILURE TO COMPLY**
         **WITH THE *WILLIAMSON COUNTY* RIPENESS STANDARD TO**

10           **ESTABLISH STANDING**

11

12      As recently as 2015, the Ninth Circuit, citing to *Shelter Creek Development*

13  *Corp. v. City of Oxnard*, 838 F.2d 375, 377 (9th Cir.1988), affirmed that the ripeness

14  of claims is directly related to whether the Ninth Circuit has subject matter jurisdiction

15  to hear a case. *Ray Charles Foundation v. Robinson*, 795 F.3d 1109, 1116 (9th

16  Cir.2015)  Despite Plaintiffs' desperate assertions to couch the ripeness issue as

17  prudential, not jurisdictional (Opposition, p. 2), Plaintiffs still must prove that their

18  claims are fit for judicial review, i.e. ripe for consideration by this court.

19      No Plaintiff has a claim that is fit for review because they cannot survive the

20  ripeness standard in *Williamson County Regional Planning Com'n v. Hamilton Bank of*

21  *Johnson City*, 473 U.S. 172 (1985) ("*Williamson County*"), requiring the following: (1)

22  receipt of a final action from the government on one meaningful development permit

23  application and one meaningful application for a variance; and (2) seek compensation

24  for inverse condemnation before asserting a takings claim in federal court. *Id.* at 194-

25  195.  The Plaintiffs' attempt to sidestep the *Williamson County* ripeness standard by

26  claiming the standard is a prudential hurdle ignores the fact that the Supreme Court

27  noted in *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997), that it was

28  reviewing the ripeness question under prudential ripeness principles because, unlike

1   the County's challenge to the Plaintiffs' Article III jurisdiction, the defendant in

2   *Suitum* did not question the court's Article III jurisdiction over the claim, not because

3   the *Williamson County* standard cannot serve as a jurisdictional standard. *Id.* at 733, fn.

4   7.

5          First, as stated in the County's Motion, the Windeler Plaintiffs cannot survive

6   the requirement to seek compensation in state court prior to bringing a claim in federal

7   court that it has not received just compensation under the Fifth Amendment for an

8   alleged taking of their property. "The Fifth Amendment does not proscribe the taking

9   of property; it proscribes taking without just compensation." *Williamson County,*

10  *supra,* 473 U.S. at 194. "[I]f a State provides an adequate procedure for seeking just

11  compensation, the property owner cannot claim a violation of the Just Compensation

12  Clause until it has used the procedure and been denied just compensation." *Id.* at 195.

13         The Plaintiffs have failed to counter the County's assertion that the Windeler

14  Plaintiffs cannot meet the second *Williamson County* ripeness requirement. Notably,

15  the Plaintiffs cite to non-Ninth Circuit Court precedent to support their argument that a

16  federal court may ignore the second prong of the *Williamson* ripeness doctrine in a

17  blatant attempt to evade California's well-established state court process for reviewing

18  an inverse condemnation claim. As this Court knows, non-Ninth Circuit Court

19  precedent is not binding and the Court cannot disregard applicable Ninth Circuit Court

20  precedent "in favor of out-of-circuit precedent." *San Remo Hotel, L.P. v. San*

21  *Francisco City and County,* 364 F.3d 1088, 1095 (9th Cir.2004). Notwithstanding the

22  fact that Plaintiffs sole citation to Ninth Circuit precedent to support their argument

23  that the Plaintiffs have complied with the "state compensation" requirement consists of

24  *a facial takings claim in Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401

25  (9th Cir.1996), the Ninth Circuit found that the facial takings claim was not ripe

26  because, like the Plaintiffs in this case, Sinclair Oil's facial claim is "premised upon

27  the denial of a property's economically viable use." *Id.* at 407; Complaint, p. 15, ¶ 53.

28  The *Sinclair Oil* court reasoned that when a plaintiff alleges denial of all economically

1    viable use of his or her land, the extent to which the government has compensated a
2    property owner after following proper state procedures is relevant to a claim in federal
3    court for determining whether the plaintiff has been given just compensation for such a
4    loss. *Id.* at 406-407.  Ultimately, the Plaintiffs cannot provide any basis under Ninth
5    Circuit or Supreme Court precedent that would allow them to evade the second
6    *Williamson County* ripeness requirement.  In fact, all the Plaintiffs must seek just
7    compensation through state procedures before establishing a ripe takings claim in
8    federal court, regardless of the jurisdictional posture.  Since they have not complied
9    with this requirement, causes of action three through six must be dismissed with
10   prejudice.[1]

11           Second, the *Williamson County* futility exception does not apply to the non-
12   Windeler plaintiffs to avoid the requirement to apply for a variance before establishing
13   that their claims are ripe under *Williamson County.*  The finality prong of the
14   *Williamson County* ripeness standard may be excused if it would be an idle and futile
15   act. *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir.1987). The Plaintiffs do
16   not cite to any precedent where a court found that a plaintiff successfully argued that it
17   would be futile to seek a final decision on a variance from a zoning code provision
18   because the government denied another property owner in the same town a variance
19   from the same zoning code provision.  In fact, the County could not find such
20   precedent and believes that no such precedent exists.

21           The County never conceded that it would be futile for the non-Windeler
22   Plaintiffs to apply for a variance.  While the Plaintiffs attempt to assert that the County
23   "does not dispute that it would be futile for the 'non-Windeler' Plaintiffs to seek
24   variance application or that there is some potential use for their properties that could be
25   approved," the County cannot intuit what the non-Windeler Plaintiffs variance

26
───────────────────────
27   [1] As noted in the County's Motion, on page 20, the substantive and procedural due process claims are
     intricately linked to the takings claim in the ripeness analysis, both of which require plaintiffs to
28   satisfy the *Williamson County* ripeness threshold before a federal court may hear those due process
     claims. *Shelter Creek Development Corp. v. City of Oxnard*, 838 F.2d 375, 379 (9th Cir.1988).

1   application would look like when the County has never seen such applications.  The

2   Supreme Court in *Suitum v Tahoe Regional Planning Agency*, 520 U.S. 725 (1997)

3   illuminated the reasoning behind having each property owner receive a final decision

4   before establishing a ripe takings claim.  It noted that the *Williamson County*

5   "precedents addressed the virtual impossibility of determining what development will

6   be permitted on a particular lot of land when its use is subject to the decision of a

7   regulatory body invested with great discretion, which it has not even been asked to

8   exercise." *Id.* at 739.  Similarly, the non-Windeler Plaintiffs have not even asked the

9   County to act on a variance application for their properties.  Plaintiffs make an

10  unsubstantiated assumption that the non-Windeler Plaintiffs' variance applications

11  would be identical and be processed by the same County planner, the staff

12  recommendation supervised by the same Planning Director and considered by the same

13  Planning Commissioners.  Moreover, the Plaintiffs apparently equate the physical

14  characteristics (geographical location, size, slope gradient, etc.) of the Windelers'

15  property to the non-Windelers' properties in furtherance of this false narrative.

16          Contrary to those baseless assumptions, the variables for potential variance

17  applications are endless. For example, there are a myriad of variations of potential

18  home designs that the non-Windeler applicants could apply for with differing uses.

19  Considering the Plaintiffs are allegedly all non-residents of California, it's reasonable

20  to assume that some or all the Plaintiffs' subject parcels were acquired for non-

21  permanent, seasonal use.  A non-Windeler Plaintiff could apply for a variance that is

22  exceedingly different than the Windeler variance request in relation to the amount and

23  frequency of proposed trucked-in water depending on the seasonal use of the home,

24  size of the home and number of water fixtures.  Further, considering none of the non-

25  Windeler Plaintiffs' parcels are on the same block or even within a few blocks of the

26  Windeler parcel, the non-Windeler Plaintiffs' parcel may not present similar public

27  health issues relative to trucking in water or have other restraints applied to their

28  parcels. (Reply RJN, Exhibit A, illustrating with a circle icon the disparate locations of

1   the Plaintiffs' properties in Cambria.)  Further, the County staff planner who processed

2   the Windeler variance, Airlin Singewald, is now the supervisor of the Department of

3   Planning & Building's Housing and Economic Development Section, an area of the

4   Planning Department that has nothing to do with processing variances.

5   (http://www.slocounty.ca.gov/Departments/Planning-Building/Housing.aspx.)

6   Importantly, any future staff recommendation on a variance will be ultimately decided

7   by a new Planning Director, which is in an active recruitment at the County and will

8   likely be filled by April or May, 2018, who may very well have an entirely different

9   approach to this situation than the Planning Director at the helm when staff reviewed

10   the Windeler variance, and will ultimately make the final call on the staff

11   recommendation for the Planning Commission's consideration. (Reply RJN, Exhibit

12   B).  Finally, the makeup of the Planning Commission has changed with the

13   appointment of a seasoned and influential Planning Commissioner, Jay Brown,[2] in

14   August 2017 and the election of a new chair and vice-chair in January 2018, who may

15   lead the Planning Commission down a different path with subsequent variance requests

16   in Cambria. (Reply RJN, Exh. C, p.2; Exh. D.)  In sum, it is plain to see that there are

17   too many variables at play with the County staff, Planning Commissioners, and details

18   of variance proposals from non-Windeler Plaintiffs with property geographically

19   distinct from the block where the Windelers have their parcel to state that the

20   submission of a variance from the non-Windeler Plaintiffs is futile.  It, simply, is not

21   known how such applications will be considered by the County.  Therefore, the non-

22   Windeler Plaintiffs cannot rely on the futility exception to escape the *Williamson*

23   *County* ripeness requirement that demands that they submit a variance to establish the

24   finality of a government action, which would allow the County to exercise its

25

26

27   [2] Jay Brown served as a Planning Commissioner for 10 years in Monterey County, several years
     longer than any current Planning Commissioner.

28   http://www.slocounty.ca.gov/Departments/Planning-Building/Current-and-Environmental-
     Planning/Services/Planning-Commission.aspx.

County's Reply to Plaintiffs' Opposition to Its Notice of Motion and Motion to Dismiss

EXHIBIT 2                                           20

1   significant discretion, before pursuing as-applied constitutional claims against the

2   County.

3        Plaintiffs' cited cases to support the non-Windeler Plaintiffs' futility exception

4   claim under *Williamson County* do not establish that the futility exception applies to the

5   non-Windeler Plaintiffs. In *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920

6   F.2d 1496 (9th Cir.1990), the court found that the futility exception applied to the

7   plaintiff's situation, excusing that plaintiff from applying for a variance, "[b]ecause the

8   nature and density of [the plaintiff's] proposed development did not conflict with express

9   terms in the City's zoning ordinances or its general land use plan [and] a variance would

10   not have resulted led to tentative tract map approval." *Id.* at 1502.   Unlike the plaintiff

11   in *Del Monte Dunes,* here, the Plaintiffs' proposals would conflict with the requirement

12   to provide a will-serve letter to the County when submitting an application for

13   development and a variance is required (that is, if an applicant doesn't receive a waiver

14   from this requirement to file the application) to receive approval of development without

15   the will-serve letter.   Therefore, *Del Monte Dunes* is not supportive of Plaintiffs' claim

16   of *Williamson County* futility.

17        The Plaintiffs also cite *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003

18   (1992) to support its futility argument. (Opposition, p. 10).   In *Lucas*, however, the

19   defendant agency "stipulated below that no building permit would have been issued

20   under the 1988 Act, application or no application" and such "submission would have

21   been pointless." *Id.* at 1014, fn.3.   Here, the County has not stipulated or conceded in

22   any manner that the non-Windeler Plaintiffs' submission of a variance application would

23   be pointless.   Therefore, *Lucas* is not supportive of Plaintiffs' claim of *Williamson*

24   *County* futility.

25        The court in *Kinzli v. City of Santa Cruz, supra*, 818 F.2d 1449, cited by Plaintiffs

26   in page 10 of their opposition, specifically rejected the District Court's finding that the

27   plaintiff met the *Williamson County* futility exception because the plaintiff hadn't even

28   submitted one meaningful application for development and received a decision on such

1  application. *Id.* at 1455. The court concluded that the plaintiff's takings claim did not
2  meet the finality requirement under *Williamson County* and, thus, was not ripe since the
3  plaintiff failed to submit a meaningful application for development or variance. *Ibid.*
4  Contrary to Plaintiffs' assertion that the *Kinzli* decision stands for the proposition that
5  "submission of a development plan is excused if such an application would be 'an idle
6  and futile act'," it upheld the requirement to submit at least one development plan
7  application and a variance application. *Ibid.* Therefore, *Kinzli* is not supportive of
8  Plaintiffs' claim of *Williamson County* futility.

9      Finally, Plaintiffs attempt to persuade the Court, again, to heed non-Ninth Circuit
10  precedent on the futility issue should fall flat. While the Court could simply choose to
11  ignore the cited cases, it's important to note that Plaintiffs have misconstrued the
12  holdings of these cases in a covert attempt to portray them in a light favorable to their
13  position on the futility issue. In *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir.
14  2014), the court found that the plaintiff met the finality requirement of *Williamson*
15  *County* because resubmission of development applications would be futile in light of the
16  town's continual adoption of ordinances which unfairly targeted plaintiff in an effort to
17  prevent plaintiff from developing her property. *Id.* at 562-563. In *Murphy v. New Milford*
18  *Zoning Com'n*, 402 F.3d 342 (2d Cir. 2005), the court considered the plaintiffs' claim
19  that New Milford's zoning code enforcement cease and desist order to cease the use of
20  their home as a place of religious assembly for dozens of people violated, among other
21  claims, their First Amendment rights to assemble peaceably and to exercise their religion
22  freely. *Id.* at 345-346. There was no allegation that the plaintiffs suffered a taking of
23  private property without just compensation. Rather, the court determined that the
24  *Williamson County* ripeness analysis applies to the plaintiffs' claims. *Id.* at 352. In doing
25  so, the court concluded that the Murphys failed to satisfy the first prong of *Williamson*
26  *County* because they did not follow the proper administrative procedures and receive a
27  final determination from the Zoning Board of Appeals on the alleged zoning code
28

1  violation or a variance from the application of the zoning code provision to the use of
2  their home as a place of religious assembly. *Id.* at 352-353.

3        Here, *Sherman* has no relevance to the present case because the County has not
4  adopted any ordinance that targets any of the Plaintiffs and Plaintiffs cannot plead such
5  facts. Further, notwithstanding the fact that *Murphy* is fundamentally about First
6  Amendment rights, not Fifth Amendment rights, it still supports the County's position
7  that Plaintiffs must comply with the *Williamson County* finality requirement to establish
8  ripe claims in causes of action three through six because doing so will afford this Court
9  with "concrete and established facts…from a definitive decision from local zoning
10 authorities [without which the] dispute remains a matter of unique local import over
11 which [the Court] lack[s] jurisdiction." *Id.* at 353-354.  Therefore, both *Sherman* and
12 *Murphy* provide no persuasive direction to the Court on the viability Plaintiffs' causes
13 of action and, at a minimum, support the County's request that the Court dismiss, with
14 prejudice, all of the claims against the County.

15
16 **V.   PLAINTIFFS' OUT-OF-CIRCUIT *PULLMAN* ANALYSIS IS**
   **BASELESS**
17

18       Plaintiffs' inexplicable reliance on the Third Circuit's *Pullman* abstention
19 standard in *Planned Parenthood of Central New Jersey v. Farmer*, 220 F.3d 127 (3d
20 Cir.2000) and other Third Circuit precedent throughout their analysis is a desperate
21 attempt to avoid the Ninth Circuit's established standard and must be ignored in
22 reviewing whether or not, in the alternative, the Court should abstain from hearing the
23 Plaintiffs' federal claims. *San Remo Hotel, supra,* 364 F.3d at 1095 (the Ninth Circuit
24 Court of Appeal is "not free to simply disregard [its own precedent] in favor of out-of-
25 circuit precedent."). The County provided the relevant Ninth Circuit *Pullman* standard
26 in its Motion, on pages 14 and 15, which requires the following elements: "(1) the
27 complaint must involve a sensitive area of social policy that is best left to the states to
28 address; (2) a definitive ruling on the state issues by a state court could obviate the

1   need for federal constitutional adjudication; and (3) the proper resolution of the
2   potentially determinative state law issue is uncertain." *Kollsman v. city of Los Angeles*,
3   737 F.2d 830, 833 (9th Cir.1984) ("*Kollsman*").  The Plaintiffs' Opposition papers fail
4   to refute that *Kollsman* provides this Court with the applicable *Pullman* standard and
5   fail to even address the first and second prongs in this standard.  Plaintiffs' futile
6   attempt to address the third prong of the *Pullman* standard is baseless. Rather, the
7   resolution of the writ of mandate is undeniably uncertain.

8          Plaintiffs' reliance on *Craik v. County of Santa Cruz*, 81 Cal.App.4th 880 (2000)
9   and *Miller v. Board of Supervisors*, 122 Cal.App.3d 539 (1981) do not support their
10  argument that the alleged conflict between the County's variance ordinance and
11  Government Code section 65906 is not a case of first impression.  As discussed
12  further, below, Plaintiffs do not cite a case that has resolved the alleged conflict at
13  issue, and the resolution of this issue is uncertain, satisfying the third prong of the
14  *Pullman* abstention standard.

15         In *Craik*, the County of Santa Cruz approved a variance due, in part, to the
16  property's existing topography being below an eroding coastal bluff and in a coastal
17  wave run-up and/or flooding zone, which required it to raise the elevation of the
18  proposed structure by four feet to ensure that the first level would be above the flood
19  elevation as required by the Federal Emergency Management Agency. *Craik, supra,*
20  81 Cal.App.4th at 887.  The court in *Craik* noted that Santa Cruz County "was not
21  barred from considering the FEMA and related county regulations as special
22  circumstances" even though they didn't constitute a physical disparity between the
23  subject property and other properties in the zone. *Id*. at 890.  While the *Craik* court
24  found that Santa Cruz County could consider applicable regulations as special
25  circumstances, *Craik* does not stand for the proposition that, as Plaintiffs suggest,
26  Government Code section 65906 underlines a local land use authority to go beyond its
27  enumerated special circumstances criteria in its local ordinance and do so in a manner
28  that considers non-physical attributes. *Craik* only stands for the proposition that it was

1   allowable under section 65906, a distinctly different issue than the one presented here.

2   Therefore, *Craik* does not touch on the issue presented in this case relative to whether

3   Government Code section 65906 requires the County to go beyond its enumerated

4   "special circumstance" criteria in its variance ordinance and do so in a manner that

5   considers non-physical attributes of a subject property as compared to other properties

6   in the zone.

7         Likewise, *Miller v. Board of Supervisors* provides no support for Plaintiffs'

8   assertion that the claim of conflict between Government Code section 65906 and the

9   County's variance provision is not a case of first impression.  The court in *Miller* only

10  considered the application of Government Code section 65906 to the development at

11  issue in the case. *Miller v. Board of Supervisors, supra,* 122 Cal.App.3d at 543-544.

12  The court did not even consider a local variance ordinance because the local agency

13  only applied section 65906 to the proposed variance application.  Thus, there was no

14  discussion relative to whether or not section 65906 requires a local agency, in

15  implementing its local variance ordinance, to consider factors beyond size, shape,

16  topography, location or surroundings of the property.  Therefore, the *Miller* case

17  provides no support to Plaintiffs' assertion that this case does not present a case of first

18  impression.

19        Plaintiffs attempt to concede defeat in the writ petition (Opposition, p. 18.)

20  cannot subvert the Court's authority under the *Pullman* abstention.  Plaintiffs ignore

21  the very reason why they filed the writ petition which is to have a court review the

22  record to determine whether the County abused its discretion in denying the Windeler

23  variance, including whether it did not provide a fair hearing to the Windelers.

24  (Complaint, p. 13, ¶ 45.)  The "right to a fair hearing is violated if an administrative

25  tribunal relies on evidence outside the record in reaching its decision." *Pinheiro v.*

26  *Civil Service Commission for the County of Fresno*, 245 Cal.App.4th 1458, 1467

27  (2016).  When a writ petitioner is denied a fair hearing, the court vacates the

28  administrative decision and orders a new fair and independent hearing. *Id.* at 1472.

1    The Plaintiffs do not dispute that if a state court finds that the County violated the
2    Windelers' right to a fair hearing in its review of their writ of mandate, that decision,
3    alone, would vacate the County's entire action on their variance, regardless of whether
4    the Windelers cannot prove, as they suggest on page 19 of their Opposition, that all the
5    County's variance findings are not supported by substantial evidence.  Therefore,
6    Plaintiffs' flailing scheme to concede defeat in the writ petition to evade the Court's
7    discretion to abstain under *Pullman* must fail considering a state court's ruling on the
8    fair hearing issue, by itself, is enough to grant Plaintiffs' writ of mandate.
9             In the end, the County is not so blatantly dismissive of the established Ninth
10   Circuit precedent of federal courts consistently deferring to state courts when writs of
11   mandate are filed in federal court because of the highly fact-intensive inquiry involved
12   in reviewing the administrative record to determine if the government has abused its
13   discretion. *C-Y Development Co. v. City of Redlands*, 703 F.2d 375, 380-381(9th Cir.
14   1983); *Sederquist v. City of Tiburon*, 590 F.2d 278, 282-283 (9th Cir.1978).  It is
15   highly notable that Plaintiffs do not cite to any Ninth Circuit precedent where a federal
16   court within the Ninth Circuit jurisdiction did not abstain from considering federal
17   constitutional claims when a plaintiff additionally filed an administrative writ of
18   mandate claim under California Code of Civil Procedure section 1094.5 and an
19   accompanying inverse condemnation claim.  Rather, Plaintiffs' reliance on *Meredith v.*
20   *City of Winter Haven*, 320 U.S. 228 (1943) is an overt attempt to lead the Court down
21   the rabbit-hole with irrelevant authority.  The Supreme Court, in *Meredith*, was not
22   confronted with the application of the *Pullman* abstention to a cause of action
23   involving a writ petition challenging a land use decision.  Rather, "the decision of
24   [that] case [was] concerned solely with the extent of the liability of the city on its
25   Refunding Bonds." *Id.* at 236-237.  In fact, if this Court is contemplating deciding the
26   issue of whether Government Code section 65906 compels the County to consider
27   special circumstances beyond those listed in its ordinance, *Meredith* instructs that
28   abstention would be appropriate because such a "[d]ecision…[would] require the

1   federal court to determine or shape state policy governing administrative agencies." *Id.*

2   at 237. <u>Such a decision would ultimately dictate how every local government in the</u>

3   <u>state would have to review special circumstances applicable to every single variance</u>

4   <u>application that they process.</u> This is an enormous ask and has significant policy and

5   land use implications. Considering the Plaintiffs' failure to cite to relevant Supreme

6   Court, Ninth Circuit or state court precedent to support their position that the Court

7   should not abstain under the *Pullman* abstention and the County's clear reasons why

8   abstention is appropriate as stated here and in its Motion, at pages 25-27, the County

9   respectfully requests that this Court, in the alternative, dismiss the state law claims

10   against the County and abstain from hearing the federal constitutional claims against

11   the County under the *Pullman* abstention.

12   **VI.  CONCLUSION**

13      Based on the foregoing and the arguments expressed in the County's motion

14   papers, the County respectfully requests that the Court dismiss all causes of action

15   against the County, with prejudice or, in the alternative, dismiss causes of action two

16   and three against the County and abstain, under the *Pullman* abstention, to hear the

17   federal constitutional challenges until a state court has considered the state law claims.

18

19                      RITA L. NEAL
                                County Counsel

20

21   DATED: February 26, 2018      By: _____ /s/_____

22                       MATTHEW W. CHRISTEN

23                       Deputy County Counsel
                      Attorneys for Defendant County of San Luis

24                       Obispo

25

26

27

28

**PROOF OF SERVICE**

*WINDELER, et al. v. CAMBRIA COMMUNITY SERVICES DISTRICT, ET AL.*

Case No. 2:17-cv-08536 -DSF- (JEMx)

STATE OF CALIFORNIA, COUNTY OF ORANGE

     I am employed in the County of Orange, State of California.  I am over the age of 18 years and am not a party to the within action.  My business address is 23113 Plaza Pointe Drive, Suite 100, Laguna Hills, CA 92653.  On September 16, 2019, I caused the foregoing document(s) described as:

**REQUEST TO TAKE JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITIONS TO MOTION TO DISMISS OF COUNTY OF SAN LUIS OBISPO AND MOTION TO DISMISS OF CAMBRIA COMMUNITY SERVICES DISTRICT**

to be served on the interested parties in this action as follows:

☐ By placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as stated below or  [XX] by sending a copy as stated and addressed below:

***SEE ATTACHED SERVICE LIST***

    ☒   **BY ELECTRONIC SERVICE.**  I certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Central District of California by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on September 16, 2019, at Laguna Hills, California.

Sandra Beck

# SERVICE LIST

*WINDELER, et al. v. CAMBRIA COMMUNITY SERVICES DISTRICT, ET AL.*

Case No. 2:19-cv-06325 -DSF(JEMx)

Rita L. Neal, Esq.
Jon Ansolabehere, Esq.
County Counsel
County of San Luis Obispo
1055 Monterey St., Room D320
San Luis Obispo, CA 93408
Phone: 805-781-5400
Fax: 805-781-4221
Email: jansolabehere@co.slo.ca.us

*Attorneys for Defendant and Respondent,*
*COUNTY OF SAN LUIS OBISPO*

Michael M. McMahon, Esq.
CARMEL & NACCASHA, LLP
1908 Spring Street
Paso Robles, CA 93446
Phone: 805-226-4148
Fax: 805-226-4147
Email: mmcmahon@carnaclaw.com

*Attorneys for Defendant and Respondent,*
*CAMBRIA COMMUNITY SERVICES*
*DISTRICT*

PROOF OF SERVICE